**ANNA STEWART WHITES**
*Anna Whites Law Office*
327 Logan Street
P.O. Box 4023
Frankfort KY 40601
(502) 352-2373/(502) 229-1063 (cell)
AnnaWhites@aol.com

November 27, 2023

Hon. Harout Samra
DLA Piper LLP (US)
200 South Biscayne Boulevard
Suite 2500
Miami, FL  33131-5341
Via email:  Harout.Samra@us.dlapiper.com
Cc:  Gene.Vance@skofirm.com, Lindsey.Meares@skofirm.com

      Re:  Mohawk Energy, LLC v. HBTPower Limited a/k/a "Huobi"

Dear Mr. Samra:

Thank you for your letter of 11/24/23.  I appreciate you reaching out regarding the ongoing failure of Huobi to begin the agreed upon mining activities at the Mohawk site.  As you can see from the attached emails and communications with Huobi's prior counsel, this delay has cost Mohawk significant funds and harmed the entity financially.  We look forward to an amicable resolution of the outstanding debts and issues so that the parties can terminate their agreement.

Mohawk owns certain commercial space that is eligible for use as a host facility for bitcoin mining.  Once mining hosting is operational, the site is simultaneously used by Mohawk for a training and certification program to educate displaced flood victims and unemployed coal miners in the region in learning new skills.  Mohawk's economic development will entitle it and any hosting partner to certain tax incentives and benefits.  The utility company has also offered Mohawk a lower economic development rate for electrical power if any of its host customers agree to a ten (10) year period of operations and pay the bond required by the utility company.

The parties entered an initial agreement more than a year ago.  Almost immediately, Huobi notified Mohawk that it would be unable to fulfill certain terms and conditions.  Mohawk was similarly transparent with Huobi on various issues, including the fact that it had purchased the site and was making purchase price payments on the real estate. The seller provided Huobi with written assurances that the site is more than 50% paid for and the payments are current at this time.

EXHIBIT 7

During the weekly zoom meetings between key leadership on both sides, various verbal modifications of the agreement were made and certain deadlines and requirements were eliminated or altered.  Financial delays on the part of Huobi required that Mohawk expend its own funds and time to modify the property in accordance with Huobi's changing requirements and/or failure to timely pay equipment vendors.  Mohawk also spent its own funds on various equipment and materials that were fabricated or purchased to meet Huobi's changing standards and demands.

Huobi still owes Mohawk the sum of $300,000 on an unpaid balance for the fit-up.  Mohawk paid those expenses out of its own pocket as they were due, based on the assurance that Huobi would reimburse for those.  Mohawk has placed a lien on Huobi's equipment in that past due sum.

During active fit-up, prior to the site being ready to host Huobi operations, various Chinese workers stayed on the site to help with certain specific construction. The Huobi workers stayed temporarily in RVs owned by Mohawk initially.  The workers then stayed temporarily on the site in RV housing provided by a third party.

Once the physical plant was ready for use there was a Grand Opening ceremony and Mohawk's Human Resources, management, training and certification program offices were operational and in use.  Huobi's hosted space was also ready for use and therefore was no longer accessible to unsupervised visitors or personnel not directly involved in operations.  No residential use of the property was permitted after that time under state and local zoning and industrial use regulations. Further, the insurer of the commercial space and operations specifically prohibited residential use of the factory. Huobi was given months of notice regarding those zoning requirements and the need to house its workers elsewhere. Mohawk even offered to aid Huobi in finding alternative housing for its workers.  Huobi declined all such offers of assistance.

During and following fit-up, the parties had a space rental and labor agreement requiring a monthly payment by Huobi of $90,000.  Huobi has failed and refused to pay that sum for more than five (5) months.  Mohawk has placed liens on Huobi's equipment to secure payment of that past due debt.

Because of Huobi's unpaid debt and expenses, Mohawk notified Huobi that it could access the property at any time, but that such access had to be under Mohawk supervision.  Huobi has declined to request access since that date.  Mohawk stands ready to allow Huobi agents or staff access to visit the property at any time, but no equipment may be removed from the property until the past due debts are paid.

Mohawk has notified  Huobi repeatedly that the site is ready to operate and that Mohawk is losing significant funds daily because Huobi is not commencing mining.  This financial loss creates an ongoing harm to Mohawk and is a material breach of the amended agreement between the parties.  Huobi's intentional and ongoing refusal to mine at the site has also harmed

EXHIBIT 7

Mohawk's training and certification programs, since its potential students cannot begin training until some entity uses the host space and there are operating machines in situ for those students to learn to maintain and repair.  The damage to Mohawk's finances and reputation by Huobi is significant.  Huobi's breach of the eight (8) year contract and refusal to commence mining is a multi-million dollar damage to Mohawk.

As an alternative to using a portion of the facility for mining and to offset the losses it is incurring, Mohawk has offered to let Huobi out of the contract, so it can use the host space for other mining  entities.  Mohawk has also offered to let Huobi subcontract with a third party approved by Mohawk for use of the hosting space.  Mohawk has suggested that the parties could amend the contract to give Mohawk a set host fee and allow Huobi to mine onsite at a lower usage rate.  To date, Huobi has declined all those offers.

In a related concern, Huobi and its agents appear to have claimed in various visa applications that a third party entity employs its staff who were working at the Mohawk facility.  While Mohawk signed the application to verify such employment at the time it was filed last summer, Huobi is not currently providing any employees on the Mohawk site and has refused to engage in the mining activities for which the host site was prepared.  Mohawk will therefore have to notify INS of this change in status and lack of work for those Huobi employees who are currently in the United States on a falsified status.

Let's schedule a time to talk via zoom or live about resolution of these concerns.  Please reach out to me with some possible dates and times.  Recognizing the difficulties of international communication for you and your client, I am happy to engage in calls outside 8-5 with advance notice.

Sincerely,

Anna Whites

EXHIBIT 7