UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

| | | |
|---|---|---|
| HBTPOWER LIMITED | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | **Case No. 3:23-cv-00628-CHB** |
| v. | ) | |
| | ) | |
| MOHAWK ENERGY, LLC | ) | |
| | ) | |
| *Defendant*. | ) | |

_____

## DEFENDANT'S ANSWER and COUNTERCLAIM TO VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER AND PERMANENT INJUNCTIVE RELIEF

Comes the Defendant, Mohawk Energy, LLC, by counsel, and for its ANSWER and RESPONSE to Plaintiff HBTPower Limited's Complaint and request for temporary and permanent injunctive relief, states as follows:

ANSWER

1.Defendant is without sufficient information to either admit or deny the allegations in Paragraph 1 of the Complaint, and same are therefore denied. Defendant would state that various individuals associated with Plaintiff and other Chinese companies, including the on site manager Yangping Wang, collectively identified as "Huobi" have interacted with Mohawk regarding host facilities for bitcoin mining operations since June, 2022. Yangping Wang was onsite at the facility during most of the time in which Mohawk was engaging in fit up of the site,

and was integrally involved in the ongoing modifications and amendments to the parties' initial agreement and the ever changing Huobi amendments to that agreement.

2.  Defendant admits the allegations contained in paragraph 2 of the Complaint but would show that its primary business address is the facility it owns at 1004 Gateway Industrial Park, Jenkins, Kentucky.

3.  Defendant denies the allegations contained in paragraph 3 of the Complaint and would show that the parties entered into a hosting facility agreement so that Mohawk could host Huobi's mining activities at its Jenkins facility, while using the facility for its training and certification program.  Exhibit 1, appended to Plaintiff's Complaint, was almost immediately amended by the parties and various verbal amendments continued throughout the term of the parties' interactions.

4.  Defendant admits the allegations of paragraph 4 of the Complaint.

5.  Defendant admits the allegations in paragraphs 5 and 6 of the Complaint, that the federal courts of Kentucky have jurisdiction over this matter, but argues that the Western District is a forum non conveniens and has no affiliation with this matter.  Judicial economy and the need for smooth and efficient resolution of this matter requires that it be transferred to the Eastern District of Kentucky, as outlined in Mohawk's contemporaneously filed Motion to Transfer.

6.  Defendant denies the allegations in paragraph 7 of the Complaint and notes that this Court is not the best, most efficient, most convenient or most reasonable Federal District of Kentucky for this matter, as outlined in Mohawk's contemporaneously filed Motion to Transfer.

7.  Defendant denies the allegations in paragraph 8 of the Complaint and states and affirms that Huobi has failed and refused to comply with the parties' agreement, to pay its debts legally owed, or to engage in the matters contracted for or agreed to, and has affirmatively and

intentionally breached the parties eight year agreement.  Huobi has failed and refused to negotiate or resolve the matter and has jumped straight to court proceedings rather than following the intent of the parties' agreement.

8.  Defendant is without sufficient information to either admit or deny the allegations in Paragraph 1 of the Complaint, and same are therefore denied.  Defendant would state that various individuals associated with Plaintiff and other Chinese companies collectively identified as "Huobi" have interacted with Mohawk regarding host facilities for bitcoin mining operations.

9.   Defendant is without sufficient information to affirm or deny the allegations contained in paragraph 10 of the Complaint and same are therefore denied.

10.   Defendant is without sufficient information to affirm or deny the allegations contained in paragraph 11 of the Complaint and same are therefore denied.

11.   Defendant is without sufficient information to affirm or deny the allegations contained in paragraph 12 of the Complaint and same are therefore denied.

12.   Defendant admits the allegations of paragraph 13 of the Complaint insofar as they encompass the initial agreement regarding Huobi's use of Mohawk's bitcoin mining host services in the Jenkins facility.  That agreement has been repeatedly modified by the parties during the course of dealing.

13.   Defendant admits the allegations of paragraph 14 of the Complaint that the license agreement calls for title free and clear for the premises, but denies that it stated that it had free and clear title to the facility to Huobi.  The term in the agreement written by Huobi is incorrect. Defendant repeatedly notified Huobi, verbally and in writing, that it had purchased the facility, was making payments on the purchase and was in good standing on that purchase.  Mohawk

3

owned the facility but had not yet fully paid it off.  Defendant made persistent and good faith attempts to have Huobi correct that erroneous statement in the initial draft of the agreement stating that the title was free of any claim for payment by the seller.  The seller similarly notified Huobi in writing that the buyer (Mohawk) was current on payments for the purchase of the property.

14.  Defendant admits the allegations of paragraph 15 of the Complaint. that the agreement requests that Huobi share use of the facility and be able to use the facility along with Mohawk's training program and that the agreement requests that Mohawk work with the power company to provide a set amount of power.  Mohawk affirms that Huobi's host space was fully fit-up and ready to go, that office space and other space is ready for Huobi's use, and that the training and certification offices and floor space is also ready for use.  The facility has been ready to operate, in accordance with the parties' agreement, since August, 2023.  Mohawk further affirms that both Mohawk and the power company (Kentucky Power), have provided Huobi with the contract and agreement and approval for the power requested (no less than 30MW).  Mohawk and its counsel spent dozens of hours working to ensure that the contracts, agreements and information regarding power were available to Huobi and were finalized.  Similarly, counsel for the power company spent multiple hours on the phone and on zoom with Huobi and its counsel to ensure that it understood the terms and agreements, contractual rate, and provisions for the 30MW power available to it at the Mohawk site.

15.  Defendant admits the allegations contained in paragraph 16 of the Complaint, and states that the right for Huobi to use Mohawk's host services at the site, exclusive of any other hosting by Mohawk, has been ready for use since August, 2023.   Mohawk staff and contractors

spent millions of dollars and hundreds of hours to fit up the site to meet Huobi's specific and frequently changing modifications and requirements.

16.   Defendant admits the allegations contained in paragraph 17 of the Complaint. Mohawk further states that Huobi provided some, but not anywhere close to all, of the machines it would need to mine at the site.  Huobi also shipped hundreds of almost valueless, small and outdated mining equipment to Mohawk and required that Mohawk use most  of its warehouse space to house that equipment.  That equipment was not the equipment for which the site had been set up and was not the equipment that Huobi had stated would be used at the facility.

As the equipment had some value, and the plant was a construction site, with workers and vendors on and off the premises consistently, Mohawk was forced to hire security to protect the equipment that Huobi had, without need or authorization, send to the facility to be stored.

Mohawk repeatedly asked that Huobi remove that equipment from its site so that the warehouse could be appropriately used.  Mohawk also repeatedly requested that Huobi insure that equipment, as  required by the parties' agreement. Huobi refused to remove or insure the equipment for a period of more than one year.

17.   Defendant admits the allegations in paragraph 18 of the Complaint, that Mohawk was required to conduct fit-up of the site as per Huobi's ever changing requirements.  Mohawk admits that it was promised the sum of eight million dollars ($8,000,000) to complete the purchase, fit up, transportation, installation, permitting and other costs and needs associated with the fit-up process.  Mohawk was paid the sum of seven million, seven hundred thousand dollars ($7,700,00) by Huobi.  The last three hundred thousand dollars ($300,000.00) remains due and owing.  The facility has been ready for use since August, 2023.  Mohawk has repeatedly notified

Huobi that it needs to commence such use and that Mohawk is losing thousands of dollars in monthly host fees as a result of Huobi's refusal to commence mining or relinquish the host services agreement.  Pro forma invoices are rarely provided by the seller/vendor/installer of such equipment.  Instead, Mohawk and Huobi were provided with descriptions of the specific equipment and the cost therefore and had to personally approve each purchase.  Copies of all documentation was provided to Huobi contemporaneous with ordering and delivery of such materials or equipment.  In many cases, Huobi staff accompanied Mohawk to the seller's site and worked with Mohawk and the seller to select and approve various pieces of equipment and the costs and charges therefore.  Huobi approved each purchase and cost for fit-up in advance and discussed these both on site and during the parties' weekly zoom meetings.

18.  Defendant admits the allegations of paragraph 19 of the Complaint insofar as admitting and confirming that it had entered a contract with Kentucky Power for the IGS (lowest industry rate) for power permitted by the Kentucky Public Service Commission.  That contract was entered into prior to June, 2023 and remained in effect through November, 2023.

Mohawk unequivocally denies that it could have or did promise any certain power or utility rates.  Rates change, even as often as monthly in some cases, and only the Power Company, with approval of the PSC, can set a utility rate. No power user or customer can set a utility rate.  Huobi was party to frequent meetings via zoom and onsite with the power company representatives to discuss utility rates, increases and decreases, and impact of various offsets for the rate such as an Economic Development Rate ("EDR").  An EDR is a special low rate that a company like Mohawk engaged in economic development may be eligible for, with PSC approval, but that a bitcoin mining company like Huobi on its own is not eligible for.  Counsel

for the power company spent many hours on zoom and via email with Huobi counsel and

management explaining rates, the EDR process and answering all Huobi's rate questions.

Counsel and power company representatives also met regularly onsite with Huobi's

onsite manager, Yangping Wang, who was the individual who belatedly verified the Huobi

complaint (R. 12).  Yangping Wang was on site daily during most of the fit-up process, was

present for every weekly zoom and other meeting with Mohawk staff and management, and was

the individual who approved ongoing changes and modifications to the initial agreement and

schedule between the parties. Copies of all power company rates, contracts and proposals were

provided contemporaneously to Huobi.

19.  Mohawk denies the allegations contained in paragraph 20 of the Complaint.

20.  Mohawk denies the allegations contained in paragraph 21 of the Complaint.

Mohawk states that Huobi paid a portion of the agreed upon reimbursement for Mohawk's fit-up

of the site in June, 2023 rather than the full payment of the $8,000,000 required.

21.  Mohawk denies the allegations contained in paragraph 22 of the Complaint.

Mohawk states that it paid a power deposit with Kentucky Power to allow the site to receive

industrial power in June, 2022.

22.  Mohawk admits the allegations contained in paragraph 23 of the Complaint and

states that the terms of the written agreement reflect the initial terms but were modified over time

by the parties.  Mohawk notes that it has completed all such required terms and that the plant is

ready for use.

23.  Defendant denies the allegations in paragraph 24 of the Complaint and affirmatively

states that due to Huobi's failure or refusal to timely pay the fit-up costs, approve certain items,

or agree to purchase of certain necessary items, coupled with COVID slow downs and scarcity of requested items, the initial proposed contractual deadlines were abandoned by the parties and new deadlines were agreed to, on a rolling basis, during the course of the project.   Huobi had a duty to pay the monthly rent of $50,000 and the monthly labor cost of $40,000 during the extended months of work caused by Huobi and the above referenced conditions.  Huobi was the exclusive mining company tenant on the premises and Huobi required facility maintenance, labor, security costs and related expenses to fit up and protect its mining machines.  Those expenses have been incurred each month since June, 2022.

24.  Defendant denies the allegations of paragraph 25 of the Complaint and affirmatively states that Huobi was required to pay electricity and insurance for the site for the entirety of the term, beginning in June, 2022, and refused to do ever do so.  Huobi was also required to pay the monthly labor and rent cost, beginning in June, 2022, and ceased making those payments in July, 2023.  Mohawk has been forced to bear all those costs for its delinquent tenant for all that time, while being unable to make use of its property or lease the property to a new tenant.  Huobi's ongoing breach has resulted in significant financial loss to Mohawk.

25.  Mohawk denies the allegations contained in paragraph 26 of the Complaint.

26.  Defendant denies the allegations contained in paragraph 27 of the Complaint.  Most, if not all, of the machines sent to the facility by Huobi were older and outdated models.  Even the newer models for which the plant was fit up were not the top of the market or those commonly used by large scale mining entities.  Older models consume significantly more electricity per bitcoin generated and operate much more slowly than newer models.  Many entities, including some private citizens who buy the equipment off sites like "Amazon" and mine for fun in their

basements own the same type of models.   Many large mining entities own thousands more mining devices than were sent to the Mohawk facility.

27.   Defendant admits that Huobi has been interactive, as detailed in paragraph 28 of the Complaint and notes that not only did Huobi have an onsite manager (Yangping Wang) employed exclusively by Huobi on site at the plant and in every meeting for the entirety of the fit-up term, but that the parties held weekly or more often zoom meetings and calls to update on cost, availability, fit-up, power rates and other information.  Huobi was integrally involved in each step of the decision-making process.

28.   Defendant is without sufficient information to admit or deny the allegations contained in paragraph 29 of the Complaint, but affirms that Huobi and its onsite manager had discussions and meetings with the power company, reviewed the contract and rates, and confirmed that there was a power agreement in place regularly from June, 2022 onward.  The initial agreement was in place by June 1, 2022.

29.   Defendant admits that additional older model mining machines were provided by Huobi as detailed in paragraphs 30 and 31 of the Complaint.  While Defendant has not inventoried the entirety of the machines, it believes Huobi's numbers may be correct  and will conduct an inventory promptly to confirm.

30.   Mohawk denies the allegations on paragraph 32 of the Complaint.  Mohawk owns, but has not fully paid off, the site.  Mohawk is not in a dispute with the property owner.  The property owner is actually a Mohawk minority member of the corporate entity.

31.   Mohawk affirms the allegations contained in paragraph 33 of the Complaint insofar as those required Mohawk to facilitate obtaining all approvals and to partner with Huobi (which

is not typically entitled to an EDR on its own behalf, absent such partnership, as it is a bitcoin mining entity rather than an economic development entity).  Mohawk promptly did so, including working with the power company to inform and update Huobi on the new power company and PSC requirement that an EDR requires a bond to ensure that the company receiving the EDR remains in business in Kentucky for the full ten (10) year period for which an EDR is given. Mohawk and Huobi received timely approval for an EDR and the power company provided the contract and spent several hours on zoom reviewing that contract with Huobi.  Huobi refused to permit Mohawk to sign the EDR contract and its counsel sent written notice to Mohawk stating that Mohawk must NOT execute the EDR contract.  As a result of Huobi's written demand, Mohawk did not execute that contract.

32.  Mohawk denies the allegations contained in paragraph 34 of the Complaint.  The facility was and is ready for mining to commence.  Huobi has refused to begin mining.

33.  Mohawk denies the allegations in paragraph 35 of the Complaint.  In August, 2023, the plant was fully completed and held its grand opening.  After that date, it was insured and open as an operating industrial site.  Mohawk informed Huobi months in advance, both on zoom and directly to its onsite manager, Yangping Wang, repeatedly until that date, that Huobi workers who had been staying onsite during fit up could not longer live at the facility.  Zoning regulations prohibit residential use of an industrial site.  Mohawk offered to, and did, assist the workers in finding appropriate residential lodgings.  Simultaneously, Huobi notified Mohawk that it would not pay its monthly lease or labor payments for the lease of the site, use of the site or labor to maintain and secure the site.  Huobi has not paid those past due sums since July, 2023.  Because of this significant delinquency, Mohawk notified Huobi that it could not use the site to mine until arrangements were made to pay the delinquent sums.  Mohawk affirmed, in writing, that Huobi

and its counsel could visit the site at any time, with a Mohawk staff-person accompanying Huobi.  To date, Huobi has not requested to use or visit the site.

34.   Defendant denies the allegations contained in paragraph 36 of the Complaint and states that the letter/exhibit is the best evidence of its contents.  Mohawk would further specify that the "equipment" for which Huobi was demanding a bill of sale was not Huobi's mining machines, but was the wiring, air conditioning, cable, electrical fixtures and other equipment used for fit up which are part of the permanent building structure and do not belong to Huobi. They were installed to meet Huobi's mining requirements but are not owned by Huobi.  Those are Mohawk's property and/or fixtures attached to and integrally part of the physical structure.

35.   Defendant is without knowledge to affirm or deny the allegations made in paragraph 37 of the Complaint and same are  therefore denied.

36.   Defendant denies the allegations contained in paragraph 38 of the Complaint.

37.   Defendant admits that after hours on a Friday, Huobi sent counsel a cease and desist letter, as stated in paragraph 39 of the Complaint.

38.   Defendant denies the allegations contained in paragraph 40 of the Complaint and states that the letter/exhibit is the best evidence of its contents.

39.   Defendant denies the allegations of paragraph 41 of the Complaint.

40.   Defendant denies the allegations of paragraph 42 of the Complaint and affirmatively states that Huobi is delinquent in excess of $400,000 for rent and labor costs, and the remaining $300,000 for fit up costs, as well as being liable for the intentional breach of the eight year agreement between the parties.

41. Defendant denies the allegations of paragraph 43 of the Complaint.

42. Defendant denies the allegations of paragraph 44 of the Complaint but admits that it sold, at top of the market prices, a number of the oldest and most outdated machines stored by Huobi, without permission, in the Mohawk warehouse, to recoup $360,000 of the past due sums. That sale price was fair market value for the outdated machines, and was offered by multiple prospective buyers. No other mining machines have been sold by Mohawk, although a number of them have liens filed on them relative to the remaining past due sums and breaches by Huobi.

43. Defendant denies the allegations in paragraph 45 of the Complaint.

44. Defendant denies the allegations in paragraph 46 of the Complaint.

45. Defendant denies the allegations in paragraph 47 of the Complaint.

46. Defendant denies the allegations in paragraph 48 of the Complaint.

47. Defendant denies the allegations in paragraph 49 of the Complaint, particularly as the machines in question were old and inefficient and were not of the type which the facility was fit up to operate.

48. Defendant denies the allegations in paragraph 50 of the Complaint.

49. Defendant denies the allegations contained in paragraph 51 of the Complaint.

50. Defendant denies the right of Huobi to seek relief in other forums as stated in paragraph 52 of the Complaint, as well as bringing the present action.

51. Paragraph 53 does not require an answer.

52.  Defendant admits the allegations contained in paragraph 54 of the Complaint as it refers to the original agreement but affirms that due to Huobi's breaches and nonpayment, as detailed herein, the agreement was repeatedly modified by the parties throughout the past eighteen months.  Specific consents were provided both by Huobi management during the weekly zoom meetings as well as by email and on site via Yangping Wang.

53.  Defendant denies the allegations contained in paragraph 55 of the Complaint.  The plant is and has been ready for use.

54.  Defendant denies the allegations contained in paragraph 56 of the Complaint.

55.  Defendant denies the allegations contained in paragraph 57 of the Complaint.

56.  Defendant denies the allegations in paragraph 58 of the Complaint.

57.  Defendant denies the allegations contained in paragraph 59 of the Complaint.

58. Defendant denies the allegations contained in paragraph 60 of the Complaint.

<u>AFFIRMATIVE DEFENSES</u>

FIRST AFFIRMATIVE DEFENSE

Defendant pleads the affirmative defenses found in Federal Rules of Civil Procedure or otherwise available including accord and satisfaction, assumption of risk, contributory negligence, duress, unclean hands, estoppel, waiver, and failure of consideration.  As outlined herein, Mohawk and Huobi repeatedly restructured their agreement, voluntarily at times and due to Huobi's refusal to timely pay or timely approve purchases or sums.  All alleged injury complained of by Huobi is due to the misconduct or nonfeasance of Huobi, its agents and employees.

SECOND AFFIRMATIVE DEFENSE

Mohawk alleges impossibility as a defense to any claim by Huobi that Mohawk could have or should have controlled the power rate, prevented the PSC or the Power Company from changing a power rate, controlled the rate of the EDR, prevented the Power Company and/or PSC from requiring a contract and/or bond as a prerequisite to receiving an EDR, or otherwise provided Huobi with a power rate lower than that required or permitted by law, power company regulations or PSC requirements.

Mohawk also alleges impossibility of performance as Huobi delayed the initial agreement, repeatedly changed deadlines or caused deadlines to be changed and otherwise modified the agreement such that it could not be complied with as initially written.

Mohawk asserts impossibility of performance as Huobi refused to begin mining at the site and to date, has refused to conduct the business for which the parties contracted.

THIRD AFFIRMATIVE DEFENSE

Mohawk alleges illegality of the direction given by Huobi with regard to any claim that Huobi agents or employees should have been able to make residential use of a commercial property or been permitted by Mohawk to take any action in violation of local, state or federal law or regulation.

COUNTERCLAIM

1.Mohawk adopts all its factual statements, defenses, denials and corrections of the record made previously herein as if restated in full.

2.  Mohawk and Huobi entered an initial agreement under which Mohawk would be paid $8,000,000 to fit up its facility for use by Huobi in bitcoin mining.  The contract was for an eight

14

year term.  Huobi was to pay insurance, electric/power bills, labor costs and space use costs monthly.

3.  In good faith, Mohawk proceeded with the fit-up process despite Huobi's failure to provide the sum due up front.

4.  Purchasing and installing expensive parts was delayed, in whole or in part, due to Huobi's delay in payment, delay in agreeing to the specific part, and refusing to approve certain vendor contracts.

5. As a direct result of the actions referenced above, Mohawk often lost out on purchases, lost downpayments for purchases or was forced to go to another vendor to purchase parts or supplies.  This raised the cost of the fit-up and required Mohawk to drive cross-country multiple times in its own vehicles or vehicles it rented to procure parts.

6.  Huobi frequently changed its plans and requirements, which created delays and additional expenses in fit up and made the build and work much more costly for Mohawk.

7. Huobi changed managers, counsel, administrators and liaisons frequently throughout the contract term, making continuity and communication almost impossible for Mohawk.

8. Huobi refused to approve or pay for certain key parts for fit-up, which required Mohawk to fabricate those or pay for those out of pocket.

9.  Huobi's onsite supervisor Yangping Wang often provided Mohawk with direction and requirements which were not in accordance with the parties' earlier agreements, making weekly or more frequent changes to the overall plan necessary and further delaying completion and driving up the cost for Mohawk.

10.  Upon information and belief, Huobi, its agents, employees, counsel and management contacted members or employees of Mohawk and attempt to obtain confidential and proprietary information or to strike side deals detrimental to the parties' joint project and to Mohawk's success as a business.

12.  After requiring Mohawk, its agents and employees, and the Power Company agents, employees and counsel to spend dozens of hours drafting and amending utility rate and EDR contracts, Huobi then refused to authorize Mohawk to sign the contract, making it impossible for Mohawk to obtain the EDR.

13.  When the facility was ready to begin operating, in August, 2023, Huobi unexpectedly refused to begin mining.

14.  Huobi has refused all Mohawk's offers of reducing the mining required, contracting with a third party, releasing Huobi from the contract, or negotiating some amicable resolution. Huobi's refusal necessitated Mohawk continuing to employ maintenance and security teams, and continuing to hold the space for Huobi rather than renting it to any of the interested third parties who offered to assume Huobi's lease.

15.  Mohawk's costs for the project exceeded the sum paid as a direct result of Huobi's misconduct.

16.  Mohawk has not been paid the final $300,000 under the contract.

17.  Mohawk suffered the loss of six months labor and rent costs and has had to pay those out of pocket, in a sum in excess of $400,000.

18.   Mohawk's profit under the host agreement was a percentage of bitcoin mined each month.  Huobi's refusal to begin mining has cost Mohawk five (5) months of profit so far, due to Huobi's breach of the parties' agreement.

19.   Huobi is proximately liable for all financial loss to Mohawk.

21.   Upon information and belief Yangping Wang, Huobi's onsite manager, created a "Kentucky company" HBTHub, Inc., in Richmond, Kentucky, that served as his "employer" so that he could "work for" for that company in Kentucky.  Yangping Wang requested that Mohawk affirm that he and his company were working in Kentucky at the Mohawk site.  Mohawk has not ever contracted with HBTHub, Inc., its agents or employees.  At Yangping Wang's request during fit up, Mohawk affirmed that Wang was working at the Mohawk site.  Once fit up ended, Yangping Wang, who has declined to return to the facility, was no longer working at the Mohawk site.  Mohawk has reached out to INS to let them know that the work status relied upon for Yangping Wang's green card is fraudulent.  Mohawk regrets unintentionally affirming those false assertions for the INS and is correcting that mistaken impression.

22.   Upon information and belief, Yangping Wang engaged in various actions contrary to the best interests of Huobi and Mohawk, including but not limited to attempting to channel purchase contracts for expensive parts for fit up to "White Rabbit" and other out of state entities in which he had an ownership share or financial interest.  Mohawk's vigilant COO was able to find out both that the materials purchase contract that Yangping Wang was pushing them to enter was more than $100,000 above market price, and also that Yang and others related to Huobi had an interest in that company and were hoping to profit from that side hustle at the expense of Mohawk.

23.  The bad faith actions of Huobi intentionally or reckless harmed Mohawk and its owners and investors.

24.  The actions of Huobi were fraudulent and taken with the intent to take advantage of Mohawk's hard work and funds expended so that Huobi could profit unfairly from the parties' agreement. Mohawk suffered harm as a direct and proximate result of Huobi's misconduct, including having to expend additional time and funds investigating Yangping Wang's side hustle companies, and finding legitimate companies which could provide the materials at a fair market rate on short notice.

25.  Huobi did not enter into or engage in the contract with Mohawk in good faith or act fairly and in accordance with law during that portion of contract requiring fit up, modifications, and changes to the contract.  Huobi's bad faith and misfeasance and nonfeasance rendered performance under the contract impossible.

26.  Huobi made fraudulent statements to United States INS, and misled Mohawk into affirming such fraudulent statements.  Mohawk is taking steps to correct those innocent misstatements, at great cost to Mohawk.  Huobi is liable for all costs associated with these remedial measures.

27.  Huobi's actions made performance under the agreement and all Huobi's modifications thereto impossible. Additionally, Huobi rendered Mohawk's performance under its contracts with the power company and its training and certification program impossible by refusing to engage in the bitcoin mining agreed upon and by delaying performance under the contract in an attempt to financially harm Mohawk and its members.  Mohawk has suffered significant harm as a direct result of Huobi's intentional and ongoing misconduct.

28.  Huobi is liable for all financial and economic loss incurred by Mohawk.

29.  Huobi is liable for Mohawk's loss of business standing and reputation due to its defamation of Mohawk, making false claims about Mohawk and its Manager, Brandon Smith, and its undermining Mohawk with Mohawk's own staff and members, all of which are a breach of the requirements of good faith and fair dealing imposed on all contracts by Kentucky law.

30.  This Court should enter a judgment in favor of Mohawk for all damages incurred.

<u>RESPONSE TO MOTION FOR INJUNCTIVE RELIEF</u>

Huobi has spent the past five months refusing to communicate with Mohawk, refusing to pay for the labor costs of maintaining the space it leased, the equipment it stored, or the security and safety of its mining machines.  For the same amount of time Huobi has refused to vacate the Mohawk premises and has refused to pay the lease sum for the space.  For more than a year Huobi has stored outdated bitcoin mining equipment, which is not of the type able to be used at the Mohawk site, in Mohawk's warehouse but has refused to pay for that storage or insure that equipment against loss.

Huobi falsely asserts some "special" character of the outdated bitcoin mining machines on which Mohawk placed a lien for past due nonpayment and for nonpayment of rent, insurance, electric power and labor.  Those are the machines which Mohawk had to sell to pay its facility and security staff.  Those type of machines are readily publicly available to anyone wishing to buy them and have no special characteristics or qualities.  They have been manufactured for years and have fallen into non-use in America because operating them for profit is difficult in comparison to using an up to date bitcoin mining machine.  The newer machines are more energy

efficient and more powerful.  Mohawk has not disposed of any of the newer machines stored at its site by Huobi.  The machines sold were fungible goods.

Before this Court, Huobi falsely argues that it is not able to perform mining as contemplated because the facility is not ready for use, while ignoring the fact that the facility is ready for use and has been for months.

Huobi has refused to assign the contract to a company willing to assume it and use the hosting agreement and space, voluntarily agree to cancel the lease, and refused to modify the mining done so that it could be more cost effective, despite written requests to Huobi and its counsel that it engage in one of those alternatives to litigation.

Huobi complains that it cannot afford to mine without an EDR contract, but fails to admit that it affirmatively stated in writing in September that it would not permit Mohawk to sign the EDR contract and threatened legal action against Mohawk if Mohawk signed the EDR.

Huobi is asking that this Court enjoin Mohawk from selling various mining machines to pay Huobi's past due debt to Mohawk but continues to refuse to pay the bills it is incurring for lease, electricity, insurance, and labor.  Mohawk cannot be required to pay Huobi's bills or allow Huobi to claim a leasehold in space it refuses to use or pay for.  The motion for injunctive relief must be denied.  If  Huobi will not vacate the premises or pay its bills, Mohawk must be permitted to use the property in its possession to pay the past due sums.

Injunctive relief is an extraordinary remedy.  Under either the Kentucky Civil Rules, or the federal standard, a party must affirmatively move for injunctive relief, showing that its rights are being or will be violated by the actions of an adverse party.  Further, the movant must show that it would suffer immediate and irreparable injury or loss in the absence of injunctive

relief. CR 65.04(1); *Performance Unlimited* at 1381 (citing *Int'l Longshoremen's Ass'n AFL-CIO, Local Union No. 1937 v. Norfolk S. Corp.*, 927 F.2d 900 (6th Cir. 1991)).

While this case involves potential monetary damages on either side, should the various breaches of contract be found to be valid claims, no irreparable injury has been suffered or could be suffered by either party.  The parties are dickering over contractual amendments, contractual interpretation, and who pays whom for what.  There are no confidential, proprietary or non-monetary issues raised by Huobi.  Bitcoin mining machines are prevalent the world over, and any special programming to make a machine mine via a party's algorithm or pay into a party's account is simple a programming issue and not a special feature of any machine.

It can be assumed that Huobi realized that U.S. utility rates are too high for it to make much money under current bitcoin pricing and for that reason, refused to commence mining at the Mohawk facility.  Huobi cannot reasonably assert that Huobi believed that Mohawk, a mere customer, could unilaterally reduce the state power rate so that Huobi and  Huobi alone could make money bitcoin mining.  Huobi simply made a bargain it believes now is a bad one, and wants to get out of it without paying the funds it owes.  That is not a situation where injunctive relief is proper.  There are no unique, special or extraordinary circumstances present requiring a restraining order or injunctive relief.  Huobi has alleged no irreparable injury and therefore cannot be held entitled to the relief it demands.

WHEREFORE, Mohawk requests the following relief:

1.  An Order transferring the action to the Eastern District of Kentucky;

2.  Dismissal of the action filed by Huobi with prejudice;

3.   A judgment in Mohawk's favor finding Huobi liable for all damages incurred by Mohawk;

4.   Denial of the request for temporary and permanent injunctive relief;

5.   An Order granting Mohawk the right to sell additional mining machines on the Mohawk premises until and unless Huobi pays the remainder of the sums due for fit-up, labor and rent;

6.   A final ruling holding that Huobi's actions require a judgment and order requiring it to vacate the premises, remove any mining machines left after payment of its debts, and allow Mohawk to use the business premises, fixtures and equipment as Mohawk sees fit with no further interference by Huobi;

7.   Its costs herein expended, including a reasonable attorney fee;

8.   Any and all other relief to which this Court finds it entitled.


Respectfully submitted,

Anna Stewart Whites

ANNA WHITES LAW OFFICE PLLC

327 Logan Street

Frankfort KY 40601

(502) 352-2373 (office)

Annawhites@aol.com

*Attorney for Defendant Mohawk Energy, LLC*

CERTIFICATE OF SERVICE


This is to certify that a true and correct copy of
the foregoing was this day served via the
court's electronic filing system upon:

Palmer G. Vance

Lindsey H. Meares

STOLL KEENON OGDEN PLLC

300 West Vine Street, Suite 2100
Lexington, Kentucky 40507-1380


Harout J. Samra
DLA PIPER LLP (US)
200 South Biscayne Boulevard, Suite 2500
Miami, Florida 33131


This the 4th day of December, 2023.

Anna Stewart Whites