**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**AT LOUISVILLE**

| | | |
|---|---|---|
| **HBTPOWER LIMITED** | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | **Case No. 3:23-cv-00628-CHB** |
| **v.** | ) | |
| | ) | |
| **MOHAWK ENERGY, LLC** | ) | |
| | ) | |
| *Defendant.* | ) | |

_____

## DEFENDANT MOHAWK ENERGY'S RESPONSE TO MOTION TO COMPEL ARBITRATION

Comes the Defendant,  Mohawk Energy, LLC, by counsel, and in RESPONSE to the

Motion to Compel Arbitration, states as follows:

### *COUNTERSTATEMENT OF MATERIAL FACTS*

Plaintiff Huobi availed itself of the current forum by filing a complaint, not a motion for

temporary restraining order, as well as the motion for temporary relief, which was filed days

later (and just 10 minutes before the hearing scheduled by this Court).  In its pleadings Huobi

made significant factual assertions unrelated to the requests for injunctive relief and related

directly to interpretation, modification and enforcement of the contractual terms of the parties'

agreements.  Huobi also filed an affidavit from the "General Manager" for Huobi, which appears

to be false, incorrect and not actually spoken/written by that individual.

Not only did Huobi initially pick a forum inconvenient to all parties and counsel –

presumably for some perceived competitive advantage - but it demanded immediate and ongoing

relief and resolution of various contractual issues in that specific forum.  When Huobi was

disappointed by this Court's commonsense interpretation of the law and facts during the initial hearing, it immediately demanded that this Court allow it to access yet another inconvenient forum and relinquish all oversight of the action Huobi had just brought before the Court.  Huobi filed this demand despite agreeing in person before the Court to create a briefing schedule and to work amicably and in good faith with Mohawk to resolve all the parties' issues.  Huobi's abrupt reversal occurred mere hours after its representations to this Court, and too early in the evening for counsel to have even spoken with the Chinese nationals who own and fund Huobi, who were still in bed at 6 a.m. their time, (6 pm local time.) These actions are facially not in good faith, nor are they in furtherance of prompt resolution of this action.

 Disappointed with their initial choice of forum, Huobi now demands yet another improper and inconvenient forum – "JAMS" a "virtual" arbitrator which does not even have offices in this Commonwealth, rather than a Lexington or Eastern Kentucky arbitrator.  The arbitration provision in the initial agreement between the parties does not mandate use of JAMS, rather than a local arbitrator.  The hundreds of pages filed by Huobi in this Court's record, and the responses and counterclaims thereto filed by Mohawk clearly constitute a written agreement to proceed in federal court rather than splitting the cause of action and conducting part of it in a separate forum. Having invoked this Court's jurisdiction, inundated it with filings and raised multiple matters outside any legitimate arbitration proceeding, Huobi has clearly elected this forum and cannot now renege on that election of remedies.

Plaintiffs initiating complaint and other matters filed in this Court range far beyond a simple request for injunctive relief and include the matters involved in the counterclaim, questions about specific performance of Mohawk, contracts with the power company, and materials costs, fit up and space rental, payments made, partial payments for power, discussions

with the power company, economic development information, contract start dates, interpretation of various contractual provisions, licensing and government approvals, and even housing for Huobi workers.  A request for injunctive relief that did not waive arbitration would have been limited solely to an order that Mohawk not sell the mining machines, and would not have included the other matters.  Plaintiff affirmatively brought many other issues before this Court. See, e.g., Complaint paras. 11, 14, 15, 18, 19, 20, 23, 33, 35.

Plaintiff noted in its initial Complaint that the contract permits arbitration unless waived, and then promptly proceeded to waive any claim that the matter should be in arbitration instead of before this Court.  It was only when Plaintiff was disappointed by this Court's initial judicial review of the facts and law that it changed its mind about this Court as the proper forum and suddenly demanded that the matter be moved.  Such unprofessional and bad faith conduct should not be rewarded by the Court.  The Court and Defendant have put significant time and effort into the matter already, in the forum specifically selected and utilized by Plaintiff, and the matter should remain where it is.

The factual assertions in the initiating complaint **<u>unrelated</u>** to an injunction keeping the machines from being sold are continued and affirmed in Huobi's Memorandum in Support of Motion to Compel Arbitration, where Huobi persists in raising factual and legal issues before this Court.  See, e.g., p. 2 – discussing regulations, licenses, rental premises size and condition and fit up; p. 2 – discussing false claims that there was not sufficient power at the site; p. 3 – discussing alleged other contractual breaches unrelated to the restraining order or the machines; p. 3 – discussion of rent and labor costs unrelated to the restraining order.  All these matters directly involve the breach, enforcement, interpretation of the contract and the ongoing relationship between the parties. Huobi's claim that it only sought injunctive relief and did not

address disputes regarding breach, interpretation, or enforcement of the contract (Memo in Support, p. 3) is patently false and is directly rebutted by Huobi's own filings.

By intentionally bringing those specific issues before this Court, and requiring that the Court expend significant time and resources addressing them, the parties have waived any right to now claim that those can "only" be heard in arbitration.  The issues were raised in this proceeding and should stay in this proceeding.

In the alternative, should this Court find that arbitration is appropriate, any arbitration should be conducted by a Kentucky arbitrator in an in-person proceeding in Lexington or Eastern Kentucky.  Wang Yangping lives in America currently on a potentially invalid but currently active green card status, and resides frequently or primarily in Kentucky.  The entirety of the other witnesses -  Mohawk agents and employees, contractors who did the work on site, and the power company, are in Kentucky.  No "virtual" or out of state arbitration should be required in this matter.  Sending the matter to an arbitrator and entity selected by Huobi alone is improper and should not be permitted.

*DISCUSSION OF APPLICABLE LAW*

While courts in this Commonwealth do permit arbitration where the parties are in agreement, as noted by Huobi at p. 1 of the Memo in Support, in the present case the parties have brought the entirety of the issues in the case before this Court and in so doing, have waived any right to then transfer the matter to arbitration.  The action and claims and issues raised by Huobi before this Court go far beyond the scope of a simple request for injunctive relief.  Under such circumstances, Mohawk affirms that the arbitration provision was voluntarily waived by both parties and that the matter should move forward before the federal court.  Huobi's attempts at

post-status conference gamesmanship notwithstanding, it voluntarily brought the entire matter before this Court and Mohawk has already expended significant legal costs and time addressing those. Mohawk objects to having to start over in a new forum.

There is no mandate in the parties' initial agreement or in law that the Court may not hear matters voluntarily brought before it. The parties agreed to have the matter heard by the Court and were permitted under the agreement to make such a voluntary waiver of any arbitration provision. The agreement allows modifications thereto in writing (Initial Agreement, para. 26), and the extensive writings filed before this Court by Huobi may properly be seen as a waiver of the need for any arbitration proceedings. Second guessing is not favored in a court proceeding and neither is forum shopping. Huobi's attempts at both should be denied.

As noted in *North Fork Collieries, LLC v. Hall,* 322 SW3d 98, 102 (Ky. 2010), cited by Huobi at p 2 of the Memo in Support, the initial question in determining whether the matter should be referred to arbitration is whether the parties agreed to arbitrate. In the present case the initial contract provided for arbitration and permitted amendment by the parties. The intentional selection of this Court by Huobi, rather than an arbitrator, to which Mohawk promptly agreed, renders this late change of heart by Huobi ineffective.

Huobi then attempts a strained interpretation of the facts in order to claim that the operation of the Kentucky plant under contract with Kentucky power, to engage in mining in Kentucky is actually "interstate commerce" mandating arbitration. Memo in Support, p. 4. The sole case cited, *Fite and Warmath Constr. Co. v. Mys Corp,* 559 SW2d 729 (Ky. 1977) relates to a construction contract, not an operating agreement to use completed business space for mining in Kentucky.

Under both the Kentucky Uniform Arbitration Act ("KUAA"), and the Federal Arbitration Act ("FAA"), "a party seeking to compel arbitration has the initial burden of establishing the existence of a valid agreement to arbitrate." *Ping v. Beverly Enters., Inc*., 376 S.W.3d 581, 590 (Ky. 2012) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995).  While there was such an initial agreement, Huobi and Mohawk have voluntarily waived it, and that waiver and relinquishment is shown directly by Huobi's actions and court filings.

When a party moves to compel arbitration, the court must "decide under ordinary contract law whether the asserted arbitration agreement exists between the parties and, if so, whether it applies to the claim raised in the complaint." *North Fork Collieries, LLC v. Hall*, 322 S.W.3d 98, 102 (Ky. 2010)), supra.  Courts note that ordinary contract principles govern the validity of an arbitration agreement, including provisions related to voluntarily waiver or amendment of provisions. *GGNSC Stanford, LLC v. Rowe,* 388 S.W.3d 117, 121 (Ky. App. 2012).

Kentucky Courts find that participation in a judicial proceeding may act as a waiver of arbitration if the party seeking such resolution participates without requesting arbitration. *Valley Construction Co., Inc. v. Perry Host Mgmt. Co., Inc.*, 796 S.W.2d 365 (Ky. App. 1990).  In the present case, not only did Huobi "participate" in the court proceeding related to matters which could have been addressed in arbitration, it actually **initiated** these court proceedings and filed hundreds of pages supporting these proceedings.   Questions of whether a litigation-conduct waiver to an arbitration provision have occurred are to be resolved by the court as a matter of law.  See, e.g., *American General Home Equity, Inc. v. Kestel*, 253 S.W.3d 543 (Ky. 2008).  Here, the parties voluntarily waived

6

enforcement of any arbitration agreement by bringing the entirety of their concerns before this Court. That waiver is a question of law, properly ruled upon by this Court.

### *QUESTION CONCERNING AUTHENTICITY OF WANG YANGPING DECLARATION*

Wang Yangping Affidavit.  The undersigned has great respect for any individual who can conduct business in multiple languages.  That said, Wang Yangping is not verbally fluent and adroit in nuances of English such that he could have recited and spoken the paragraphs contained in the Declaration filed by Huobi's counsel.  Mohawk and Wang Yangping utilized translators to facilitate communication between them on a daily basis at the plant and in zoom meetings. Numerous in-depth discussions between the parties required use of Huobi's translator or translation from a Mohawk member who is a U.S. citizen born in China who stayed temporarily at the plant for that specific translation purpose.

Additionally, this Court should note that many of the statements made in the "Declaration" are refuted or negated by Wang Yangping's actual knowledge and involvement, known to both he and Mohawk.  This is shown by the affidavit of Mohawk's Operations Director Dustin Rogers, appended hereto as Exhibit 1.  These will be elaborated on in any hearing where the witness may be questioned.  The claims that no rent or labor was required monthly is refuted by the written discussion between Mohawk and Wang Yangping, using a translator for emails [Exhibit 3 – an email discussing Huobi's knowledge of its monthly rent and labor costs and remedies for nonpayment or late payment of such required payments]. The veracity of counsel, presenting the signed "Declaration" as Wang Yangping's words and knowledge, is called into question as a result.

Contrary to its claim that it is the sworn "Declaration" of Wang Yangping, the affidavit instead appears to be a cut and paste of counsels' incorrect and often patently false assertions made in the initiating Complaint.  It is concerning that such an esteemed firm as SKO appears to have filed incorrect statements and representations before this Court claiming that these are the "declarations" of their client's representative.

Wang Yangping, who has some expertise in bitcoin mining, would never have made the laughably ridiculous claims contained in paragraphs 48 and 49 about the falsely inflated value of the older mining machines.  5 year old bitcoin mining machines do not provide any company with a "strategic advantage in the competitive marketplace" any more than a 5 year old iPhone would give a modern day cell phone user a "strategic advantage" in a "competitive marketplace." They are old, inefficient, use a comparatively enormous amount of electricity when compared with newer models, and therefore are incapable of making any significant profit when used in the competitive marketplace's current power rate.  See:  Affidavit of Dustin  Rogers, Exhibit 1, detailed Wang Yangping's actual reference to those machines as useless and cheap.

Wang Yangping, who designed and helped build the highly specialized boxes which the parties placed various Huobi mining machines at the Mohawk plant, and who personally helped to store the outdated machines in the warehouse would not have made the allegations contained in paragraph 21 of the Affidavit. Wang personally assisted in designing and crafting the boxes expressly to fit the newer and updated single cord machines rather than the outdated older two cord models.  As the affidavit at Exhibit 1 shows, the boxes could not contain the older, outdated models.

Wang Yangping, who received copies of the EDR fee schedule directly from the power company's representative on site, who received copies of the EDR contract directly from the

8

power company's lawyer, and who was present during the call and zoom with the power company's lawyer affirming the EDR available to Huobi, would not have made the false statements to this Court as are detailed in paragraph 27.

The Bowling Green lawyer who represented Huobi for a short time this past summer worked directly with Wang Yangping and a translator, and Wang Yangping received the letter, attached as Exhibit 2, which states that the plant is ready for use and requested a start date from Huobi.  This letter requesting a start date from Huobi was also discussed in meetings with counsel, the parties (including Wang Yangping) and a translator at that time.  That letter also affirmed Huobi's demand that Mohawk **not** sign the EDR contract which was in the possession of both parties [id, para. 1].  As a result, the undersigned believes that Wang Yangping would not have attempted to deceive this Court by stating under oath that Huobi was not offered a start date or asked to provide Mohawk with a start date or allowed to begin mining, or that Mohawk failed to get an EDR, as is claimed in paragraphs 25, 27 and 51.  Those claims are directly refuted in writing in the document sent by Mohawk to Huobi.

Wang Yangping communicated directly with Mohawk Operations Director Dustin Rogers and with Mohawk's President regarding the fact that an industrial site could not be used in a residential manner, when the RV used for housing was removed from the site. The statements in paragraph 29 about why workers were told they could no longer live in the business facility are personally known to him to be false and incomplete.

Lastly, it is common practice where an affidavit is executed in a language foreign to the affiant, that the means of authoring and reading/approving the affidavit, presumably via use of a translator, is disclosed therein.  SKO counsel failed to make any such disclosure before this Court and appear to assert that Wang Yangping wrote it himself and is completely fluent in

written and spoken English and approved the entirety of the statements in the document.  This raises an additional concern that must be explored in person with Wang Yangping on the witness stand.

Mohawk requests that the Court immediately schedule a hearing in which the parties may cross examine Wang Yangping in person to determine whether he is, in fact, the author of that "Declaration" and to question him on some of the issues of fact and contractual interpretation made therein to make sure he actually made those statements which are part of the public record and believes them to be true.

Respectfully submitted,

Anna Stewart Whites
ANNA WHITES LAW OFFICE PLLC
327 Logan Street
Frankfort KY 40601
(502) 352-2373 (office)
 Annawhites@aol.com
*Attorney for Defendant Mohawk Energy, LLC*

10

CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of
the foregoing was this day served via the
court's electronic filing system upon:

Palmer G. Vance
Lindsey H. Meares
STOLL KEENON OGDEN PLLC
300 West Vine Street, Suite 2100
Lexington, Kentucky 40507-1380

Harout J. Samra
DLA PIPER LLP (US)
200 South Biscayne Boulevard, Suite 2500
Miami, Florida 33131

This the 6st day of December, 2023.

_____
Anna Stewart Whites