UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

| | |
|---|---|
| **HBTPOWER LIMITED,** ) | CASE NO.: 3:23-cv-628-CHB |
| ) | |
| Plaintiff, ) | JUDGE: Claria Horn Boom |
| ) | |
| vs. ) | |
| ) | |
| **MOHAWK ENERGY, LLC,** ) | |
| ) | |
| Defendant. ) | |

# HBTPOWER LIMITED'S REPLY
# IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION

Plaintiff, HBTPower Limited ("HBTPower"), by counsel, submits this reply in support of its motion for this Court to compel Defendant Mohawk Energy, LLC's ("Mohawk") to arbitrate (DN 17) (the "Motion to Compel") the counterclaims asserted in Mohawk's Answer and Counterclaim to Verified Complaint for Temporary Restraining Order and Permanent Injunctive Relief (DN 14) (the "Counterclaim").

**A.   The License Agreement grants this Court jurisdiction over the provisional remedy sought by HBTPower.**

The issue before the Court is whether it must compel Mohawk to arbitrate the substantive claims asserted in Mohawk's Counterclaim.[1] The answer is yes. Because the Operation Right

---

[1] It is not clear from the face of the Counterclaim exactly what claims Mohawk is attempting to assert against HBTPower. On December 12, 2023, Mohawk filed a counterclaim against HBTPower in the JAMS arbitration pending between HBTPower and Mohawk (together, the "Parties"), which counterclaim purports to assert claims for defamation, intentional interference with prospective business advantage and intentional impairment of right to contract (the "JAMS Counterclaim"). A copy of the JAMS Counterclaim is attached as **Exhibit 1**. Mohawk's allegations in the JAMS Counterclaim are virtually identical to those contained in the Counterclaim filed in this action (See generally Counterclaim (DN 14)). Thus, one can presume that Mohawk intends to assert the same claims in this action as it has asserted in the JAMS arbitration.

License Agreement, dated June 1, 2022 (the "License Agreement"),[2] between the Parties is a "transaction involving commerce" within the meaning of the Federal Arbitration Act ("FAA"),[3] the License Agreement is covered by the FAA. 9 U.S.C. § 2. "[W]hen determining whether to stay or compel arbitration under the [Federal Arbitration Act], a court's first task is to determine whether the parties agreed to arbitrate." Touzi Tech, LLC v. BioFuel Mining, Inc., 2022 U.S. Dist. LEXIS 15800 at *3.

The Parties to this Action clearly agreed to arbitrate. The License Agreement expressly provides that disputes between Parties will be resolved through arbitration, but does not "preclude Parties from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction."[4] (Ex. 2 (License Agreement) at § 20(a).) The plain language and common-sense interpretation of the License Agreement illustrates that the Parties agreed to arbitrate substantive disputes and expressly agreed *not* to arbitrate claims for injunctive relief. See, e.g., Samaan v. Gen. Dynamics Land Sys., 835 F.3d 593, 601 (6th Cir. 2016) (citations omitted) (holding that federal courts use "general state-law principles of contract interpretation to the interpretation of an arbitration agreement," such as enforcing the plain and commonly used meaning of contract terms).

---

[2] A copy of the License Agreement is attached as **Exhibit 2**.

[3] Mohawk erroneously challenges HBTPower's characterization of the License Agreement as a "transaction involving commerce," instead arguing that it involves "the operation of the Kentucky plant under contract with Kentucky power, to engage in mining in Kentucky." (Mohawk's Response in Opposition to Motion to Compel (DN 19) ("Response") at 5.) However, in Touzi Tech, LLC v. BioFuel Mining, Inc., 2022 U.S. Dist. LEXIS 15800 (E.D. Ky. Jan. 28, 2022), the U.S. District Court for the Eastern District of Kentucky quickly concluded, without the need for analysis, that a bitcoin mining agreement governed by Kentucky law, the subject of which was bitcoin mining on Kentucky property, was a "transaction involving commerce." Id. at *2.

[4] More specifically, the License Agreement states, in relevant part, that "[a]ny dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate, shall be determined by arbitration in Lexington, Kentucky or Louisville, Kentucky before one arbitrator. . . . This Section 20 shall not preclude Parties from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction." (Id.)

That is precisely what HBTPower has done here. On November 29, 2023, HBTPower filed its Complaint for Temporary Restraining Order and Preliminary Injunctive Relief (DN 1) (the "Complaint"), which was not self-executing and was therefore followed soon after with HBTPower's Motion for Temporary Restraining Order (DN 16). The Complaint does not assert claims against, or seek damages from, Mohawk for HBTPower's claims for breach of contract, fraudulent misrepresentation, conversion or breach of the implied duty of good faith and fair dealing. (See generally Complaint (DN 1).) Rather, the relief requested by HBTPower in the Complaint is limited to:

> [A]n Order temporarily, preliminarily, and permanently enjoining and restraining Mohawk . . . from any activities involving the unauthorized sale, disposition or encumbrance of all or some part of the Mining Machines; and [ ]
>
> [A]ward HBTPower costs, legal fees, and all other relief, at law or equity, that this Court deems appropriate.

(Id. at 12.) Moreover, the Complaint specifically states that HBTPower is seeking "injunctive relief in the courts . . . without waiving arbitration" and reserves HBTPower's "right to seek damages and other relief before an arbitral tribunal consistent with the arbitration provision in the License Agreement." (Id. at ¶¶ 4, 59.)[5] Less than a week later, HBTPower filed its Demand for Arbitration (the "Arbitration Demand") before the Judicial Arbitration and Mediation Services, Inc. ("JAMS"),[6] this time asserting claims against Mohawk for fraudulent misrepresentation, breach of

---

[5] The Motion for Preliminary Injunction again makes it abundantly clear that the provisional relief sought should only remain in place until a duly constituted arbitral tribunal decides the underlying issues in dispute between the Parties. (See DN 23-1 at 1; see also DN 23-2 at 1, 12, 23.)

[6] Mohawk incorrectly states in its Response that "the arbitration provision in the initial agreement between the parties does not mandate use of JAMS, rather than a local arbitrator" and alternatively suggests that "[a]ny arbitration should be conducted by a Kentucky arbitrator in an in-person proceeding in Lexington or Eastern Kentucky." (Response (DN 19) at 2, 4.) To the contrary, Section 20(a) of the License Agreement expressly states, "[u]nless otherwise agreed by the [Parties], the arbitration shall be administered by JAMS pursuant to its Streamlined Arbitration Rules and Procedures" and "shall be determined by arbitration in Lexington, Kentucky or Louisville, Kentucky." (Ex. 2 (License Agreement) at § 20(a).)

contract, breach of the duty of good faith and fair dealing, and conversion.[7]

As counsel for Mohawk is particularly aware, HBTPower's decision to seek injunctive relief in the Complaint, and a remedy of law in the Arbitration Demand, is consistent with controlling precedent. Indeed, the United States District Court for the Eastern District of Kentucky explained as much *directly to* Mohawk's counsel in Touzi Tech, LLC v. BioFuel Mining, Inc., 2022 U.S. Dist. LEXIS 15800 (E.D. Ky. Jan. 28, 2022), in which Attorney Anna Whites (counsel for Mohawk) represented BioFuel Mining, Inc. ("BioFuel"). The plaintiff in that case asked for a preliminary injunction[8] restraining BioFuel from using the plaintiff's Bitcoin mining hardware for its own purposes and alleging that BioFuel breached the parties' bitcoin mining agreement.[9] Id. at *1. Attorney Whites asked the Court to hold the preliminary injunction hearing in abeyance because the parties agreed to mandatory arbitration via a provision in the mining agreement. Id. at *2. The Touzi Tech court rejected Attorney Whites' argument, instead holding that "[a] plain reading of the terms of the parties' agreement"—which required disputes to be resolved through arbitration while clarifying that "any federal or state court . . ." has jurisdiction over "pre-award relief"—"clearly gives this Court jurisdiction over the Plaintiff's requested relief [*i.e.*, a preliminary injunction]." Id. at *6. The same logic applies here, especially where the language in the Touzi Tech arbitration provision (*i.e.*, "pre-award relief") is substantially less clear than the language in the subject License Agreement, which specifically allows the Parties to seek

---

[7] A copy of the Arbitration Demand is attached as **Exhibit 3.**

[8] After the Touzi Tech court denied the plaintiff's request for a temporary restraining order, it scheduled a hearing on the plaintiff's preliminary injunction motion. Ultimately, the parties in Touzi Tech settled their dispute at the preliminary injunction hearing.

[9] Interestingly, Mohawk's sole member, Brandon D. Smith, was also a principal of BioFuel, which company was accused in Touzi Tech of virtually the same unlawful practices of which HBTPower accuses Mohawk in this case.

"provisional remedies in court." (Ex. 2 (License Agreement) at § 20(a).) As in Touzi Tech, HBTPower's request for relief is limited to provisional remedies.

The Touzi Tech court further noted that it would be able to grant injunctive relief even if the License Agreement did not specify that the Court has jurisdiction over "provisional relief":

> In a dispute subject to mandatory arbitration under the Federal Arbitration Act, a district court has subject matter jurisdiction under § 3 of the Act to grant preliminary injunctive relief provided that the party seeking the relief satisfies the four criteria which are prerequisites to the grant of such relief.

Touzi Tech, LLC, 2022 U.S. Dist. LEXIS 15800, at *5 (quoting Performance Unlimited v. Questar Publishers, 52 F.3d 1373, 1380 (6th Cir. 1995)). HBTPower's decision to seek injunctive relief before this Court, while simultaneously litigating the merits of its claims in arbitration, is proper.

Instead of following HBTPower's lead, Mohawk has improperly asserted substantive claims in this action, over which this Court does not have jurisdiction. (See generally Counterclaim (DN 14).) Because Mohawk agreed to arbitrate "any dispute, claim or controversy arising out of relating to th[e] [License] Agreement," this Court should dismiss Mohawk's Counterclaim and compel Mohawk to litigate the merits of its substantive claims before the proper forum in the pending JAMS arbitration.[10]

### B. HBTPower has not waived arbitration by including factual allegations in the Complaint sufficient to show "a substantial likelihood of success on the merits."

To get around this, Mohawk erroneously argues in its Response that "when [HBTPower] was disappointed by this Court's initial judicial review of the facts and law . . . [it] changed its mind about this Court as the proper forum and suddenly demanded that the matter be moved."

---

[10] Mohawk submitted a virtually identical counterclaim in the JAMS arbitration after HBTPower filed the Motion (DN 17) in this action. Mohawk's decision to place its substantive claims before the arbitral tribunal would imply that Mohawk agrees with HBTPower's Motion to Compel arbitration of Mohawk's substantive claims.

(Response (DN 19) at 3.) To the contrary, HBTPower always intended to arbitrate the merits of its substantive claims against Mohawk, while simultaneously seeking injunctive relief from this Court to preserve the status quo. This is precisely why the Complaint in this action does not seek relief for HBTPower's contract, tort and fraud claims against Mohawk. Moreover, HBTPower has not "suddenly demanded that the matter be removed" from this Court entirely, as Mohawk suggests. Rather, HBTPower has simply asked this Court to compel Mohawk to litigate its substantive claims in arbitration. HBTPower's request for provisional relief will properly remain before this Court.

Mohawk devotes a substantial portion of the Response incorrectly insisting that HBTPower waived arbitration when it made "significant factual assertions unrelated to the requests for injunctive relief" in the Complaint. (Id. at 1, 2-7.) However, the factual allegations in the Complaint with which Mohawk takes issue are intended to satisfy the elements for injunctive relief outlined in Sixth Circuit precedent. Specifically, the Sixth Circuit has held that, for injunctive relief to issue, a federal plaintiff has the burden of establishing that it has a "strong or substantial likelihood of success on the merits" of its substantive claims, among other elements. Mason County Med. Ass'n v. Knebel, 563 F.2d 256, 261 (6th Cir. 1977); see also In re Delorean Motor Co., 755 F.2d 1223, 1228 (6th Cir. 1985); Frisch's Restaurant, Inc. v. Shoney's, Inc., 759 F.2d 1261, 1263 (6th Cir. 1985). Thus, to satisfy HBTPower's burden on this element, the Complaint contains factual allegations sufficient for the Court to conclude that HBTPower has a substantial likelihood of success on the merits of its contract, tort and fraud claims against Mohawk.

Mohawk's suggestion that "[a] request for injunctive relief that did not waive arbitration would have been limited solely to an order that Mohawk not sell the mining machines, and would not have included the other matters" is both procedurally and substantively wrong. (Response (DN

19) at 3.) See e.g., U.S. v. School Dist., 577 F.2d 1339 (6th Cir. 1978) (express findings of fact and conclusions of law on issue of probability of success on merits are necessary). Had HBTPower followed Mohawk's advice, this Court would have no choice but to deny its request for injunctive relief for failure to demonstrate a substantial likelihood of success on the merits. Id. HBTPower did not waive arbitration of the Parties' substantive claims by seeking to plead the proper elements for injunctive relief before this Court.

Mohawk points to a number of Kentucky cases that purportedly support its argument that "participation in a judicial proceeding may act as a waiver of arbitration if the party seeking such resolution participates without requesting arbitration." (Response (DN 19) at 6 (citing Valley Constr. Co., Inc. v. Perry Host Mgmt. Co., Inc., 796 S.W.2d 365 (Ky. App. 1990)).) As an initial matter, Kentucky law does not apply where the License Agreement affects interstate commerce so as to trigger the applicability of the FAA. Overlook Terraces, Ltd. v. Tamko Bldg. Prods., 2015 U.S. Dist. LEXIS 119325, at *15 (W.D. Ky. May 21, 2015) (holding that where arbitration provisions are governed by the FAA, the Kentucky Arbitration Act need not be considered) (citing MHC Kenworth-Knoxville/Nashville v. M&H Trucking, 392 S.W.3d 903 (Ky. 2013)). Furthermore, a party waives its right to arbitration only if it acts in a manner "completely inconsistent with any reliance on an arbitration agreement" or delays asserting arbitration "to such an extent that the opposing party incur[red] actual prejudice." Hurley v. Deutsche Bank Tr. Co. Ams., 610 F.3d 334, 338 (6th Cir. 2010) (quoting O.J. Distrib., Inc. v. Hornell Brewing Co., 340 F.3d 345, 356 (6th Cir. 2003)). As detailed below, HBTPower clearly did not waive its right to arbitration.

First, HBTPower acted consistently with its reliance on the arbitration provision in the License Agreement where the Complaint in this action seeks only provisional relief and twice

reserves HBTPower's power to seek "injunctive relief in the courts . . . without waiving arbitration" and "right to seek damages and other relief before an arbitral tribunal consistent with the arbitration provision in the License Agreement." (Complaint (DN 1) at ¶¶ 4, 59.) HBTPower's consistency is further supported by Rule 19(d) of the JAMS Streamlined Arbitration Rules & Procedures, which provides that, "[a]ny recourse by a [p]arty to a court for interim or provisional relief <u>shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate</u>." Second, HBTPower did not delay arbitration in this case, but instead filed its Demand in the JAMS arbitration just three (3) business days after filing the Complaint in this Action. (See Ex. 3 (Demand).)

The agreement to arbitrate enshrined in the License Agreement clearly requires the Parties to resolve substantive claims in arbitration while simultaneously permitting them to seek provisional relief from this Court. (See Ex. 2 (License Agreement) at § 20.)  HBTPower has ensured perfect compliance with the arbitration agreement by commencing arbitration on its contract, tort, and fraud claims, while seeking injunctive relief from this Court. Mohawk, on the other hand, has again demonstrated its blatant disregard for the License Agreement by attempting to assert substantive claims against HBTPower in the Counterclaim. Accordingly, this Court should "make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement" and dismissing Mohawk's Counterclaim. 9 U.S.C. § 4.

**C.      Mohawk's Attack on Counsel is Inappropriate**

The Response also delves into issues entirely irrelevant to HBTPower's Motion to Compel arbitration on Mohawk's substantive claims, but which HBTPower feels compelled to briefly address. In the Response, Mohawk declares its concern "that such an esteemed firm as SKO appears to have filed incorrect statements and representations before this Court claiming that these

are the 'declarations' of their client's representative." (Response (DN 19) at 8.) Specifically, Mohawk takes issue with the Declaration of Wang Yangping, dated December 5, 2023 (DN 16-2) (the "First Declaration"), which was attached to HBTPower's Motion for Temporary Restraining Order (DN 16) and again attached to HBTPower's Motion for Preliminary Injunction (DN 23-2). First and foremost, accusations of this sort directed at counsel are unnecessary, discourteous and lack civility. See e.g., Mafcote, Inc. v. Fed. Ins. Co., 2010 U.S. Dist. LEXIS 46408, at *8-*9 (W.D. Ky. Feb. 25, 2010) ("It is common in the Western District of Kentucky, in which a laudable civility largely reigns among those admitted to practice, for lawyers to trust each other's official representations as thoughtfully, thoroughly, and accurately made[ ] . . . [.]"). Second, as is proper practice, the First Declaration was drafted under Mr. Yangping's instructions based upon facts provided to counsel, was read and explained to Mr. Yangping—who has limited proficiency in English language—by bilingual counsel in Chinese and was signed by Mr. Yangping under penalty of perjury. Third, the First Declaration bears no relevance to HBTPower's Motion to Compel Mohawk to arbitrate its claims in the Counterclaim. Mohawk will have the opportunity, in its Response in Opposition to HBTPower's Motion for Preliminary Injunction and again at the Preliminary Injunction hearing before this Court, to dispute the factual assertions contained in the First Declaration. Any attempts to undermine credibility should not be directed at counsel, but should involve the proper (and respectful) presentation of contradictory evidence, if any such evidence exists, at an appropriate time.

## CONCLUSION

In summary, HBTPower has asked this Court to grant provisional relief in the form of a preliminary injunction, not resolve the merits of HBTPower's dispute with Mohawk. In complete compliance with the Parties' agreement to arbitrate in Section 20(a) of the License Agreement,

HBTPower submitted its substantive claims against Mohawk to arbitration administered by JAMS and seated in Louisville, Kentucky. This Court should compel Mohawk to do the same. Mere participation in judicial proceedings in relation to provisional relief, while reserving the right to bring—and indeed bringing—claims before a competent arbitral tribunal is in no manner a waiver of the arbitration agreement between the Parties. Mohawk cannot litigate the substantive claims in the Counterclaim before this Court. Thus, HBTPower's Motion to Compel Mohawk to submit its substantive claims to arbitration should be granted.

    Respectfully submitted,

    STOLL KEENON OGDEN PLLC
    300 West Vine Street, Suite 2100
    Lexington, Kentucky 40507-1380
    (859) 231-3000
    (859) 253-1093 facsimile

    By: /s/ Lindsey H. Meares
        Palmer G. Vance II
        Lindsey H. Meares

    and

    Harout J. Samra
    DLA PIPER LLP (US)
    200 South Biscayne Boulevard, Suite 2500
    Miami, Florida 33131
    Telephone: (305) 423-8500
    Facsimile: (305) 437-8131
    Florida Bar No. 70523
    Harout.Samra@us.dlapiper.com

    Admitted *pro hac vice*

    COUNSEL FOR PLAINTIFF,
    HBTPOWER LIMITED

## CERTIFICATE OF SERVICE

I certify that on December 20, 2023, I served the foregoing via CM/ECF, which will send all parties of record a notice of electronic filing, including the following:

Anna Stewart Whites
Anna Whites Law Office
327 Logan Street
P.O. Box 4023
Frankfort, KY 40601
E: annawhites@aol.com
COUNSEL FOR DEFENDANT,
MOHAWK ENERGY, LLC

/s/ Lindsey H. Meares
*Counsel for Plaintiff,*
*HBTPower Limited*