# Exhibit 1

**IN ARBITRATION BEFORE JAMS**

| | | |
|---|---|---|
| **HBTPOWER LIMITED** | ) | |
| | ) | |
| *Petitioner* | ) | |
| | ) | **CASE NO. #5440001154** |
| **v.** | ) | |
| | ) | |
| **MOHAWK ENERGY, LLC** | ) | |
| | ) | |
| *Respondent* | ) | |

---

## <u>DEFENDANT MOHAWK ENERGY'S RESPONSE TO DEMAND FOR ARBITRATION AND REQUEST TO HOLD MATTER IN ABEYANCE</u>

Comes the Respondent, Mohawk Energy, LLC by counsel, and hereby provides the following RESPONSE to the Demand for Arbitration filed by Petitioner HBTPower Limited (hereinafter "Huobi"). As an initial matter, JAMS should note that Mohawk has presented significant evidence that the Petitioner in this action is not actually the entity with which it initially contracted. No proof has been adduced by the Petitioner that HBTPower Limited still exists, let alone that it has authorized or filed this action. The only individual to appear in the action on behalf of Petitioner is a terminated ex-employee of Huobi, who created his own company, a Kentucky corporate entity deceptively titled "HBTPower Inc." This entity has no contractual relationship with Mohawk whatsoever and appears to be improperly assuming rights reserved exclusively to the original contracting parties. This initial matter obviously must be clarified before the parties can even consider any proposal to arbitrate, rather than litigate, this matter. If HBTPower Limited is not before JAMS, then there is no agreement to arbitrate with the imposter company or the independent contractor who signed the "verified" Complaint. This

1

jurisdictional matter must be addressed before arbitration can move forward, under JAMS Rule 11.

This matter, including the suspect identity of Petitioner, is currently pending before a United States Federal District Court. This Federal Court has expressly declined to dismiss the wide-ranging legal action already filed by Petitioner. Obviously, this matter must be dismissed or held in abeyance until the Federal Court has determined whether Huobi will be permitted to abandon its Federal action, and the Court rules upon the related issue of whether Huobi knowingly misrepresented the authority of the complainant in the Federal action.

If the Federal Court eventually determines that it has addressed all matters before it and Orders the remaining issues to be heard in arbitration, Mohawk hereby demands a conference under JAMS Rule 6 to ascertain the real party in interest on the Petitioner's side, if any, and to address the improper and incorrect claims made in the Demand and exhibits thereto.


I. ANSWER TO DEMAND FOR ARBITRATION

1. Mohawk affirms that the initial agreement between the parties was entered into as outlined in paragraph 1 of the Demand for Arbitration, but notes (as its Answer before the Federal Court sets out), that the parties jointly modified that initial agreement throughout their course of dealing as a consequence of HBTPower's inability to comply with the requirements and deadlines therein.  This mutual modification is supported both by the video records of the parties' weekly zoom meetings and by emails and other written communications between the parties.

2.  Mohawk denies the mischaracterization of documented facts as detailed in paragraph 2 of the Demand for Arbitration, and notes that it had an established ownership interest in the

building, as is well known to Huobi, and was making the final payments on that site during the parties' eighteen months of operation.  Mohawk now has total fee simple ownership of the property in question because it has paid the full purchase price and exercises dominion and control over the subject property.

Mohawk also affirms that it had entered a power agreement with Kentucky Power Company at the time of the parties' contract but notes that until the parties are ready to assume the full power load and the PSC has approved such load, no final agreement on rate can be executed.  Once those conditions were met, the final agreement including power rate was executed.  Throughout the  term of  the contract, the parties worked together and Mohawk met regularly with Huobi and the power company to negotiate lower rates, including the EDR (Economic Development Rate), and to find additional sources of revenue such as state and local grants to further lower the IGS rate.  Other than the EDR, those additional lower rates or incentives are not available until the entity is fully operational.  As Huobi refused to begin mining at the site, those lower rates could not be finalized.  See:  Answer before the Federal Court, Exhibit 1.

3.  As noted in paragraph 3 of the Demand, Mohawk diligently prepared the site. Unfortunately, Huobi refused to pay for or approve purchase of various necessary materials in a timely fashion.  This ongoing delay and disruption of the fit-up process by Huobi resulted in Mohawk's inability to complete the project as the parties initially contemplated.

4.  Mohawk denies the claims made in paragraph 4 of the Demand for arbitration.  All the machines sent to the Mohawk site were older, many as much as 3+ years old, and were of a type commonly available in the public marketplace to any individual desiring to purchase them. The mining machines had no special or exceptional qualities, as further detailed in Mohawk's

Answer and pleadings before the Federal Court, Exhibit 1, appended hereto.  Mohawk would note the impropriety of Huobi continuing to file those false allegations before judicial bodies, despite now being apprised of the incorrect and patently false nature of the claims.  At this point, Huobi is intentionally attempting to deceive this body, with full knowledge of the falsity of its claims.  See:  Mohawk's Response to Motion to Arbitrate, Exhibit 2.

5.  Mohawk denies the allegations contained in paragraph 5 of the Demand.  Again, these claims have already been addressed in the Federal Court pleadings.  Huobi is intentionally attempting to deceive this body with the potentially fraudulent "declaration" or affidavit of a former Huobi independent contractor, with apparently no bona fide standing as a party to the contract. In short, Huobi is now filing claims that it knows to be false.

6.  Mohawk denies the false assertions made in paragraph 6 of the Demand and notes that the Federal Court pleadings refute those claims.

7. Mohawk denies the allegations in paragraph 7 of the Demand and affirmatively states that  various older and low value mining machines, of a fungible nature, were sold to satisfy liens against Huobi for six months of unpaid rent and labor at the site, as is more fully set out in the Response to Motion for Temporary Restraining Order, Exhibit 3 hereto.

8.  Mohawk denies the allegations contained in paragraphs 8 and 9 and 10 of the Demand and would show this body that the matter is not ripe for arbitration.  Huobi intentionally brought the entirety of its claims before the Federal Court.  See:  Huobi Complaint, made part of the record herein.  Huobi openly forum shopped, initially filing in a patently inconvenient forum for some perceived advantage. When the initial ruling from that Federal Court recognized the

validity of Mohawk's position, Huobi attempted to further forum shop by moving the action for a third time, to JAMS.  See:  Motion to Transfer Venue, Exhibit 4 hereto.

9.   Mohawk admits the allegation in paragraph 11 of the Demand.

10.   Mohawk admits the allegations in paragraph 12 of the Demand and further notes that Huobi intentionally brought the entirety of the matter before the Federal Court and has therefore waived any right to file this arbitration. If the agreement to arbitrate applies, which Mohawk contends that it does not, the agreement requires live and in person arbitration in Lexington, Kentucky.  Under JAMS Rule 19, this live and in person forum must be utilized for any arbitration.  As JAMS does not appear capable of providing that essential contractual requirement, this matter should be transferred to AAA or some other arbitration entity with a physical presence in Kentucky.

11.   Mohawk is without knowledge to admit or deny the allegations contained in paragraph 13 of the Demand.  It appears that the entity using the name "HBTPower Limited" may not actually be that entity and that the real party in interest is not before this body or the Federal Court. Furthermore, Mohawk has now received a demand from a third party (represented by separate counsel) claiming that it is they who actually own the machines in dispute. Mohawk obviously cannot accept the suspect and unproven claim that "HBTPower" is the true owner of the machines when other entities are simultaneously claiming that status. If  HBTPower is actually the owner of the mining machines, it is incumbent upon them to promptly produce corroborating evidence of that claim before this action may proceed in any forum.  See, Request for Judicial Notice, Exhibit 5.

12.   Mohawk admits the allegations in paragraph 14 of the Demand and further notes that it was created in order to further economic development in Eastern Kentucky by providing employment and job training/certification to displaced flood victims and coal miners.  It is those activities which entitle Mohawk and any partner working with it on bitcoin mining or other activities, to apply for state and federal electrical rate assistance, including the EDR.

13.   Mohawk is without knowledge to affirm or deny the allegations in paragraphs 15, 16, 17 or 18 of the Demand and same are therefore denied.

14.   Mohawk admits to the allegations contained in paragraph 19 of the Demand and is proud to have fit up the property, at great  expense to Mohawk, to meet Huobi's ever changing demands and requirements throughout the parties' relationship.

15.   Mohawk admits the allegations in paragraph 20 of the Demand, and notes that this was the initial agreement, before the parties repeatedly modified and amended it.

16.   Mohawk denies the allegations in paragraph 21 of the Demand and notes that it and Wang Yangping, then a Huobi employee, went over ownership of the property and repeatedly discussed Mohawk's purchase agreement for the site with both Mohawk and the seller.

17.   Mohawk admits that the allegations in paragraphs   22 and 23 were in the initial agreement, before the parties had to modify it due to Huobi's nonpayment, delays and change orders.

18.   Mohawk admits the allegations contained in paragraph 24 of the Demand but notes that such purchase was delayed repeatedly by Huobi throughout the parties' agreement.

Additionally, supply chain issues caused some delays on occasion, as was discussed repeatedly with Huobi during the parties' weekly zoom meeetings.

19.  Mohawk affirms the allegations in paragraphs 25, 26 and 27  that the price it was paid for fit up was its $8 million bid and affirms that it did fit up the property for that sum, including repeatedly modifying the fit up and design at Huobi's demand.  The deadlines applicable to any fit up were repeatedly delayed by Huobi throughout the process.

20.  Mohawk affirms that it applied for the EDR as outlined in paragraphs 28- 30 of the Demand, but notes that not only did Huobi repeatedly delay the fit up process, but Huobi refused to permit Mohawk to sign the EDR contract, which has been on offer to the parties for a year, and refused to pay the bond for that EDR as required by the Kentucky Public Service Commission and the power company.

21.  Mohawk denies the allegations in paragraphs 31-33 of the Demand and notes that the parties agreed on prompt payment by Huobi of the fit up sum of $8 million and a power deposit on Mohawk's part of $2.8 million.  Huobi delayed payment of those agreed upon sums, jeopardizing the parties' agreement and requiring frequent amendments and modifications thereto.

22.  Mohawk admits that the statements in paragraph 34 of the Demand are contained in the original agreement, before modification by the parties.

23.  Mohawk denies the allegations in paragraphs 35 and 36 of the Demand and notes that the site has been ready for use for months and that Mohawk has repeatedly requested that

Huobi begin mining as this unwarranted delay in performance is causing Mohawk to suffer extensive financial loss.

24.  Mohawk denies the allegations paragraph 38 of the Demand.

25.  Mohawk admits the allegations in paragraph 39 and notes that Huobi breached that requirement.

26.  Mohawk denies the allegations in paragraphs 40-44 of the Demand and affirmatively states that even individuals operating personal bitcoin mining ventures in their basements own the type of machines provided by Huobi.

27.  Mohawk denies the allegations in paragraph 45 of the Demand and notes that the EDR contract has been repeatedly provided to Huobi and Mohawk by the power company but that Huobi refused to permit Mohawk to sign it.

28.  Mohawk denies the false claims made in paragraph 46-47 of the Demand.

29.  Mohawk denies the allegations in paragraph 48- 51 of the Demand and notes that Mohawk owns the property and has throughout the parties' agreement, is not in a dispute with the seller of the property, who is a Mohawk member, and that Huobi was well aware of these facts for the entirety of the contract period.

30.  Mohawk denies the allegations of paragraph 52-54 of the Demand and notes that the fit up was completed by Mohawk for the price agreed upon, despite Huobi's constant changes and demands, and that where  pro forma invoices exist, Huobi was provided those.  Where no such invoices exist, Huobi reviewed and approved all manufacturer orders and delivery notices,

aided in installation of fixtures to the property, and even on multiple occasions accompanied Mohawk to manufacturer sites to review and approve specific expensive equipment or fixtures.

31.  Mohawk denies the false claims made in paragraph 55 of the Demand and notes that the site has been ready for use for months and that Mohawk has repeatedly requested that Huobi begin mining.

32.  Mohawk denies the claim in paragraph 56 of the Demand and notes that Huobi's employees were not permitted to reside in the factory after it was complete, due to zoning restrictions but that Huobi was never "ousted" from the property.

33.  Mohawk denies the allegations in paragraph 57, 58, 50 of the Demand.

34.  Mohawk admits the allegation in paragraphs 60, 63 and 64, 66, 67 of the Demand but notes that after five months of nonpayment by Huobi for labor and rent and electricity and insurance, Mohawk  was forced to sell some of the older Huobi machines to defray those expenses.

35.  Mohawk denies the false assertion in paragraph  62 of the Demand.

36.  Mohawk denies the false claims made in paragraph 65 of the Demand and notes that Huobi is well aware of the Agreed Order filed with the federal court regarding sale of equipment.

37.  Mohawk denies the allegations of paragraphs 68 – 70 of the Demand and reminds Huobi and this Body that the machines are old, outdated, and of the type anyone can buy on the open marketplace.  They are a readily available and fungible low cost good.

38.  Mohawk denies the allegations in paragraph 71 of the Demand and notes that written documentation from Mohawk to Huobi noted that residential use of the business site was not permitted under zoning regulations, that Huobi needed to promptly begin mining so that it would cease financially harming Mohawk with its nonperformance, and that it is Huobi who caused the entirety of the delays and slow downs in fit up, and who refused to begin mining six months ago when the fit up was complete.

39.  Paragraphs 72 and 89 and 94 and 99 of the Demand does not require an answer.

40.  Mohawk admits that both parties had a fiduciary duty, as detailed in paragraph 73 of the Demand.

41.  Mohawk denies the false statements made in paragraphs 74-88 of the Demand.

42.  Mohawk admits that the parties entered a  written agreement as outlined in paragraph 90 of the Demand but shows that the parties modified that throughout the course of the working relationship.

43.  Mohawk denies the allegations in paragraphs 91-93 of the Demand.

44. Mohawk denies the allegations in paragraph 95 of the Demand and states that the statute is the best evidence of its contents.

45.  Mohawk denies the allegations contained in paragraphs 96-98 of the Demand.

46.  Mohawk denies the allegations in paragraph 100 of the Demand and further notes that it believes that the real HBTPower Limited is not before this body, that the "verified" Complaint was signed by a former employee of Huobi and not by a Huobi representative, and

that the entity before this body is not, in fact, the party that contracted with Mohawk and neither is it the owner of the mining machines. It appears that the party before this Body may be an imposter attempting to steal asserts belonging to the real HBTPower Limited or Huobi and Mohawk.

47. Mohawk admits that due to six months old unpaid Huobi debts for fit up, labor, insurance, space rent and electricity it was forced to sell some of the older machines to reimburse itself for paying those expenses on Huobi's behalf as stated in paragraph 101 of the Demand.

48. Mohawk denies the allegations in paragraph 102-104 of the Demand and notes that it is protecting the machines until the forum intentionally selected by Huobi to hear the matter, that being the Federal Court, can determine the true owner of the machines, the sum of the debt owed Mohawk and other appropriate relief.

## II. WAIVER BY HUOBI OF ANY RIGHT TO REQUEST ARBITRATION

As noted in Mohawk's Response to the Motion to Arbitration, Exhibit 2 hereto, Huobi intentionally waived any right to require the parties to mediate the matter by filing all its concerns in the Federal Court Complaint. At that point, there were no issues reserved for the arbitration process. The Federal Court has jurisdiction over this matter and has already expended significant time addressing and reviewing the issues raised by both parties. The case should not be removed from that jurisdiction unless the Federal Court so orders.

Huobi made heinous and intentionally false allegations against Sen. Smith, the other Mohawk members, and this vital economic development entity in a public forum. It should not now be permitted to scurry off into a confidential process, leaving those false claims in the

public eye.  Huobi's actions are properly considered an intentional impairment of Mohawk's future business opportunities, made for no other reason than to strong arm a rapid settlement with an unqualified plaintiff. Huobi must remain in the Federal Court it voluntarily chose and be made to answer for these outrageous claims and correct the damagingly inaccurate record it created.

Huobi intentionally, willingly and in writing waived any claim to arbitration by filing its Complaint in Federal Court.  The complaint was not a motion for injunctive relief, which was filed days later, but was a complaint of breach of contract and for various damages.  Huobi selected the open and public federal forum, and there the case must remain.

### III. CONCERNS ABOUT FALSE CLAIMS MADE BY "HUOBI" BEFORE THE COURT AND THIS BODY

Invoking the extraordinary powers of a Federal Court or an arbitration body should be accompanied by due deliberation, not haste, shortcuts or lies.  Mohawk is a bright spot of worker training and economic opportunity, proudly serving a rugged and deprived region. But now a Federal case file contains defamatory and false allegations of base thievery by Mohawk. This is a demonstrable lie, refuted by the written statements of the putative deponent himself, an admitted former employee of HBTPower Limited, not a current employee or representative.

Now potential investors in Mohawk who exercise due diligence will see these inflammatory falsehoods. Senator Smith, the President of Mohawk, rightly fears erosion of the public trust he has carefully built up. Senator Smith gave in person tours of Mohawk to diverse dignitaries, including former Kentucky Governor Paul Patton and current United States Defense Secretary Lloyd Austin. Huobi's publicly filed unfounded allegations undercut this goodwill and

threaten to eliminate the carefully cultivated business advantage so important to a young company in a harsh and demanding environment. These real and foreseeable damages are directly caused by the presentment of this suspect claim to the Federal Court and to JAMS.

Mohawk's responsive pleading demonstrates to JAMS and the Federal Court that the affidavit filed by the entity claiming to "HBTPower Limited" bears indicia of imposture, and should be examined accordingly. Huobi directs this Court that it "shall" immediately dismiss this action in its entirety, despite itself having filed this emergency action and inundated the Court with pleadings on every aspect of the case, including damages, contractual terms and provisions, outside utility approvals, labor and costs, insurance and costs, value of the machines, the fit up process, ownership of the site and claimed damages incurred.

Clearly the entirety of the pleadings filed by Huobi, or the entity claiming to be Huobi, constitutes waiver of any claimed right to take the case from the Federal Court and move it to JAMS. The parties have already expended significant effort in presenting this case for the Court's prompt and thoughtful consideration and initial rulings. To pretend otherwise is dismissive of the Court's time and effort, (not to mention the expense of staff in filing, docketing, tracking and administering a case), filed in what now appears to be an unsuccessful forum shopping effort. Filing an emergency Federal action and subsequently submitting a false and defamatory affidavit are actions with potentially severe consequences. JAMS should not allow itself to be used as a shield for such behavior.

Even if Huobi is permitted to abandon its own case, the Federal Court most assuredly retains full authority to police this action by examining the authenticity of the Wang affidavit, as requested by Mohawk. Counsel expects a sworn deposition of Mr Wang to take no more than a few hours at most.

Federal process is not a tool to abuse for some imagined short term gain in a bitcoin mining gambit.  Both  the federal court and JAMS deserve some explanation from Huobi as to why the affidavit it submitted is so facially at odds with the existing statements of the affiant himself. To ignore these troubling inconsistencies would only embolden future improper gamesmanship.

Huobi clearly cannot defend the affidavit it submitted to the Federal Court and JAMS. The central allegation is that machines (now admitted to be outdated and inefficient, and sold on Amazon at bargain prices), are somehow irreplaceable high tech stolen by Mohawk. The affidavit is false on its face, Huobi knows it and Mohawk knows it. As is set out in the Federal Court pleadings, the only place Mohawk has previously heard the wildly false and incorrect allegations contained in the document that purports to be Wang Yangping's affidavit is from Huobi's former counsel, who was under the erroneous impression that the machines were essentially irreplaceable. (She was, perhaps obviously, unfamiliar with bitcoin mining.).  It appears to Mohawk that Huobi has confused its earlier debunked theory with actual provable facts, and in its haste to obtain the supposedly irreplaceable machines, has foisted upon the Court and JAMS an improper document parading as the sworn affidavit of an actual authorized Huobi representative.

Huobi has improperly used this forum and the Federal Court to cause harm to Mohawk by making allegations which they know, or in the exercise of reasonable care would have known, are false. Now Huobi wants to divest the Federal Court of jurisdiction over its questionable claims and false and inaccurate affidavit, and move to a new forum.  JAMS should not join Huobi in this improper effort. Instead, Huobi should proceed under the Federal Court

briefing schedule already agreed to by counsel and submitted to the Court. The action should remain in the forum selected by Huobi, rather than being removed to an arbitration forum.

The initial Agreement between the parties was signed by Huobi's Director Zhuo Wang, and also had the signature of Yangping Wang, under the title "General Manager."  Zhuo Wang is not listed as a party to this action, which appears to be directed by an independent contractor or consultant, employed by a wholly different entity in which Huobi is not a party. HBTPower Limited, or an individual or entity claiming to be HBTPower Limited, filed a "Motion to Compel Arbitration" in the federal court record.  #17

Wang Yangping's visa application shows that he is an employee of the Kentucky company HBTPower, Inc., not of HBTPower Limited, the foreign company bringing this action. Wang further falsely claims in his INS application that he manages certain Kentucky employees (all the Chinese employees at the Mohawk Plant) and one of Mohawk's management level employees.  Wang Yangping listed Dustin Rogers, Mohawk's Operations Manager and Infrastructure Director, as one of the individuals he directly supervises.  See:  Email from his attorney, attached as Exhibit 6 to this document.  HBTPower Inc. is not a party to the Federal Court action or the JAMS arbitration.

HBTPower Limited filed an affidavit from an individual who appears to be a non-employee consultant in the record.  Wang Yangping's Declaration states, at paragraph  2, that he is "employed" as a "Technology Consultant" for HBTPower, and that he is its "authorized representative."  He notes that his employment as General Manager for HBTPower ended in November, 2023.  Id.  Records filed in America with INS are believed to show him as an employee of the Kentucky company HBTPower, Inc., which is not a party to this action. Consultants are not typically considered employees of the companies which are their clients.

https://www.indeed.com/career-advice/finding-a-job/how-to-get-hired-as-consultant#What%20does%20a%20consultant%20do? HBTPower Limited is not a consulting firm, so it appears likely that it is just a client of Yangping Wang, and not his employer.

In 2020 an individual named Yangping Wang filed a Nevada corporate entity titled Huobi Nevada, Inc., File Number E5262982020-8, which is now in default in that state. The filing lists him as a Director in that entity. HBTPower Limited was not listed as a shareholder in that entity, despite it using the "Huobi" name. Huobi Nevada appears to have been sold to a holding company and is not listed as a Huobi asset. Huobi Nevada is just one of a host of different entities using the Huobi name, many of which appear in online searches not to be owned by Huobi at all and none of which appear to be owned or operated by HBTPower Limited.

There is nothing in the record from HBTPower Limited to affirm Wang Yangping's claim to be the authorized representative of the company. No verification from HBTPower Limited designating him as its agent is part of the record. Typically, consultants are not considered representatives of the companies they consult for. The "Cease and Desist" letter in this case is filed by counsel who purport to represent HBTPower Limited. The "Verified Complaint for Temporary Restraining Order" filed in the federal court action is verified by Wang Yangping, who claims to be employed by a different entity, HBTPower, Inc., a Kentucky corporation, and has affirmed that he is only a consultant for HBTPower Limited. There is a significant concern that this consultant is not actually an employee of HBTPower Limited and therefore cannot be its authorized representative or verify any complaint on its behalf.

There is no evidence in the Federal Court record affirming that the real party in interest is before the Court or before JAMS. The undersigned could find no filed designations with any

16

government agency showing that Yangping Wang is the registered agent or other delegate assigned by HBTPower Limited to carry out its business activities.  Yangping Wang may merely be a terminated employee who is trying to take advantage of Mohawk by demanding it turn over mining machines belonging to a third party who is not part of the action.  This type of attempt to steal mining machines owned by someone else from a mining host site is commonplace in the bitcoin mining industry. Mohawk will therefore retain the equipment in question in its secure warehouse until the Federal Court determines ownership thereof.

IV.  AFFIRMATIVE DEFENSES

FIRST AFFIRMATIVE DEFENSE

Defendant pleads the affirmative defenses found in Federal Rules of Civil Procedure or otherwise available including accord and satisfaction, assumption of risk, contributory negligence, duress, unclean hands, estoppel, waiver, and failure of consideration.  As outlined herein, Mohawk and Huobi repeatedly restructured their agreement, voluntarily at times and due to Huobi's refusal to timely pay or timely approve purchases or sums.  All alleged injury complained of by Huobi is due to the misconduct or nonfeasance of Huobi, its agents and employees.

SECOND AFFIRMATIVE DEFENSE

Mohawk alleges impossibility as a defense to any claim by Huobi that Mohawk could have or should have controlled the power rate, prevented the PSC or the Power Company from changing a power rate, controlled the rate of the EDR, prevented the Power Company and/or PSC from requiring a contract and/or bond as a  prerequisite to receiving an EDR, or otherwise provided Huobi with a power rate lower than that required or permitted by law, power company regulations or PSC requirements.

Mohawk also alleges impossibility of performance as Huobi delayed the initial agreement, repeatedly changed deadlines or caused deadlines to be changed and otherwise modified the agreement such that it could not be complied with as initially written. Mohawk asserts impossibility of performance as Huobi refused to begin mining at the site and to date, has refused to conduct the business for which the parties contracted.

THIRD AFFIRMATIVE DEFENSE

Mohawk alleges illegality of the direction given by Huobi with regard to any claim that Huobi agents or employees should have been able to make residential use of a commercial property or been permitted by Mohawk to take any action in violation of local, state or federal law or regulation.

COUNTERCLAIMS

In accordance with JAMS Procedural Rule 9(a), Mohawk provides notice to the Petitioner and the arbitrator of the defenses and counterclaims found in its Answer and counterclaim before the Federal Court, appended hereto as Exhibit 1, and adds the counterclaims of defamation, intentional interference with prospective business advantage and intentional impairment of right to contract, as are outlined herein.

1. Mohawk adopts all its factual statements, defenses, denials and corrections of the record made previously herein as if restated in full.

2. Mohawk and Huobi entered an initial agreement under which Mohawk would be paid $8,000,000 to fit up its facility for use by Huobi in bitcoin mining. The contract was for an eight year term. Huobi was to pay insurance, electric/power bills, labor costs and space use costs monthly.

18

3.  In good faith, Mohawk proceeded with the fit-up process despite Huobi's failure to provide the sum due up front.

4.  Purchasing and installing expensive parts was delayed, in whole or in part, due to Huobi's delay in payment, delay in agreeing to the specific part, and refusing to approve certain vendor contracts.

5. As a direct result of the actions referenced above, Mohawk often lost out on purchases, lost downpayments for purchases or was forced to go to another vendor to purchase parts or supplies. This raised the cost of the fit-up and required Mohawk to drive cross-country multiple times in its own vehicles or vehicles it rented to procure parts.

6.  Huobi frequently changed its plans and requirements, which created delays and additional expenses in fit up and made the build and work much more costly for Mohawk.

7. Huobi changed managers, counsel, administrators and liaisons frequently throughout the contract term, making continuity and communication almost impossible for Mohawk.

8. Huobi refused to approve or pay for certain key parts for fit-up, which required Mohawk to fabricate those or pay for those out of pocket.

9.  Huobi's onsite supervisor Yangping Wang often provided Mohawk with direction and requirements which were not in accordance with the parties' earlier agreements, making weekly or more frequent changes to the overall plan necessary and further delaying completion and driving up the cost for Mohawk.

10.  Upon information and belief, Huobi, its agents, employees, counsel and management contacted members or employees of Mohawk and attempt to obtain confidential and proprietary information or to strike side deals detrimental to the parties' joint project and to Mohawk's success as a business.

12.  After requiring Mohawk, its agents and employees, and the Power Company agents, employees and counsel to spend dozens of hours drafting and amending utility rate and EDR contracts, Huobi then refused to authorize Mohawk to sign the contract, making it impossible for Mohawk to obtain the EDR.

13.  When the facility was ready to begin operating, in August, 2023, Huobi unexpectedly refused to begin mining.

14.  Huobi has refused all Mohawk's offers of reducing the mining required, contracting with a third party, releasing Huobi from the contract, or negotiating some amicable resolution.  Huobi's refusal necessitated Mohawk continuing to employ maintenance and security teams, and continuing to hold the space for Huobi rather than renting it to any of the interested third parties who offered to assume Huobi's lease.

15.  Mohawk's costs for the project exceeded the sum paid as a direct result of Huobi's misconduct.

16.  Mohawk has not been paid the final $300,000 under the contract.

17.  Mohawk suffered the loss of six months labor and rent costs and has had to pay those out of pocket, in a sum in excess of $400,000.

18.  Mohawk's profit under the host agreement was a percentage of bitcoin mined each month. Huobi's refusal to begin mining has cost Mohawk five (5) months of profit so far, due to Huobi's breach of the parties' agreement.

19.  Huobi is proximately liable for all financial loss to Mohawk.

21.  Upon information and belief Yangping Wang, Huobi's former (now terminated by Huobi, as of November, 2023) onsite manager, created a "Kentucky company" HBTHub, Inc., in Richmond, Kentucky, that served as his "employer" so that he could "work for" for that

20

company in Kentucky.  He also created a company titled "HBTPower, Inc." in this Commonwealth as a Kentucky corporate entity.

Yangping Wang requested that Mohawk affirm that he and his company were working in Kentucky at the Mohawk site.  Mohawk has not ever contracted with HBTHub, Inc., HBTPower, Inc.,  its agents or employees.  At Yangping Wang's request during fit up, Mohawk affirmed that to INS that Wang was working at the Mohawk site.  Once fit up ended, Yangping Wang, who has declined to return to the facility, was no longer working at the Mohawk site.  Mohawk has reached out to INS to let them know that the work status relied upon for Yangping Wang's green card is fraudulent.  Mohawk regrets unintentionally affirming those false assertions for the INS and is correcting that mistaken impression.

22.  Upon information and belief, Yangping Wang engaged in various actions contrary to the best interests of Huobi and Mohawk, including but not limited to attempting to channel purchase contracts for expensive parts for fit up to "White Rabbit" and other out of state entities in which he had an ownership share or financial interest.  Mohawk's vigilant COO was able to find out both that the materials purchase contract that Yangping Wang was pushing them to enter was more than $100,000 above market price, and also that Yang and others related to Huobi had an interest in that company and were hoping to profit from that side hustle at the expense of Mohawk.

23.  The bad faith actions of Huobi intentionally or recklessly harmed Mohawk and its owners and investors.

24.  The actions of Huobi were fraudulent and taken with the intent to take advantage of Mohawk's hard work and funds expended so that Huobi could profit unfairly from the parties' agreement. Mohawk suffered harm as a direct and proximate result of Huobi's misconduct,

including having to expend additional time and funds investigating Yangping Wang's side hustle companies, and finding legitimate companies which could provide the materials at a fair market rate on short notice.

25.  Huobi did not enter into or engage in the contract with Mohawk in good faith or act fairly and in accordance with law during that portion of contract requiring fit up, modifications, and changes to the contract.  Huobi's bad faith and misfeasance and nonfeasance rendered performance under the contract impossible.

26.  Huobi made fraudulent statements to United States INS, and misled Mohawk into affirming such fraudulent statements.  Mohawk is taking steps to correct those innocent misstatements, at great cost to Mohawk.  Huobi is liable for all costs associated with these remedial measures.

27.  Huobi's actions made performance under the agreement and all Huobi's modifications thereto impossible. Additionally, Huobi rendered Mohawk's performance under its contracts with the power company and its training and certification program impossible by refusing to engage in the bitcoin mining agreed upon and by delaying performance under the contract in an attempt to financially harm Mohawk and its members.  Mohawk has suffered significant harm as a direct result of Huobi's intentional and ongoing misconduct.

28.  Huobi has intentionally defamed Mohawk, its agents and members by making allegations against them which are known by Huobi to be false and inaccurate.  These scurrilous false claims expose Mohawk to financial and other  reputational harm.

29.  Huobi has interfered with Mohawk's future business opportunities, prospective business advantage and ability to contract with other investors or companies which formerly desired to lease space from it.  The intentional interference and false statements caused Mohawk harm.

30.  Huobi is liable for all financial and economic loss incurred by Mohawk.

31.  Huobi is liable for Mohawk's loss of business standing and reputation due to its defamation

of Mohawk, making false claims about Mohawk and its Manager, Brandon Smith, and its

undermining Mohawk with Mohawk's own staff and members, all of which are a breach of the

requirements of good faith and fair dealing imposed on all contracts by Kentucky law.

32.  This Body should enter a judgment in favor of Mohawk for all damages incurred.


WHEREFORE, Mohawk  requests the following relief:

1.   That in accordance with the waiver by Huobi of any right to request arbitration, that this
     JAMS case be dismissed;
2.  Compensatory and consequential damages against Huobi for ongoing breaches of the
    parties' agreement;
3.  Reimbursement to Mohawk for any funds expended by Mohawk to satisfy Huobi's debts;
4.  An order affirming that it appears that "HBTPower Limited" is not  the entity which
    originally contracted with Mohawk and that the falsified or intentionally incorrect
    "declaration" filed by Wang Yangping, a third party employed by "HBTPower, Inc.", a
    Kentucky corporation, is attempting to deceive this body and the Federal Court as to its
    rights to equipment owned by another entity;
5.  Costs and reasonable attorney fees;
6.  Any and all other relief to which this Body finds it entitled.


Respectfully submitted,

Anna Stewart Whites
ANNA WHITES LAW OFFICE PLLC
327 Logan Street
Frankfort KY 40601
(502) 352-2373 (office)
 Annawhites@aol.com
*Attorney for Defendant Mohawk Energy, LLC*

<u>CERTIFICATE OF SERVICE</u>
This is to certify that a true and correct copy of
the foregoing was this day served via the
JAMS electronic filing system upon:

Palmer G. Vance
Lindsey H. Meares
STOLL KEENON OGDEN PLLC
300 West Vine Street, Suite 2100
Lexington, Kentucky 40507-1380

Harout J. Samra
DLA PIPER LLP (US)
200 South Biscayne Boulevard, Suite 2500
Miami, Florida 33131

This the 12th day of December, 2023.

_____
Anna Stewart Whites