UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

| | |
|---|---|
| **HBTPOWER LIMITED** ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | Case No. 3:23-cv-00628-CHB |
| v. ) | |
| ) | |
| **MOHAWK ENERGY, LLC** ) | |
| ) | |
| *Defendant.* ) | |

**DEFENDANT MOHAWK ENERGY'S MEMORANDUM OF SUPPORT FOR MOTION TO DISMISS AS THE REAL PARTY IN INTEREST IS NOT BEFORE THIS COURT**

Comes the Defendant, Mohawk Energy, LLC ("Mohawk") and moves this Court pursuant to Fed. R. Civ. Pro 12 to dismiss this action on grounds of standing as the real party in interest is not before this Court. Kentucky Courts have the duty to establish standing and a justiciable controversy before hearing an action. *Commonwealth of Kentucky, Cabinet for Health & Fam. Servs., Dep't for Medicaid Servs. v. Sexton*, 566 S.W.3d 185, 196-97 (Ky. 2018). At the time this action was filed and continuing to the present time, (unless the unverified one page document provided by Wang Yangping, an ex-employee of HBTPower is to be believed), the real party in interest has not appeared before this Court. This matter must therefore be dismissed.

STATEMENT OF RELEVANT FACTS

**(a) Houbi/HBTPower Limited never provided notice to Mohawk that Wang Yangping was its agent**

Mohawk notes that in July, 2023, Lily Zhang, CFO for Huobi and HBTPower Limited notified Mohawk management that Huobi was no longer interested in bitcoin mining and was

1

trying to find a partner or third party to take over the mining operation. She requested that Mohawk agree to discuss having a third party take over as an option. She also requested that Mohawk agree to discuss continuing the host agreement if Huobi sold HBT. Mohawk agreed to discuss modifying the agreement or even allowing Huobi to assign the contract to a third party. Mohawk never received any further communications from Huobi, HBTPower Limited, or any individual associated or affiliated with either company.

      No third party affiliated with Huobi ever reached out to Mohawk after that conversation. Shortly thereafter, Huobi ceased paying rent and labor charges and refused to begin mining at the site.

      Since that time, Wang Yangping is the only person who has communicated with Mohawk. Judging from the pleadings before this Court, Wang Yangping, who admitted no longer being a Huobi or HBT employee in his first affidavit before this Court, has been the only person communicating with counsel for "Huobi/HBT." No HBT persons have appeared in the case.

      A simple Google search in September, 2023, revealed the same documents that the Plaintiff in this action is now claiming as corporate documents showing change of ownership of the entity that contracted with Mohawk. The documents provided by Plaintiff and attached as Exhibits to the Motion to Dismiss for Failure to State a Claim (R. 26) may have come from their alleged clients, but are also the very same documents openly available for download from the internet. It would be helpful to this Court to have the email cover letter from HBT or Huobi from China when they sent counsel those documents to show that these documents were not merely googled and printed.

The alleged new owners and shareholders of HBTPower Limited have never contacted Mohawk, spoken with Mohawk, participated in any zoom meetings, executed any assignment of the contractual rights, or otherwise communicated with Mohawk in any manner.

Since July, 2023, Wang Yangping has been the only person alleging that he represents the interests of Huobi. While Wang has claimed to be a hired "representative" of Huobi, there has been no confirmation by any genuine Huobi employee previously known to Mohawk that Wang Yangping does hold that title and that he is not making false claims. Wang Yangping has merely provided an electronically signed document that purports to be from Wang Zhou, a former Director at HBTPower Limited.

The company has not confirmed that this former director continues to serve in that capacity. Further, Wang Zhou has not, to Mohawk's knowledge, ever been part of the weekly zooms, management meetings, site visits or communications with Mohawk. Mohawk has no knowledge of any Wang Zhou other than an electronic signature on the initial license agreement. Wang Zhou was never heard from or seen before or after that date.

During Wang Yangping's time working for Huobi at the Mohawk site, as noted in the affidavit of Mohawk representative to be filed with the contemporaneous Response to Motion for Preliminary Injunction, Mohawk staff frequently discovered that Wang Yangping had made false representations to them about Huobi's desires or had misled Huobi about Mohawk's activities. His trustworthiness and veracity were an ongoing concern and were discussed by all parties during some of the weekly zoom meetings. The zoom recordings that Plaintiff has been unable or unwilling to produce would reflect those discussions.

Huobi/HBTPower has not employed any individuals at the Mohawk site since July, 2023. Huobi/HBTPower has not communicated with Mohawk since July, 2023. The only

communications Mohawk has had have been from Wang Yangping and American attorneys he has hired or retained.

### (b) The Plaintiff before this Court has been unable to provide either the copies of the HBTPower/Mohawk weekly recorded zoom meetings or any ownership documents for the mining machines at the Mohawk site

For the past several months, Mohawk has been requesting ownership documentation from the Plaintiff. See: Email from 12/19 attached as Exhibit 1, requesting proof of ownership; Letter attached as Exhibit 2 from October 27 forwarded to counsel for Plaintiff on 11/27, requesting proof of ownership and copies of the zoom meeting recordings of the weekly meetings between the parties; Exhibit 3, email from 17/17 requesting copies of the zoom and all ownership documentation.

If the Plaintiff before this Court actually owns the mining machines or other equipment at the Mohawk site, it should immediately be able to produce purchase documents, including but not limited to invoices, cancelled checks, wire transfers, shipping documents, bills of lading, customs documentation and other materials. To date, Huobi has been entirely unable to produce any such information other than publicly posted downloads available with a simple Google search (discussed infra.).

In other bitcoin hosting cases in the state and federal courts of Kentucky wherein the undersigned was counsel, various third parties claimed ownership of mining machines. In each such case, none of the parties claiming ownership was found to actually own the mining machines. In each case, the mining machines were owned by third parties and had been appropriated, in some cases illegally, from various owners and other entities. For that reason, Mohawk demands proof of ownership before it will allow access to or release of the mining

machines or information related thereto. It is highly suspicious that the current Plaintiff before this Court was and continues to be unable to immediately provide documentation of ownership. Similarly, Huobi, the purported owner of the mining machines and Plaintiff before this Court has not been able to provide documentation of payment of state or federal taxes for the expensive property they held in Kentucky in 2022 or 2023. Again, this is deeply concerning. Any legitimate property owner would be able to immediately produce such proof.

Mohawk has requested proof of insurance of its mining machines from Huobi since July, 2023. Counsel for the Plaintiff in this action has been unable to provide any such proof of insurance. Again, it seems obvious that the owner of expensive machinery would have covered such property with insurance. A non-owner, on the other hand, would not have proof of such insurance coverage.

### (c)  *The Plaintiff in this case has not been able to respond to requests for information or settlement offers from Mohawk, which leads to the concern that the Plaintiff is not really HBTPower Limited*

During the pendency of this action, Mohawk has provided a number of proposed settlement alternatives to counsel for the Plaintiff. Each time, counsel for the Plaintiff responds by saying that he will "revert" after discussion with his client. ("Revert" means "to reply by email" in British usage, according to the online Cambridge Dictionary.) No such response has ever been provided. It is difficult to believe that Huobi/HBTPower would ignore all Mohawk's attempts at communication. Until July, 2023, Huobi and HBTPower was an excellent communicator and made prompt response to any and all inquiries and questions. If Mohawk's repeated efforts at compromise and settlement are stymied simply because Huobi/HBTPower is not properly before this Court, then this case should be immediately dismissed.

5

The only person actually before this Court as a party Plaintiff is Wang Yangping, an individual who is not an owner or director or manager of HBTPower or Huobi. Further, Wang Yangping has made false statements to federal agencies and entities before, including informing Immigration and Naturalization that he was "managing" employees on behalf of Mohawk, even though he ceased working at the plant in July, 2023, and has submitted false or inaccurate statements under oath before this Court relating to the relationship between "Huobi" and Mohawk. Blindly agreeing that this individual is the real party in interest, entitled to hundreds of thousands of dollars in mining machines or any other property, seems naïve at this point.

Concerningly, when counsel for Mohawk reached out to counsel for HBT to ask who in either counsel's firm wanted the security access to Mohawk's security cameras, Wang Yangping's lawyers demanded that Mohawk provide Wang Yangping himself, who is not an American citizen and not a resident of Kentucky, with access to the site's security system. Counsel for Mohawk has offered for weeks to provide such access to anyone in either counsels' firm- any of the hundreds of staff and attorneys across the country – because those individuals are under the jurisdiction of this Court. Instead, counsel for Plaintiff asserts that such security access should be provided to the Chinese company's alleged delegate. That unreasonable demand constitutes a serious security risk for Mohawk and is an abdication of the necessary safeguards by counsel for Plaintiff.

In other cases, in Kentucky and elsewhere, Chinese companies have hired persons to break into host facilities and remove valuable equipment after accessing security cameras to determine when the sites were untended. The SEC is currently conducting an investigation into VCV, a Chinese mining company that appears to have defrauded investors by using funds paid to purchase machines and instead stealing and moving non-owned machines from multiple sites

across the nation using that very method, including accessing security cameras to determine a "safe" time to steal non-owned equipment. These well documented thefts, which are currently under active Federal investigation, provide ample basis for Mohawk's simple request that security access be properly limited to responsible individuals.

Mining machines are small, the size of a desktop computer tower, and are easily portable. They are hard to track and easy to sell. The Mohawk plant is in a remote area. It is not staffed 24/7, as Huobi has forced it to sit fallow since August, 2023. An individual with access to the live security camera could easily determine when the plant was unoccupied and could use that information to damage the plant or steal mining machines. That is a risk that Mohawk cannot take.

I. THE REAL PARTY IN INTEREST IS NOT BEFORE THE COURT

Every action must be prosecuted by the real party in interest, which is the entity that has standing to bring the action. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)). The Kentucky Supreme Court held that "[t]he real party in interest is one who is entitled to the benefits of the action upon the successful termination thereof. *Stuart v. Richardson,* 407 S.W.2d 716, 717 (Ky. 1966); *Brandon v. Combs*, 666 S.W.2d 755, 759 (Ky. App. 1983). A real party in interest then, is a person, or entity, which wins, or loses, dependent upon the resolution of the questions." Accordingly, the benchmark for standing is "a judicially recognizable interest in the subject matter." *City of Louisville v. Stock Yards Bank & Trust, Co*., 843 S.W.2d 327, 328 (Ky. 1992). Standing must be decided on the facts of each case before the Court. *Rose v. Council for Better Educ., Inc*., 790 S.W.2d 186, 202 (Ky. 1989).

There is nothing in the record at the time the action was filed tending to show that the case was brought by HBTPower Limited, the real party in interest. The documents were signed and attested to by a former Huobi and HBTPower Limited employee, who had been terminated before the action was filed. While that terminated employee claimed to be an "agent" of HBTPower Limited, and a "consultant" for them, the Court was provided nothing supporting those claims until just a week or so ago, and even that "verification" does not bear indicia of reliability. Mohawk notes for the record that it has never been notified by HBTPower Limited or by Huobi that Wang Yangping was their delegate and agent.

II. NO NOTICE OF ANY AGENT STATUS OF WANG YANGPING WAS TIMELY PROVIDED TO MOHAWK OR THIS COURT

At all times in this case where Mohawk interacted with Wang Yangping, he was the employee of Huobi and HBTPower and under their authority. He had to double check every decision with them and communicate with them regarding actions taken. In most cases, Mohawk would speak directly to Huobi and HBT executives, rather than working on issues with Wang Yangping, since he appeared to have only limited knowledge of the project and limited authority to make any decisions. His role on site was to supervise the Chinese tech staff as they built containers for the mining machines.

Mohawk has never been given notice by Huobi or HBTPower that Wang Yangping was their contractor or their delegate in this action or any other matter. When Mohawk first raised those concerns before this Court, Wang Yangping filed a one page "retroactive delegation" of him as HBTPower's agent. Mohawk had no notice of that until the date it was "signed", that being 12/18/23. The document has not been independently verified by this Court and certainly, even if valid, cannot "retroactively" assign a principal agent status to Wang Yangping without

8

having provided notice of such agency to anyone dealing with Wang Yangping. Therefore, even if the suspect document is accepted, it cannot form the retroactive basis for standing in this case, which was filed before the document was even executed.

In this case, Wang Yangping and his counsel rely almost exclusively on his own statements and pleadings to show that he is the party entitled to bring this action. The law is well settled that pleadings are not evidence. *Educational Training Systems, Inc. v. Monroe Guar. Ins. Co*., 129 S.W.3d 850, 853 (Ky. App. 2003). There is little or no valid evidence before this Court showing any "agency" of Wang Yangping. Agency is a fiduciary relationship which results from the manifestation of consent by the principal to the agent that the agent may act on behalf of the principal subject to control and consent by the agent to act. *Thomas v. Hodge*, 897 F. Supp. 980 (W.D.Ky. 1995). The existence of a principal/agent relationship is a legal issue with the burden of proving the agency relationship placed upon the party asserting that it exists. *Wright v. Sullivan Payne Co*., 839 S.W.2d 250 (Ky. 1992). The agent is a substitute or representative of his principal and derives his authority from him. *Stewart v. Kentucky Paving Co., Inc*., 557 S.W.2d 435, 437 (Ky. App. 1977) (citing *City of Covington v. Reynolds*, 240 Ky. 86, 41 S.W.2d 664 (1931)). Mohawk is concerned that no valid proof of such agency is before this Court.

With regard to any "retroactive" nature of the claimed agency, courts hold that a principal is bound by the acts of the agent within the apparent scope of authority although the authority may be in fact limited, if one dealing with the agent is ignorant of limitations upon his authority." *May v. Ken-Rad Corp*., 279 Ky. 601, 131 S.W.2d 490, 492 (Ky. 1939). The agent is a substitute or representative of his principal and derives his authority only from the principal. That principal must provide notice before the agency is effective. *Stewart v. Kentucky Paving*

*Co., Inc.*, 557 S.W.2d 435, 437 (Ky. App. 1977) (citing *City of Covington v. Reynolds*, 240 Ky. 86, 41 S.W.2d 664 (1931)). See, e.g., *Sun Indemnity Company of New York v. Hulcer*, 251 Ky. 484, 65 S.W.2d 471, 472 holding that retroactive application of restrictions on action is ineffective.

An agent is one who acts on behalf of some person, with that person's consent and subject to that person's control. See *Dept. of Treasury v. Ice Service, Inc*., 220 Ind. 64, 41 N.E.2d 201 (Ind. 1942) (citing Restatement (Second) of Agency § 1(1) (1958)). If a party to a transaction has no notice that the agent is acting for a principal, the party for whom he acts is [*249] called an undisclosed principal, and the relationship between the agent and the principal is called an undisclosed agency. Restatement (Second) of Agency § 4(3) (1958).

Kentucky recognizes that every contract contains an implied covenant of good faith and fair dealing and any agent is bound by that duty. *Ranier v. Mount Sterling Nat'l Bank*, 812 S.W.2d 154, 156 (Ky. 1991) (citations omitted). Actual agency exists where "[t]here has been a manifestation by the principal to the agent that the agent may act on his account, and consent by the agent so to act." *Kindred Nursing Centers Ltd. Partnership v. Brown*, 411 S.W.3d 242, 249 (Ky. App. 2011) (citation omitted). "Under Kentucky law, the right to control is considered the most critical element in determining whether an agency relationship exists." *CSX Transportation, Inc. v. First National Bank of Grayson*, 14 S.W.3d 563, 566-67, 46 16 Ky. L. Summary 3 (Ky. App. 1999). No control or agency has been established or was ever communicated to Mohawk.

Notice to those dealing with an agent is required, and no such notice was provided to Mohawk or this Court prior to 12/18/23. For this reason, even if the 12/18/23 document is

verifiable and accurate, any claimed "agency" was invalid prior to that date and this matter must be dismissed as the real party in interest did not file it and did not timely appear.

## CONCLUSION

For the foregoing reasons this case must be dismissed.

Respectfully submitted,

_____
**Anna Stewart Whites**
ANNA WHITES LAW OFFICE PLLC
327 Logan Street
Frankfort KY 40601
(502) 352-2373 (office)
 Annawhites@aol.com
*Attorney for Defendant Mohawk Energy, LLC*


CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of
the foregoing was this day served via the
court's electronic filing system upon:

Palmer G. Vance
Lindsey H. Meares
STOLL KEENON OGDEN PLLC
300 West Vine Street, Suite 2100
Lexington, Kentucky 40507-1380

Harout J. Samra
DLA PIPER LLP (US)
200 South Biscayne Boulevard, Suite 2500
Miami, Florida 33131

This the 30th day of December, 2023.

_____
Anna Stewart Whites