Exh 2

# ANNA STEWART WHITES
*Attorney at Law*
327 Logan Street
P.O. Box 4023
Frankfort KY 40601
(502) 352-2373/FAX 352-6860
AnnaWhites@aol.com

October 12, 2023

Hon. Lesley Owen
Hon. JT Skinner
KKHBS, LLP

Via Email Only

  RE:  Mohawk Energy, LLC/Huobi

Folks:

  We are in receipt of your letter of 10/11/23. As I have consistently reminded you, Mohawk and Huobi had frequently, often weekly, zoom meetings for the past year during which many of the initial contract terms and provisions were modified or discarded – primarily because of Huobi delays in payment or refusal to agree to specific necessary items which resulted in supply chain issues or lack of availability, and some due to weather conditions or other matters on the Mohawk side. Additionally, the parties refined the relationship as they moved through the fit-up and hosting process and learned that how the process worked in actuality did not always fit the model they had imagined before the process began.

  Huobi's onsite supervisor, Mr. Wang, has been integrally involved in each step of this process and approved each modification or amendment. Your lack of understanding of the revised agreements appears wilfull at this point as you have had ample opportunity to discuss this with your clients and Mohawk and to review the notes and videos of those meetings.

  Huobi should already have a bill of sale for its own mining equipment. Mohawk did not buy that equipment and so cannot provide a bill of sale for the miners.

  As Mohawk has reminded you, the equipment used in fit-up for Huobi's purposes does not belong to Huobi but was ordered and installed, at great cost in time, labor and monies to Mohawk. Huobi paid some portion of the purchase costs for those materials as well but cannot have a "bill of sale" for those as it does not own those. No bill of sale is owed to Huobi by Mohawk.

p. 2

Similarly, your client was well aware that Mohawk is purchasing the property, is the owner of the facility and is current on its purchase payments but that the seller, a Mohawk shareholder, will not provide a deed to the property until the full purchase price is paid. Because Huobi wanted this particular site, it agreed that the Mohawk purchase arrangement was permissible. Your client's onsite representative participated in these discussions live and Huobi executives and counsel participated in these discussions and agreements via zoom. You have been advised of this but continue to claim otherwise. Your behavior is a serious impediment to any progress being made between our clients.

As Mohawk reminded Huobi over a period of several months, labor and rent costs are past due. As Huobi declined to make those payments, Huobi employees cannot remain on the premises. Further, as the premises are a commercial space, housing is not permitted there.

Mohawk looks forward to Huobi working with Bitmain or Mohawk or other partners to move forward with the mining. Mohawk affirms that it continues to act in good faith with regard to any exit or transition by Huobi or any proposed agreement for a successor in interest to Huobi's tenancy.

As you are aware, the plant has been ready to operate for a month but Huobi has declined to begin mining. This may be due in part to your erroneous advice to them that Mohawk can somehow "reduce" the utility rate. You even assert at p. 2 of your letter that this reduction in rate is one of the conditions of Huobi continuing to work with Mohawk on the project. As Kentucky Power's attorney explained to Lesley and I months ago, <u>this is not something that is possible</u>. The rate is set by the utility company and approved by the PSC. Individual businesses cannot change that. This knowledge was part of the initial agreement and has been the subject of zoom meetings between the parties. Huobi is and has been well aware that Mohawk cannot unilaterally lower a utility rate. The applicable Kentucky statutes and administrative regulations and PSC guidelines also address this.

Please be assured that Huobi's mining machines are protected. Mohawk even continues to insure those despite the fact that Huobi breached its agreement to insure these machines and pay the utility bills required for the facility in which they are housed. Security measures including but not limited to presence of personnel, cameras, alarms and fences remain in place. Huobi's agents or employees are free to ask Mohawk staff to supervise them as they tour the premises at any time to satisfy themselves of this.

Once Huobi pays the past due rent and labor, it may provide proof of ownership of any machines it would like to remove from the facility. My experience with these tech company ownership changes has shown that often various former agents or employees show up demanding that they be permitted to remove the equipment from the premises although they have no legal right to the equipment. For this reason, Mohawk would ask for (a) proof of ownership;

(b) the complete inventory list with serial numbers; and (c) a receipt for the original purchase of the equipment.

We look forward to your client's cooperation as they either transition their lease and equipment to a third party agreeable to Mohawk, or buy out Mohawk's multi-million dollar investment in the site, fit up, and contracting.

Sincerely,

*[signature]*

Anna Whites