| | |
|---|---|
| Subject: | **RE: Kentucky Power** |
| Date: | 12/7/2022 1:37:48 PM Eastern Standard Time |
| From: | kglass@stites.com |
| To: | annawhites@aol.com |

Dear Anna,

Kentucky Power forwarded your questions regarding the rates offered to Mohawk, and I am also in receipt of your letter to me of December 2. Below is an explanation in blue that hopefully satisfies your questions. Please let me know if you would like to discuss further.

Mohawk's initial discussions with Kentucky Power included a rate of 4.07.
Question #1: Why did the power rate increase between initial agreement and the sums detailed on the attached document?

As an initial matter, there was never an "initial agreement" between Kentucky Power and Mohawk on the exact rate to be offered. The way that this works is that Mohawk would take service under one of Kentucky Power's standard rate schedules and then discounts under Tariff EDR and Rider DRS would be applied to lower that standard rate, as long as Mohawk complies with the requirements under those tariffs. It is my impression that Mohawk's anticipated load qualifies Mohawk to take service under Tariff IGS (Industrial General Service). The rates provided by Kentucky Power are, at best, estimated because Kentucky Power cannot know at this time what the exact rates will be. For example, certain line items on a customer's bill change month to month (i.e. the fuel adjustment clause, environmental surcharge, etc.) Thus, a number of factors influence rate analyses including fuel adjustment and long range forecast factors such as the PPA (purchase power adjustment) and base fuel rates, which are shown to increase over time in the Company's current projections. Thus, Kentucky Power uses the best and most accurate estimated inputs that it has at the time to generate the estimated rates that Mohawk can expect. The attached estimated fee schedule contains the Company's best estimates of what the rates will be. In sum, to answer your initial question, the estimated rate changed because time has passed and the inputs used to generate the estimate have changed. To be clear, Mohawk will pay the same as any other customer on the same IGS/EDR/DRS rate as them at the time.

The attached document has the lowest power rate being 5.08 with increases from that year one rate. That document states that it includes the EDR.
    Question #2: Is the EDR included in this rate?

Yes.

    Question #3: What is the EDR used to determine the rate for each of those years?

Tariff EDR dictates that "Customers meeting all Availability of Service and Terms and Conditions above may contract for service for a period of up to ten (10) years, with a commensurate discount period of up to five (5) years. The qualifying incremental billing demand charge shall be reduced by 50%, 40%, 30%, 20%, 10% in the order of the Customer's choosing at the time of the contract filing." This is referred to as the Incremental Billing Demand Discount (IBDD).

Customers may also qualify for the Supplemental Billing Demand Discount (SBDD) under Tariff EDR as follows: "At the Company's discretion, a (SBDD) which is applicable to the monthly incremental billing demand charge is available to customers meeting all Availability of Service and Terms and Conditions above, and that create at least twenty five (25) new permanent job opportunities in the facility and that maintain those job opportunities in each discount year. The amount of additional discount is determined by the actual number of jobs maintained in each year. The order in which the SBDD is applied will follow the same order selected by the Customer for the IBDD contract."

I have attached a copy of Tariff EDR that may provide additional context or information for your reference.

Mohawk is engaging in job creation and economic development. It would appear that Kentucky Power could find an optimal rate for this large user.
    Question #4: What lower rate could Kentucky Power offer?

This is Kentucky Power's standard offering for this type of load, customer, economic development opportunity, and job creation opportunity, using Tariff IGS, Tariff EDR and Rider DRS.

The initial agreement entered into between the parties discussed the rate as being "under Kentucky Power's schedule "as regularly filed with the PSC." I believe this was specified to be the "industrial GNL SVC Subtransmission" schedule.

Question #5: Please provide the rate schedule filed with the PSC for 2023 for the Industrial GNL SVC Subtransmission schedule and any and all schedules with a lower rate.

I have attached Kentucky Power's Tariff IGS, Tariff EDR, and Rider DRS. The entirety of Kentucky Power's tariff can be found here: https://psc.ky.gov/tariffs/Electric/Kentucky%20Power%20Company/Tariff.pdf

Question #6: Is the rate of 5.08 for Year One the lowest rate being offered during 2023 to any customer?

Again, the rates in the attached estimated fee schedule are the Company's best estimates of what the rates will be. Nonetheless, they are standard for this type of load, customer, economic development opportunity, and job creation opportunity, using Tariff IGS, Tariff EDR and Rider DRS. Each of Kentucky Power's contracts for electric service are filed publicly with the Commission and can be found here: https://psc.ky.gov/Home/Library?type=Tariffs&folder=Electric%5CKentucky%20Power%20Company%5CContracts. However, Kentucky Power does not share the confidential rates of its customers with parties other than the Commission outside of the context of a Commission proceeding, and even then they are shared under a non-disclosure agreement or on a highly-confidential attorneys' eyes only basis.

We need confirmation that the power will be on and ready for use at that time, or a schedule of events and a firm "go live" date for power once we confirm.

As Kentucky Power has communicated to Mohawk, the substation must be built in order to receive power. Kentucky Power will be working with Mohawk to install metering concurrently during that time. I have been informed that Kentucky Power asked to meet with Mohawk's electricians once they are on site so Kentucky Power can plan where to set the primary metering on the secondary side. A Kentucky Power representative was on-site recently and no work had begun on building the substation. Kentucky Power will continue to work with Mohawk to bring power to the site, and Kentucky Power does not anticipate any delays from its side at this time.

Thank you,

**Katie M. Glass | STITES & HARBISON PLLC**
Direct: 502-209-1212
Cell: 502-744-5377

**From:** annawhites@aol.com <annawhites@aol.com>
**Sent:** Friday, December 2, 2022 8:59 AM
**To:** Glass, Katie <kglass@stites.com>
**Subject:** Re: Kentucky Power

[External Sender]

Please see attached.

In a message dated 11/30/2022 11:03:03 AM Eastern Standard Time, kglass@stites.com writes:

> Hi Anna,
>
> I am speaking with Kentucky Power about this and will get back to you as soon as I can.
>
> Thanks,
>
> **Katie M. Glass | STITES & HARBISON PLLC**
> Direct: 502-209-1212
>
> Cell: 502-744-5377
>
> **From:** annawhites@aol.com <annawhites@aol.com>
> **Sent:** Wednesday, November 30, 2022 6:50 AM
> **To:** Glass, Katie <kglass@stites.com>
> **Subject:** Kentucky Power
>
> [External Sender]
>
> ---
>
> Katie: I am trying to locate who would be counsel for Kentucky Power with regard to a power agreement with Mohawk Energy, LLC in Jenkins, KY.
>
> I am counsel for Mohawk and we are having trouble with KY Power fulfilling the contract.
>
> If that is you, please let me know a good time for a call. If you know who that is, please connect me.
>
> *Anna Stewart Whites*
>
> *Attorney at Law*
>
> 327 Logan Street
>
> P.O. Box 4023

Frankfort KY 40601

(502) 352-2373 (office)

(502) 352-6860 (fax)

CONFIDENTIALITY NOTICE: This email message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender and destroy all copies of the original message and its attachments. Please notify me of erroneous receipt at (502) 352-2373.

IRS Circular 230 disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any tax advice contained in this communication was not intended or written to be used, and cannot be used for the purpose of (i) avoiding penalties under the Internal Revenue Code, or (ii) promoting, marketing, or recommended to another party any transaction or matter contained herein.