**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**AT LOUISVILLE**

| | | |
|---|---|---|
| **HBTPOWER LIMITED,** | ) | CASE NO.: 3:23-cv-628-CHB |
| | ) | |
| Plaintiff, | ) | JUDGE: Claria Horn Boom |
| | ) | |
| vs. | ) | |
| | ) | **RESPONSE OF HBTPOWER LIMITED** |
| **MOHAWK ENERGY, LLC,** | ) | **IN OPPOSITION TO MOHAWK** |
| | ) | **ENERGY, LLC'S MOTION TO** |
| Defendant. | ) | **DISMISS** |
| | ) | |
| | ) | |

Comes the Plaintiff, HBTPower Limited ("HBTPower"), by counsel, and tenders this Response in Opposition to the Motion to Dismiss ("Motion")[1] filed by Defendant Mohawk Energy, LLC ("Mohawk") (together with HBTPower, the "Parties").

## I. INTRODUCTION

The Motion fails to set forth the applicable standard of review, and instead blindly (and baselessly) attacks HBTPower's standing to seek injunctive relief against Mohawk. Moreover, none of the alleged "relevant facts" in Mohawk's Motion are supported by citations to the record. Mohawk fails to identify the insufficiencies in HBTPower's Verified Complaint, and instead creates factual disputes that themselves defeat a motion to dismiss under Rule 12 of the Federal

---

[1] On January 10, 2024, Mohawk made a filing titled "RESPONSE to Motion re [32] MOTION to Dismiss for Lack of Jurisdiction *Supplemental Response.*" The document itself is titled "Supplement to Defendant Mohawk Energy's Response To Motion for Injunctive Relief." (DN 35). The first paragraph thereof states that it is a "supplemental filing to [Mohawk's] currently pending Motion to Dismiss." Id. It is unclear which pleading Mohawk intends to supplement. The new facts pleaded therein need verification. Regardless, this so-called "RESPONSE" represents a further attempt by Mohawk to direct the Court to matters beyond the pleadings that may not be considered when evaluating a motion to dismiss under Rule 12. The Docket Text in the Notice of Electronic Filing provides that "replies are due by 1/24/2024." HBTPower will file its response timely.

- 1 -

Rules of Civil Procedure ("Rule").[2] As the Court well knows, it must accept the factual allegations of HBTPower's Verified Complaint as true for purposes of Mohawk's Motion. Mohawk's objections to HBTPower's involvement in this suit boil down to a factual assertion in the Motion that Mr. Wang[3] is not authorized to act on behalf of HBTPower. HBTPower's Verified Complaint contradicts that assertion. The Court, under Rule 12, must defer to HBTPower's factual allegations and cannot resolve this dispute on this Motion. This Court cannot dismiss HBTPower's request for injunctive relief against Mohawk for lack of standing.

In any event, the Motion is without merit where HBTPower sufficiently pled its role as the real party in interest in the Verified Complaint. Indeed, the Operation Right License Agreement (the "License Agreement") identifies HBTPower and Mohawk as the contracting parties and forms the basis of the underlying dispute between the Parties. (See Verified Complaint (DN 1) at ¶ 3; see also DN 1-1.) HBTPower clearly has standing to maintain this action against Mohawk for injunctive relief. For the reasons articulated below, the Court should deny this Motion.

## II.  BACKGROUND

The Verified Complaint, along with a number of other documents submitted in this action, outlines HBTPower's operational and ownership structure. (See DN 1-1 at Recitals; DN 3; DN 23-2; DN 23-3.) Until January 11, 2024, when the present action was commenced, HBTPower was owned by Sinohope Digital Services Limited ("Sinohope Digital") and Mcore Limited ("Mcore"). (DN 1 at ¶ 1.) Sinohope Digital is presently owned by Sinohope Technology Holdings Limited

---

[2] The Motion cites repeatedly to Kentucky law, despite that the Federal Rules of Civil Procedure govern it.

[3] In Chinese culture, the order of names is typically reversed compared to Western conventions, with the surname (Wang) coming first, followed by the given name (Yangping or Zhuo). As such, for convenience and consistency, Wang Yangping is referenced herein as "Mr. Wang" or "Mr. Wang Yangping," Wang Zhuo as "Ms. Zhuo" or "Ms. Wang Zhuo", and Zhang Li as "Ms. Li" or "Ms. Zhang Li."

("Sinohope Technology"). (DN 3.) Mcore is owned by Avenir Cayman Holdings Limited ("Avenir"). (DN 23-3, at ¶ 7.) On January 11, 2024, Avenir acquired 100% of HBTPower. Prior to October 2022, Sinohope Technology was known as "Huobi Technology Holdings Limited" and, later, "New Huo Technology Holdings Limited", which is presumably the reason Mohawk repeatedly refers to HBTPower as "Huobi" in this litigation, despite that the entities are separate. (DN 30-1.) As a company listed on the Stock Exchange of Hong Kong Limited ("SEHK"), with stock code 1611, Sinohope Technology's announcements are published on SEHK's website from time to time, including those announcing its change of name from Huobi to Sinohope Technology. (DN 30-1.)

On May 31, 2022, before Huobi changed its name to Sinohope Technology,[4] the Parties entered into the License Agreement, pursuant to which HBTPower was to run and operate Bitcoin mining activities at 1004 Gateway Industrial Park in Jenkins, Kentucky (the "Premises"). (DN 1 at ¶ 3; DN 1-1.) The first recital in the License Agreement states that it is "by and between [Mohawk]… and **HBTPower Limited**, a Huobi Technology Holdings Limited controlled BVI business company . . . [.]" (DN 1-1.) Mr. Wang Yangping, along with Ms. Wang Zhuo, executed the License Agreement on behalf of HBTPower on May 31, 2022. (DN 1-1.) Moreover, Mr. Wang's handwritten initials are on the bottom of every single page of the License Agreement. (Id.) In the Motion, Mohawk claims that "there has been no confirmation by any genuine [HBTPower] employee previously known to Mohawk that Wang Yangping does hold [the] title [of representative of Huobi]," but acknowledges that HBTPower provided "an electronically signed document that purports to be from Wang Zhuo[.]" (DN 32-1 at 3.) As mentioned above, Ms. Zhuo

---

[4] It is of no consequence that the Parties entered into the License Agreement before Huobi changed its name to Sinohope Technology. HBTPower's own ownership structure did not change..

signed the License Agreement on behalf of HBTPower. (DN 1-1.) In other words, there <u>has been</u> "confirmation by a genuine [HBTPower] employee <u>previously known to Mohawk</u> that Wang Yangping does hold [the] title [of representative of HBTPower]." (DN 32-1 at 3.)

On November 29, 2023, HBTPower filed its Verified Complaint in this matter seeking injunctive relief against Mohawk.[5] Because of his participation in the Parties' negotiations, ongoing involvement in the transaction, and personal knowledge of the facts, HBTPower authorized Mr. Wang to serve as the primary client contact and to verify the facts alleged in the Verified Complaint. When Mohawk called Mr. Wang's authority into question, HBTPower passed a board resolution formalizing its approval and appointment of Mr. Wang "as the authorized representative of" HBTPower. (DN 23-3 at page 13 of 31.) While Mr. Wang's role at HBTPower has changed from employee to outside consultant, he remains the authorized representative of HBTPower. (See DN 16-2.) This is confirmed in the Verified Complaint (DN 1; DN 12-1), the two Declarations signed by Mr. Wang (DN 16-2 at ¶ 2; DN 23-2 at ¶ 2; DN 23-2 at ¶¶ 2, 4), and is confirmed by HBTPower's board resolution signed by its sole director Ms. Wang Zhuo (DN 23-3 at Ex. A). There is no question Mr. Wang was authorized to sign the Verified Complaint. In any event, he is not the only individual affiliated with HBTPower in contact with the undersigned.

After the Parties executed the License Agreement, Mr. Wang served as HBTPower's general manager at the Premises throughout HBTPower's presence at the Premises. (DN 1-1 at 37; DN 16-2 at ¶2; DN 23-3 at ¶ 2.) Mohawk's own Answer and Counterclaim acknowledges that Mr. Wang was the onsite manager until that time, i.e., October 11, 2023. (See DN 14 at ¶ 33.) However,

---

[5] Mohawk claims that "[t]he only person actually before this Court as a party Plaintiff is Wang Yangping[.]" (DN 32-1 at 6.) To the contrary, Mr. Wang is not before this Court as a party Plaintiff. Rather, HBTPower is before this Court as the named Plaintiff as is clear from the Verified Complaint.

Mohawk contradicts itself in the Motion, instead claiming that "[Mr. Wang] ceased working at the [premises] in July, 2023" and that "Huobi/HBTPower has not employed any individuals at the Mohawk site since July, 2023." (See DN 32-1 at 3, 6.) The Motion also inaccurately states that "[t]he company has not confirmed that this former director [Ms. Wang Zhuo] continues to serve in that capacity." (See DN 32-1 at 3.) To the contrary, as mentioned above, HBTPower submitted a resolution from HBTPower that clearly identifies Ms. Zhuo, who also served as signatory to the License Agreement, signed it as the sole director of HBTPower. (DN 23-3 at Ex. A.)

To prevent Mohawk from furthering this manufactured controversy regarding Mr. Wang and to confirm that (1) HBTPower and its parent and indirect parent organizations, Sinohope Digital and Sinohope Technology (formerly known as Huobi), authorized the filing of the present proceedings, (2) HBTPower is the real party in interest, and (3) Mr. Wang is an authorized representative for HBTPower in this action, HBTPower has attached additional declarations[6] hereto, one of which is signed by Ms. Wang Zhuo, the director of HBTPower,[7] and the other by Ms. Zhang Li, an executive director at Sinohope Technology (formerly known as Huobi).[8] Mohawk admits that "[Li] Zhang [is the] CFO for Huobi and HBTPower Limited." (See DN 32-1 at 1.) By tendering these Declarations to the Court, HBTPower in no way concedes that further factual development is necessary for consideration of this Mohawk's motion. The Court is bound to accept the allegations in the Verified Complaint as true for purposes of the Motion.

In the Verified Complaint, HBTPower seeks injunctive relief against Mohawk based on Mohawk's violations of the License Agreement between the Parties. (DN 1.) Specifically,

---

[6] Both declarations confirm that HBTPower is 100% owned by Avenir as of January 11, 2024.
[7] A copy of the Wang Zhuo Declaration is attached hereto as Exhibit A.
[8] A copy of the Zhang Li Declaration is attached hereto as Exhibit B.

HBTPower alleges that it has, and will continue to, suffer injuries caused by Mohawk's breaches of the License Agreement and unauthorized sale, and wrongful possession of, HBTPower's mining machines and equipment. (DN 1 at ¶¶ 44-51.) HBTPower further alleges in the Verified Complaint that its injuries will be redressed by a favorable decision from this Court; namely, a preliminary injunction prohibiting Mohawk from further breaching the License Agreement by selling HBTPower's mining machines and equipment. (DN 1 at ¶¶ 57-60.) In other words, the Verified Complaint clearly establishes standing on the part of HBTPower. To that end, the sole Plaintiff in this case is HBTPower. HBTPower's substantive claims for breach of contract, and fraudulent misrepresentation are before JAMS for an arbitration. Even there, a favorable award for HBTPower can only be enforced by HBTPower.

### III.   ARGUMENT

According to Mohawk, HBTPower's Verified Complaint fails to plead facts sufficient to establish that HBTPower is the real party in interest. (See generally DN 32-1.) It is clear from the Verified Complaint, however, that HBTPower is the party with whom Mohawk contracted and the party that owns the mining machines that are the subject of HBTPower's request for injunctive relief. The Court must deny Mohawk's Motion because HBTPower is the real party in interest and therefore has standing to pursue injunctive relief against Mohawk.

#### A.   Legal Standard

Federal Rule of Civil Procedure ("Rule") 12 governs Mohawk's Motion. A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of a plaintiff's complaint. In reviewing a Rule 12(b)(6) motion, the Court "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] its allegations as true, and draw[s] all inferences in favor of the plaintiff." DirecTV, Inc. v. Treesh, 487 F.3d 471, 476 (6th Cir. 2007) (citation omitted). In order "[t]o survive

a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, ___ (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Facial plausibility requires the plaintiff to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

> A federal court may only adjudicate 'cases' and 'controversies.' The standing doctrine is derived from the case or controversy requirement and obligates plaintiffs to show a 'personal stake in the outcome of the controversy as to ... justify [the] exercise of the court's remedial powers on [their] behalf.' To establish standing, a litigant must show: (i) that she has suffered an 'injury in fact'; (ii) that her injury was caused by the defendant's conduct; and (iii) that it is likely that the injury will be redressed by a favorable court decision.

Nikolao v. Lyon, 875 F.3d 310 (6th Cir. 2017) (internal citations omitted). The Supreme Court outlined the elements necessary to establish constitutional standing in Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992):

> Over the years, our cases have established that the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an 'injury in fact' — an invasion of a legally-protected interest which is (a) concrete and particularized; and (b) actual or imminent, not `conjectural' or `hypothetical.' Second, there must be a causal connection between the injury and the conduct complained of — the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court. Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'

Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992) (internal citations and quotations omitted). A strict application of these elements resolves the question of standing in HBTPower's favor.

**B.     HBTPower Has Standing To Sue Mohawk.**

In the Motion, Mohawk acknowledges that HBTPower is "the real party in interest." (DN 32-1 at 8.) The analysis should end there. However, Mohawk argues that, because Mr. Wang is a consultant for HBTPower (rather than "onsite manager," as he was before HBTPower was ousted

from the Premises), Mohawk questions whether this action "was brought by HBTPower Limited." (Id.) But that argument, though still incorrect, has nothing to do with constitutional standing. See Lujan, 504 U.S. at 590 (describing constitutional standing as requiring plaintiff (suffer or imminently suffer an injury, (2) that is fairly traceable to the defendants conduct, and (3) that will be redressed by a favorable decision from the court). HBTPower meets the elements of constitutional standing described in Lujan because (1) Mohawk's actions have caused, and will continue to cause, HBTPower to suffer concrete injury through the interference with HBTPower's contractual and ownership rights and (2) this Court can provide a remedy by enjoining Mohawk from further interference. Id. HBTPower is clearly named in the License Agreement with Mohawk, which governs the rights of the Parties and serves as the basis for this action, and is therefore the real party in interest.

To get around this, Mohawk argues that "Wang Yangping and his counsel rely almost exclusively on his own statements and pleadings to show that he is the party entitled to bring this action[,][9] [but] [t]he law is well settled that pleadings are not evidence." (DN 32-1 at 9.) To the contrary, the Motion is one for dismissal under Rule 12(b)(6), the standard for which requires this Court to accept the allegations pled in the Verified Complaint as true. Resolution of factual disputes like those raised by Mohawk in the Motion cannot be resolved at this stage of the case.

Mohawk spends three pages of the Motion citing inapplicable Kentucky law governing agency relationships in the context of contracts. This case law might have been relevant if Mohawk questioned whether Mr. Wang Yangping was authorized to sign the License Agreement on behalf of HBTPower in May 2022. However, it is of no consequence in this context, where HBTPower

---

[9] Again, Mr. Wang Yangping is not the party who brought this action. HBTPower brought this action against Mohawk based on the License Agreement between them.

merely authorized Mr. Wang to verify the facts contained in the Verified Complaint and to execute declarations concerning his personal knowledge of Mohawk's unlawful actions leading to the commencement of this action.[10]

## IV.  CONCLUSION

Mohawk has utterly failed to demonstrate any basis for dismissal of HBTPower's Verified Complaint under the applicable legal standard. HBTPower respectfully requests that this Court deny Mohawk's Motion.

---

[10] Even if the law cited by Mohawk applied here (and it does not), the Motion states that, "[a]ctual agency exists where '[t]here has been a manifestation by the principal to the agent that the agent may act on his account, and consent by the agent to so act.'" (DN 32-1 at 10 (quoting Kindred Nursing Centers Ltd. P'ship v. Brown, 411 S.W.3d 242, 249 (Ky. App. 2011)). Of course, there has been a manifestation by a director of HBTPower, Ms. Zhuo (formerly, the sole director up until January 11, 2024), that Mr. Wang is authorized to speak on behalf of HBTPower with regard to the facts surrounding this lawsuit and, thus, "actual agency" has clearly been established. Moreover, the declarations attached to this brief further support Mr. Wang's authority to speak on behalf of HBTPower and HBTPower's otherwise active participation in this lawsuit. In other words, "[n]otice to those dealing with [Mr. Wang]" has been provided, a fact that Mohawk itself acknowledges in the Motion. (DN 32-1 at 10 ("Notice to those dealing with an agent is required, and no such notice was provided to Mohawk or this Court prior to 12/18/23.").)

Respectfully submitted,

STOLL KEENON OGDEN PLLC
300 West Vine Street, Suite 2100
Lexington, Kentucky 40507-1380
(859) 231-3000
(859) 253-1093 facsimile

By: /s/ Palmer G. Vance II
    Palmer G. Vance II
    Lindsey H. Meares

and

Harout J. Samra
DLA PIPER LLP (US)
200 South Biscayne Boulevard, Suite 2500
Miami, Florida 33131
Telephone: (305) 423-8500
Facsimile: (305) 437-8131
Florida Bar No. 70523
Harout.Samra@us.dlapiper.com

Admitted *pro hac vice*

COUNSEL FOR PLAINTIFF,
HBTPOWER LIMITED

- 11 -

## CERTIFICATE OF SERVICE

I certify that on January 12, 2024, I served the foregoing via CM/ECF, which will send all parties of record a notice of electronic filing, including the following:

Anna Stewart Whites
Anna Whites Law Office
327 Logan Street
P.O. Box 4023
Frankfort, KY 40601
E: annawhites@aol.com
COUNSEL FOR DEFENDANT,
MOHAWK ENERGY, LLC

/s/ Palmer G. Vance II
*Counsel for Plaintiff,*
*HBTPower Limited*