**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**AT LOUISVILLE**

| | | |
|---|---|---|
| **HBTPOWER LIMITED,** | ) | CASE NO.: 3:23-cv-628-CHB |
| | ) | |
| Plaintiff, | ) | JUDGE: Claria Horn Boom |
| | ) | |
| | ) | |
| vs. | ) | **REPLY IN FURTHER SUPPORT OF** |
| | ) | **HBTPOWER LIMITED'S MOTION TO** |
| **MOHAWK ENERGY, LLC,** | ) | **DISMISS THE COUNTERCLAIM** |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

Comes the Plaintiff, HBTPower Limited ("HBTPower"), by counsel, and tenders this Reply in Further Support of its Motion to Dismiss the Counterclaim (DN 26) addressing matters raised in the Response to the Motion to Dismiss (DN 31) (the "Response") filed by Defendant, Mohawk Energy, LLC ("Mohawk").[1]

In its Response, Mohawk raises meritless and unsubstantiated claims in support of its position that its purported Counterclaim should not be dismissed. In particular, Mohawk argues that (1) the Parties' Operation Right License Agreement (the "License Agreement") has been modified on the basis of "Zoom meetings" and as such its dispute resolution clause is not enforceable; (2) the License Agreement permits the Parties to resolve their underlying dispute in this Court, rather than in arbitration; (3) HBTPower has waived its right to arbitration by seeking a provisional remedy in this Court; and (4) its purported counterclaims state a basis for relief against HBTPower. None of these arguments are correct. As detailed in its Motion to Dismiss (DN

---

[1] Mohawk makes an initial statement as part of its Response concerning its unfounded "concern that the real party in interest […] is not actually before this Court." This unfounded "concern" is of no relevance to this present Motion to Dismiss and is presently being addressed as part of a separate motion to dismiss filed by Mohawk.

26-1), Mohawk's purported Counterclaims should be dismissed on two independent grounds. For one, Mohawk must arbitrate its counterclaims as required under the License Agreement and consistent with the Federal Arbitration Act ("FAA"). Separately, Mohawk's Counterclaims fail to satisfy the minimum pleading requirements under Rules 8(a) and 9(b), and fail to state a claim under Rule 12(b)(6).

I.      **The Parties Must Arbitrate Their Underlying Merits Dispute.**

A. **The Parties License Agreement Has Not Been Modified and Its Dispute Resolution Clause Is Enforceable.**

Contrary to Mohawk's baseless claim, there is no evidence that the Parties' License Agreement has been modified. Section 26 of the License Agreement explicitly provides: "Except as otherwise provided herein, no provision of this Agreement may be amended, modified, or waived, ***unless by an instrument in writing*** executed by a duly authorized officer of the Party against whom enforcement of such amendment, modification, or waiver is sought." (DN 1-1 at 36) (emphasis assed). To date, Mohawk has failed to produce a shred of evidence, let alone "an instrument in writing" that would constitute an amendment to the License Agreement or some sort of modification of the License Agreement. And while under Kentucky law contracts may be modified based on an oral agreement, "the proof to support such an assertion must be clear and convincing." Dalton v. Mullins 293 S.W.2d 470, 475 (Ky.1956); *see also* Dehlinger v. Graue, 238 Ky. 461, 38 S.W.2d 246 (Ky.App. 1931). Here, Mohawk has failed to produce any evidence, let alone "clear and convincing" evidence other than making a baseless assertion that the License Agreement was modified by virtue of Zoom meetings between the Parties. As such, the License Agreement is, and has been at all times, the operating agreement between the Parties and its dispute resolution clause requiring the Parties to arbitrate their underlying dispute is enforceable.

### B.   The License Agreement Only Permits the Parties to Seek Provisional Relief in Court.

Section 20 of the License Agreement unambiguously provides: "Any dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate, ***shall be determined by arbitration*** in Lexington, Kentucky or Louisville, Kentucky before one arbitrator." (DN 1-1 at 28) (emphasis added). Nevertheless, "Section 20 shall not preclude Parties from seeking ***provisional remedies*** in aid of arbitration from a court of appropriate jurisdiction." Id. (emphasis added). This is why HBTPower instituted arbitration proceedings with JAMS on December 5, 2023, to resolve its underlying dispute with Mohawk, while simultaneously seeking injunctive relief from this Court. HBTPower's Verified Complaint (DN 1) seeks only injunctive relief which is, by its nature, provisional.  All other matters must be resolved through arbitration as the parties agreed.  Still, Mohawk states in its Response that the License Agreement "permitted either party to seek relief in the federal court." (DN 31 at 2). It is evident that this is simply an incorrect statement because it conflicts with the dispute resolution clause of the License Agreement.

### C.   HBTPower Has Not Waived Its Right to Arbitration.

Lastly, HBTPower has not waived its right to arbitrate the underlying dispute between the Parties.

Contrary to Mohawk's blatant misrepresentation, HBTPower did not stray "outside the license agreement and any applicability of any provision contain therein in its demand for relief for this Court." (DN 31 at 3.) It is clear that the only relief sough as part of HBTPower's court action is provisional relief in the form of a preliminary injunction until the issues are decided in

arbitration (<u>see</u> generally DN 1; DN 16; DN 23), and otherwise to compel arbitration of Mohawk's counterclaims (<u>see</u> DN 17). Contrary to Mohawk's assertion that HBTPower "has intentionally included matters before this Court" (DN 31 at 3), it is rather Mohawk that has filed several motions with this Court (<u>see</u> DN 13; DN 20; DN 32), none of which seek a provisional remedy as required under the Parties' License Agreement. Additionally, HBTPower has not "suddenly changed its tone and no longer wanted to be before this Court" (DN 31 at 3), when Mohawk filed its purported Counterclaim, as HBTPower instituted arbitration proceedings with JAMS as early as December 5, 2023.

Thus, and for the foregoing reasons, Mohawk cannot seek resolution of the underlying merits disputes between the Parties in this Court. Accordingly, this Court should dismiss Mohawk's purported counterclaim against HBTPower consistent with the License Agreement and the FAA.

## II.     <u>Mohawk's Counterclaims Fail to Satisfy the Minimum Pleading Requirements under Rules 8(a) and 9(b), and Fail to State a Claim under Rule 12(b)(6).</u>

Mohawk's Response makes it clear that all of its purported Counterclaims fail under Rules 8(a), 9(b), and 12(b)(6).

*First*, and as to the purported counterclaim for breach of contract, it remains unclear on what basis Mohawk is asserting such a claim. Throughout its Response Mohawk argues that the License Agreement is not the operative agreement between the Parties because it has been modified and "was just an Operation Right License Agreement." (<u>See</u> DN 31 at 1, 6.) At the same time, Mohawk argues that "[q]uite clearly the claim is that HBT breached ***its contract*** to pay for fit-up and its contract to use Mohawk's host facilities and pay 10% of all profits for eight years," without identifying the contract or the explicit contract language that is at issue. (DN 31 at 6)

(emphasis added.) In addition, Mohawk has still failed to identify the elements in its Counterclaim that would establish a claim for breach of contract. In its Response, it merely cites to paragraphs 2, 5, 13, 27, and 28 of its Counterclaim to argue that those paragraphs establish the elements of a breach of contract claim. However, for the reasons detailed in HBTPower's Motion to Dismiss, these do not establish the elements of a breach of contract action. Accordingly, Mohawk's purported breach of contract claim must be dismissed.

*Second*, Mohawk has still failed to identify the alleged misrepresentation made by HBTPower that would form the basis of its purported fraud claim. Mohawk merely asserts baseless and unrelated claims concerning Mr. Wang Yangping, ***all of which*** are based on upon Mohawk's "information and belief" (see DN 14 at 17), which per Mohawk form the basis of its fraud claim. "[A]lthough complaints grounding claims on 'information and belief' can survive a motion to dismiss, they 'must set forth a factual basis for such belief,' and plaintiffs cannot 'base claims of fraud on speculation and conclusory allegations.'" Smith v. GM LLC, 998 F.3d 873, 885 (6th Cir. 2021) (internal citation omitted.) "And evidence showing the requisite knowledge for fraud cannot escape a motion to dismiss by resting on information and belief without supporting facts." Id. Here, Mohawk has not provided any supporting facts, but rather asserted conclusory allegations. Thus, Mohawk's purported fraud claim must be dismissed.

*Third*, and while in its Response Mohawk indicates that a defamation claim requires, among other elements, to identify "a false and defamatory statement concerning another" (see DN 31 at 9), Mohawk has still failed to identify the purported "false and defamatory statement" made by HBTPower. Rather, Mohawk cites to paragraph 29 of its Counterclaim, which merely states: "Huobi is liable for Mohawk's loss of business standing and reputation due to its defamation of Mohawk, making false claims about Mohawk and its Manager." Yet, Mohawk does not identify

5

the purported "false claim." <u>See</u>, *e.g.,* <u>Dietz v. Bolton</u>, 2013 WL 1919562, at *31-*32 (Ky. App. May 10, 2013) ("First, we agree with the appellees and the circuit court that McKune did not identify any defamatory language published about her and, accordingly, she cannot maintain a claim for defamation.") In addition, Mohawk has not established the remaining elements of a defamation claim. Accordingly, Mohawk's defamation claim should be dismissed.

***Finally***, Mohawk has failed to identify the elements necessary to bring a claim for intentional inference with prospective business advantage and intentional impairment of right to contract. In its Response, Mohawk cannot point to a single paragraph in its purported counterclaim that can establish the six elements necessary to bring a claim for intentional inference with prospective business advantage. Indeed, Mohawk has failed to identify the existence of a valid business relationship or the expectancy of a contractual relationship with which HBTPower intentionally interfered. As such, Mohawk's counterclaims for intentional inference with prospective business advantage and intentional impairment of right to contract must be dismissed.

<u>**CONCLUSION**</u>

For the reasons stated above, and as detailed in HBTPower's Motion to Dismiss, HBTPower respectfully requests that the Court dismisses Mohawk's Counterclaims and all claims against HBTPower.

Respectfully submitted,

STOLL KEENON OGDEN PLLC
300 West Vine Street, Suite 2100
Lexington, Kentucky 40507-1380
(859) 231-3000
(859) 253-1093 facsimile

By: /s/ Palmer G. Vance II
       Palmer G. Vance II
       Lindsey H. Meares

and

Harout J. Samra
DLA PIPER LLP (US)
200 South Biscayne Boulevard, Suite 2500
Miami, Florida 33131
Telephone: (305) 423-8500
Facsimile: (305) 437-8131
Florida Bar No. 70523
Harout.Samra@us.dlapiper.com

Admitted *pro hac vice*

COUNSEL FOR PLAINTIFF,
HBTPOWER LIMITED

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on January 16, 2024, I served the foregoing via CM/ECF, which will send all

parties of record a notice of electronic filing.

/s/ Palmer G. Vance II
*Counsel for Plaintiff,*
*HBTPower Limited*