# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# AT LOUISVILLE

| | |
|---|---|
| **HBTPOWER LIMITED,** | CASE NO.: 3:23-cv-628-CHB |
| Plaintiff, | JUDGE: Claria Horn Boom |
| vs. | |
| **MOHAWK ENERGY, LLC,** | **JOINT STATUS REPORT PURSUANT TO RULE 26(f) CONFERENCE** |
| Defendant. | |

Plaintiff HBTPower Limited ("Plaintiff" or "HBTPower") and Defendant Mohawk Energy, LLC ("Defendant" or "Mohawk") (Plaintiff and Defendant are referred to collectively herein as the "Parties") hereby jointly submit their Rule 26(f) Report and Discovery Plan, for review by the Court (hereinafter the "Report"). Pursuant to the Scheduling Order, the Parties state as follows:

## I.     Rule 26(f) Conference

The Parties, by and through counsel, have met and conferred on the topics discussed herein and as required by the Scheduling Order and under Rule 26 of the Federal Rules of Civil Procedure. Harout Samra, counsel for Plaintiff, and Anna Whites, counsel for Defendant, met and conferred on February 7, 2024. The Parties and their counsel have cooperated in the interests of efficiency and avoidance of unnecessary disputes in attempting to agree on a discovery and case management plan, and anticipate that they will work cooperatively on discovery, scheduling, and settlement procedures in this case, as appropriate.

## II. Nature of the Case

### A. Plaintiff's Statement:

This is a case for provisional measures in aid of arbitration, whereby Plaintiff is seeking to enjoin Mohawk from improperly selling, disposing of, encumbering, assigning or using all or some of the 2,276 Bitmain Antminer S19j Pro and S19 Pro mining machines (the "S19 Series Miners") and 2,059 m30 Series and m31 Series mining machines (the "M Series Miners") (together with the S19 Series Miners, the "Mining Machines") that HBTPower delivered to the facility at 1004 Gateway Industrial Park, Jenkins, Kentucky 41537 (the "Premises") pursuant to a License Agreement dated May 31, 2022 (the "License Agreement") between the Parties. This Court's role is limited to the provisional relief sought and does not extend to a decision on the merits of the dispute between the parties.

Under the License Agreement, Mohawk was obligated to provide exclusive use of the Premises to HBTPower for bitcoin mining operations along with affordable power supply to facilitate profitable mining. The License Agreement could only be amended and the obligations thereunder could only be modified or waived in writing.

Mohawk represented to HBTPower that it (1) had a fee simple absolute interest in the Premises, (2) a ready power supply, and (3) that Mohawk could equip the Premises for mining within three months from the date of entering into the License Agreement. The Parties agreed to a first month rent and labor charges of $90,000, initial security deposits and payments towards infrastructure equipment not to exceed $8,000,000 (which would be paid against proforma invoices). The Parties also agreed that monthly rent and labor charges, beyond the first month, as well as Mohawk's 10% share from revenue generated from bitcoin mining would only become due and payable after Mohawk made the Premises functional for the agreed-upon bitcoin mining

activities, performed its obligations under the License Agreement, and formally sought HBTPower's satisfaction. All of these constituted condition precedents under the License Agreement that were never satisfied.

HBTPower incurred costs well of over $7,700,000 for supplying equipment and for setting up of the Premises. Moreover, HBTPower also has paid Mohawk more than $12,000,000 in rent, labor, deposits for electricity changes and staff fees, and advances for construction and equipment. Under the License Agreement, Mohawk was required to facilitate commencement of mining activities at the Premises by September 1, 2022, but Mohawk failed to make the Premises ready for mining. While HBTPower delivered the Mining Machines, Mohawk failed to fulfil its obligations under the License Agreements. HBTPower repeatedly asked for proforma invoices, but Mohawk did not provide a full account of how it spent the $7,700,000.

Despite the fact that HBTPower made several payments towards rent and labor, which were not even required under the License Agreement, Mohawk ousted HBTPower from the Premises arguing that HBTPower had failed to make rent payments. Mohawk then sold the M Series Miners to allegedly recoup unpaid rent. Contrary to representations made in the License Agreement, HBTPower learned that Mohawk did not own the Premises and did not have any contracts in place for the agreed upon power supply.

Mohawk has placed liens over many of the S19 Series Miners. Mohawk has not provided an inventory of the S19 Series Miners that are currently in its possession at the Premises, despite representations to the Court. The S19 Series Miners are unique in such quantity and virtually impossible to replace at this scale. HBTPower will suffer irreparable harm if it cannot get its machines back, for which it seeks provisional relief from this Court while the substantive dispute

is resolved in arbitration before the duly constituted JAMS arbitral tribunal, which has already commenced.

B. <u>Defendant's Statement</u>

The Defendant entered an initial license agreement with Plaintiff. Plaintiff visited the site and spoke with the managing officers, and determined immediate verbal modifications to the license agreement, particularly with regard to the use of the facility, the purchase agreement in place on the site, and the sum ($8 million) to be paid by Plaintiff to allow Defendant to fit-up the property in a manner that was specialized to the Plaintiff. The agreement was modified continually during the parties' working relationship, usually during the zoom meetings incepted by and recorded by the Plaintiff.

Plaintiff also demanded significant additions to the parties' initial agreement as well as additional agreements between the parties throughout the course of the parties' working together. Plaintiff's onsite representative agreed to each change and discussed the changes during the recorded weekly zoom meetings. There are about 40 such recordings during the parties' initial year of working together. Changes and modifications and the parties' agreements thereto are also documented in the texts and emails between Mohawk staff and HBT/Houbi staff.

Due to the modifications and ongoing changes to the agreement instituted by Plaintiff or resulting from Plaintiff's failure to promptly pay the fit up fee, there were some delays in the project. COVID slow downs to manufacturing and supply chain issues created some additional delays.

In July 2023, the plant was ready for initial mining to begin. Plaintiff had requested a slow ramp up. HBT was sold in this time period and its representative onsite and management abroad denied Defendant the right to begin mining. This delay adversely impacted Defendant's monthly

revenue from any mining, as per the parties' agreement, and prevented Defendant from starting the training and repair certification classes which were to accompany the ongoing mining. No mining ever started.

In the same time period. HBT management announced that it would not pay the labor costs for any ongoing work, would not pay storage or rental fees, and would not pay for security to the mining machines and facility.

Defendant offered multiple alternatives throughout the next six (6) months in an attempt to encourage HBT to either transfer its interests to another company, dissolve the contract, or otherwise enable Mohawk to continue work in the region. HBT made no response whatsoever.

At some point after HBT abandoned the site and stopped making any of the required monthly payments, the former onsite representative for HBT, Wang Yangping, retained counsel and claimed that he represented HBT and was the de facto owner of the agreement. In appropriate due diligence, Mohawk requested verification from Houbi and HBT that Wang held their interest, and requested that Wang provide ownership documents for the mining machines (proof of tax, proof of insurance, shipping documents, an inventory list, proof of purchase, proof of import, etc.). To date, neither "HBT" (if that entity is before this Court), nor Wang has been able to provide a single scrap of paper supporting any ownership interest. Similarly, no party before this Court has been able to provide copies of the recorded zoom meetings, which contain the best evidence of the parties' ongoing contracts and agreements.

Defendant Mohawk states that it has suffered significant financial damages due to Plaintiff's breach of the eight year contract between the parties. Mohawk has suffered additional reputational and economic damages due to Plaintiff's breach of the agreement and the related inability of Mohawk to open the training and certification program. Mohawk has suffered

significant financial loss due to the nonpayment of rent and labor, taxes and insurance coverage by HBT. Mohawk has been unable to use its facility for any purpose during the pendency of this action, and potential lessors or purchasers of the site are unwilling to engage in a contract regarding the site because of the current lawsuit.

Mohawk purchased the site in Kentucky's most severely low income and vulnerable region with the intent to provide economic development, training and certification, employment for out of work coal miners, displaced flood victims and veterans returning home after service to the country. Plaintiff has prevented these vital activities and continues to damage and defame both Mohawk and the citizens of the region.

Mohawk requests: (a) A finding that the party before this Court is not the party to the contract with Mohawk; (b) Compensation for Plaintiff's breach of the eight year contract; (c) reimbursement for host fees, labor costs, rental/storage costs, insurance, taxes and other expenses which were required to be borne by HBT; compensation for economic damages related to not being able to start the training and certification program; and (d) relief prohibiting Plaintiff from claiming any interest in Mohawk's site or fixtures thereon.

**III.    Discovery Plan**

    **A.  Initial Disclosures:**

Plaintiff's Statement: Plaintiff proposes to complete initial disclosures by March 5, 2024, in advance of the hearing on Plaintiff's Motion for Preliminary Injunction. Disclosures will relate solely to the provisional relief sought.

Defendant's Statement: Defendant proposes to complete initial disclosures by June 1, 2024. Defendant further states that Plaintiff should have to make complete disclosures, as required by

the Federal Rules of Civil Procedure, not partial disclosures as are contemplated by Plaintiff's statement above.

**B. Subjects, Timing, & Phasing of Discovery:**

Plaintiff's Statement: Plaintiff will engage in discovery limited to the provisional relief sought. As such, Plaintiff will propound written discovery and taken a limited number of depositions prior to the hearing. The Parties will prepare a schedule and submit to the Court.

**C.** Defendant's Statement: Defendant will submit discovery requests relevant to the action filed by Plaintiff and all relevant counterclaims. **Electronically Stored Information ("ESI"):**

To be provided in accordance with the rules of this Court.

**D. Privilege Issues:**

Defendant's Statement: Defendant may hold as privileged communications with counsel; and communications related to its business development other than the training/certification program and the agreement and modifications thereto with Plaintiff.

**E. Proposed Limitations on Discovery:**

Plaintiff's Statement: Discovery will relate solely to the provisional relief sought by Plaintiff.

Defendant's Statement: Discovery will relate to all matters before this Court. Defendant suggests that each party should be permitted 20 interrogatories and 20 requests for production of documents. Defendant does not agree that the parties have time or capacity take depositions before the hearing, which is set for early April.

    **F.**   **Discovery-Related Orders:**

The Parties will confer as necessary regarding a stipulated protective order to protect confidential or proprietary information produced in discovery. At this time, the Parties agree that no additional orders should be entered by the Court with respect to Discovery.

**IV.**   **Amendments**

The Parties do not anticipate that any pleadings will require amendment at this time. The Parties further agree that no amendments should be permitted without briefing and a hearing before this Court.

**V.**   **Dispositive Motions**

<u>Plaintiff's Statement</u>:  Given the provisional nature of the relief sought from this Court, and the limited purpose of this proceeding, Plaintiff does not anticipate filing any dispositive motions.

<u>Defendant's Statement</u>:  Two dispositive motions must be briefed and heard prior to the hearing.  The first is the crucial concern that the individual or entity before this Court is (a) Not HBTPower Limited or a valid designate, and (b) is not the owner of the mining equipment.   The second of the dispositive motions which must be heard before the hearing is whether the matters intentionally brought before the Court require that the Plaintiff's request for arbitration be denied. Additional dispositive motions should be due on or before October 1, 2024.

**VI.**   **Pre-Trial Motions and Materials**

<u>Plaintiff's Statement</u>: The Plaintiff proposes that the Parties must file all pre-hearing filings, including Rule 26(a)(3) witness lists, designations of witnesses, and the exhibit lists by April 1, 2024, subject to any orders to the contrary required by the Court.

Defendant's Statement: Defendant proposes that Pre-trial motions and materials should be due on or before December 1, 2024, with a trial to be scheduled after that date

**VII.     Rule 26(a)(3) Objections**

To be presented in accordance with the rules of this Court.

**VIII.    Alternative Dispute Resolution**

Plaintiff's Statement: Pursuant to the License Agreement, Plaintiff has commenced an arbitration before JAMS and under JAMS' Streamlined Arbitration Rules and Procedure to resolve the Parties' underlying dispute. The License Agreement expressly allows the Parties to seek provisional relief from this Court. Defendant has already filed its answer and counterclaim in the JAMS arbitration.

Defendant's Statement: Defendant proposes that the Parties should engage in non-binding mediation, before 10/1/24, with a Federal Magistrate Judge, as determined by this Court. The Plaintiff intentionally waived any claim to arbitration by filing the pleadings and motions in this matter. As the Court's jurisdiction was sought for the entirety of the matter, the case should not be bifurcated, with a portion of it held elsewhere, outside the jurisdiction of this Court.

**IX.     Length of Trial**

Plaintiff's Statement: Plaintiff does not anticipate the hearing on the case for preliminary injunction to take more than two days. Plaintiff does not anticipate any other trial required because the License Agreement provides for arbitration, which has been initiated.

Defendant's Statement: Defendant anticipates two (2) days for the hearing on injunctive relief and 1 week for trial of the matter, accounting for translation requirements of Plaintiff.

**X.      Dates for Trial**

The Parties have consented to April 15 and 16, 2024 as the dates of the hearing on the motion for preliminary injunction.  Plaintiff does not anticipate any other trial.  The Defendant, however, proposes January 2025 for trial of the matters before this Court..

**XI.     Jurisdiction of Magistrate Judge**

The Parties do not consent to the exercise of jurisdiction by a United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c).

- 11 -

Respectfully submitted,

| | |
|---|---|
| STOLL KEENON OGDEN PLLC<br>300 West Vine Street, Suite 2100<br>Lexington, Kentucky 40507-1380<br>(859) 231-3000<br>(859) 253-1093 facsimile | ANNA WHITES LAW OFFICE<br>P.O. Box 4023<br>Frankfort, KY 40601<br>E: annawhites@aol.com |
| By: /s/ Palmer G. Vance II<br>     Palmer G. Vance II<br>     Lindsey H. Meares | By: /s/ Anna Stewart Whites<br>     Anna Stewart Whites<br><br>COUNSEL FOR DEFENDANT,<br>MOHAWK ENERGY, LLC |
| and | |

Harout J. Samra
DLA PIPER LLP (US)
200 South Biscayne Boulevard, Suite 2500
Miami, Florida 33131
Telephone: (305) 423-8500
Facsimile: (305) 437-8131
Florida Bar No. 70523
Harout.Samra@us.dlapiper.com

Admitted *pro hac vice*

COUNSEL FOR PLAINTIFF,
HBTPOWER LIMITED

- 12 -

## CERTIFICATE OF SERVICE

I certify that on February 21, 2024, I served the foregoing via CM/ECF, which will send all parties of record a notice of electronic filing, including the following:

Anna Stewart Whites
Anna Whites Law Office
327 Logan Street
P.O. Box 4023
Frankfort, KY 40601
E: annawhites@aol.com
COUNSEL FOR DEFENDANT,
MOHAWK ENERGY, LLC

         /s/ Palmer G. Vance II
*Counsel for Plaintiff,*
*HBTPower Limited*