```
 1                    UNITED STATES DISTRICT COURT
                      WESTERN DISTRICT OF KENTUCKY
 2                         LOUISVILLE DIVISION

 3
      HBTPOWER LIMITED,                )
 4                                     )
              Plaintiff,               )    Case No. 3:23-CV-00628-CHB
 5                                     )
      v.                               )
 6                                     )
      MOHAWK ENERGY, LLC,              )
 7                                     )    April 1, 2024
              Defendant.               )    Louisville, Kentucky
 8

 9                              * * * * *
              TRANSCRIPT OF TELEPHONIC STATUS CONFERENCE
10               BEFORE HONORABLE CLARIA HORN BOOM
                    UNITED STATES DISTRICT JUDGE
11                              * * * * *

12    APPEARANCES:

13    For Plaintiff:          Harout Samra
                              DLA Piper LLP
14                            200 S Biscayne Blvd
                              Suite 2500
15                            Miami, FL  33131

16                            Lindsey Howard Meares
                              Stoll Keenon Ogden PLLC
17                            400 W Market St, Suite 2700
                              Louisville, KY  40202
18
      For Defendant:          Anna S. Whites
19                            327 Logan St
                              P.O. Box 4023
20                            Frankfort, KY  40604

21

22                      Rebecca S. Boyd, RMR, CRR
                          Official Court Reporter
23                        232 U.S. Courthouse
                          Louisville, KY 40202
24                          (502) 625-3777

25    Proceedings recorded by mechanical stenography, transcript
      produced by computer.
```

1      (Begin proceedings via telephonic conference at 10:11 a.m.)

2           THE COURT:  This is Judge Boom.  We are on the record

3      in the matter of HBTPower Limited versus Mohawk Energy, LLC.

4      This is Louisville Civil Action 3:23-CV-628.  Counsel, please

5      state your appearances for the record, first for the petitioner

6      HBTPower.

7           MR. SAMRA:  Good morning, Your Honor.  This is Harout

8      Samra of DLA Piper admitted pro hac vice in this matter on

9      behalf of HBTPower, and I'm joined by my colleague Lindsey

10     Howard Meares from the law firm SK -- the SKO law firm.

11          THE COURT:  All right.  Mr. Samra, will you or Ms.

12     Meares be answering my questions?

13          MR. SAMRA:  Your Honor, I think I will be principally

14     answering the questions.  If needed, Ms. Meares may also jump in

15     as appropriate, if that's okay with the Court.

16          THE COURT:  Certainly.  And on beha -- on behalf of

17     Mohawk Energy?

18          MS. WHITES:  Anna Whites, Your Honor, on behalf of

19     Mohawk Energy.

20          THE COURT:  All right.  Good morning.  We're here for

21     a telephonic status conference, primarily to discuss scheduling

22     related to the preliminary injunction hearing that's currently

23     scheduled for April the 15th and 16th.

24          Before I get to that issue, I wanted to address some other

25     matters, including other scheduling matters.  The -- there is an

1    in-person status conference scheduled for this Thursday, April

2    the 4th in Louisville, of course, at 2:30 in the afternoon.

3    Also prehearing submissions are due today per the Court's

4    previous order at record entry 44.

5        First question, Mr. Samra:  Any questions or issues related

6    to the upcoming in-person status conference or the prehearing

7    submissions that are due today?  Mr. Samra.

8            MR. SAMRA:  Thank you, Your Honor, and I appreciate

9    this opportunity to address these two issues with the Court.

10   First, as to the status conference that's set for April 4th, any

11   guidance that the Court can provide about the specific issues

12   that, you know, the Court wishes to address during that hearing

13   would be helpful.

14       I mean, there are, of course, several motions pending, and,

15   in particular, if the Court could provide us with a sense of

16   whether the Court wishes to have any oral argument on any of

17   those motions, obviously, that would be helpful, you know, to

18   allow us to prepare for that.

19       But as to the submissions that are due today, and I have not

20   had a chance to discuss this with Ms. -- with Ms. Whites, who's

21   on the line as well, so she may have an opportunity, of course,

22   to respond.

23       Looking at the current sort of picture, we have served

24   discovery on one another.  Those discovery requests right now

25   are due for -- to be -- you know, for responses this week and

1  next week, including requests for production of documents.

2      So one practical consideration I think that that bears on,

3  not only the responses that are due today but also on the

4  hearing itself, is that we'll be receiving documents over the

5  next couple weeks, in the time leading up to the hearing, which

6  obviously makes it a little bit more challenging to mark

7  exhibits.

8      We, obviously, submitted evidentiary, you know, support and

9  documents and affidavits in connection with our motion and as

10  well with the response, but any new documents that are received

11  will not, obviously, be ready to submit as part of the exhibit

12  bundle, much less, you know, giving us the opportunity to

13  review.

14      So that's one practical issue with the submission of the

15  prehearing materials today, and so then we wanted to raise that,

16  you know, given the opportunity, and, again, not having had the

17  opportunity to discuss this with Ms. Whites, so both sides are

18  really in the same position.

19      I think Ms. Whites -- our responses to Ms. Whites, the

20  written responses are due this week.  We've already begun

21  reviewing documents, number in the thousands, to review and

22  ultimately to submit any content, not which documents, which

23  would likely begin also this week and, you know, go forward from

24  there with our little cases as an -- on an expedited a basis as

25  we can.

1          So we wanted to raise this issue both in terms of the

2     submissions that are due today but also in terms of the hearing

3     on April 15 and 16, if the Court would entertain, you know, a

4     brief continuance, something in the range of 30 days or so, just

5     to permit the parties to wrap up the limited discovery that we

6     served on one another, which we discussed with the magistrate

7     judge during the hearing that we had.

8          I don't think much time is really needed.  In a sense, 30

9     days, I think, should give us the opportunity to complete our

10    respective production.  Excuse me.  I'm coming off a cold, Your

11    Honor, so I appreciate your patience with me on that.  But --

12    but would also give us the opportunity, then, to include any

13    documents that are responsive that the parties have produced to

14    one another with the exhibit bundles that are going to be

15    submitted to the Court as part of the pre -- prehearing

16    submissions.

17               THE COURT:  All right.

18               MR. SAMRA:  That's all --

19               THE COURT:  Go ahead.

20               MR. SAMRA:  -- I have, Your Honor.

21               THE COURT:  Okay.  And, certainly, I will circle back

22    to some of the specific questions that you have posed, but I

23    want to get a response from Ms. Whites on the particular request

24    for a continuance of 30 days.  So what is the position of the

25    respondent on that particular issue?

1          MS. WHITES:  Your Honor, we agreed back when they

2    filed this motion in January, when they should have been ready

3    for any hearing on injunctive relief, that they had filed the

4    motion and requested a hearing, as to move ahead with that.

5          And at the Court's encouragement, we agreed to hold

6    operations of Mohawk in abeyance, and so it's been inactive now

7    since January, which is an -- economic opportunities are passing

8    by, because it's a large facility and really being sought after.

9          The space was taken up by some of the equipment at issue in

10   this case, and so Mohawk has made zero dollars in 2024 and had

11   to turn down significant opportunities.  And we did that because

12   we were trying to briefly maintain the status quo while we

13   waited for the hearing.

14         So another 30 days is another -- a 90,000 minimum a month in

15   host fees and labor features lost, because we have to pay, on

16   the Mohawk side, insurance for those -- for that equipment.  We

17   have to pay security guards to protect it, since it's valuable,

18   and the building cannot be used.

19         And so it's a minimum of $100,000 a month that Mohawk has

20   lost January, February, March, now moving into April, not

21   counting the same lack of ability to move forward with other

22   operations in the site since last July when HBT should have

23   begun mining.

24         We really object to another 30 days, because this has really

25   being dragged out to the enormous detriment of Mohawk.  HBT

1  presents itself as a multi-million or billion dollar company.

2  This is probably not really harming them to wait, but it's

3  catastrophic for Mohawk, which has this building and this site,

4  and this is the time of year that economic opportunities present

5  themselves.  We're having to turn down the fiscal court, we're

6  having to turn down state tourism, where we're really struggling

7  with that.  This does look a little bit like a large company

8  trying to bankrupt a much smaller one.

9       With regard to discovery production, I think we can both, on

10  both sides, limit that just to producing documents relevant to

11  this particular hearing rather than the, really, thousands --

12  tens of thousands of e-mails that the parties have exchanged

13  back and forth over the last 18 months.  There are specific

14  items that would have to be exhibits for Mohawk, including the

15  Zoom recordings and the ownership documents that HBT has still

16  been unable to produce.

17       So we are a little hamstrung on the Mohawk side in trying to

18  provide an evidence list.  I can provide general categories of

19  evidence but not specific documents, because most of those we're

20  waiting for them to send us.

21       I believe witness lists on both sides, the parties should be

22  able to provide those to the Court today, but the exhibits are,

23  as Mr. Samra pointed out, going to be a little difficult to

24  produce until next week.

25            THE COURT:  All right.  I am -- I want a little more

1    explanation about, Ms. Whites, your assertion that the

2    respondent has -- Mohawk Energy has held all operations in

3    abeyance.  My understanding of the parties' agreement was simply

4    that you had agreed not to sell any additional of these machines

5    in payment of whatever rents might be owed.  So I'm a little bit

6    confused by that.

7              MS. WHITES:  All right.  And the way I understood it

8    after discussing with HBT was that they didn't want us to risk

9    or compromise any of their equipment, which is sitting,

10   literally, in the middle of the facility, and they -- HBT's

11   employees had -- or agents had filled most of the operable

12   shelves with machines that are hooked up.

13      Mohawk has never touched any HBT machine, so we would have

14   to pull those off the shelves and rebox them in order to use the

15   facility, where we'd be happy to do that.  If the Court says,

16   "Go ahead and use your building," we're happy to put that stuff

17   in storage or use it but not sell it in situ or whatever would

18   be economically appropriate, but with it all just sitting there

19   in the facility, our hands are tied.  Nobody wants to come in

20   and start mining, even though there have been several companies

21   willing to do it, because the shelves are full.

22      And, similarly, other businesses don't want to come in and

23   start, you know, putting up the training school, putting up

24   repair facilities, doing business in that large space when at

25   any moment there could be, you know, a preliminary injunction

1    putting a hold on all operations.  Very difficult to contract

2    with the state if you say, "But you might have to leave in a

3    month."

4        Now, if the preliminary injunction and the Court's

5    understanding is just a yes-no on selling the equipment, then

6    that has been my misunderstanding, and we will -- we will

7    proceed to use the facility.

8                MR. SAMRA:  If I may, Your --

9                THE COURT:  Well, I -- well, let me just finish.  I

10   mean, my understanding of -- the Court, essentially, entered an

11   order that affected the agreement of the parties that you simply

12   were not going to sell any more of these machines.  I can pull

13   up the order and read it again, but there was no limitation in

14   the order, it's my understanding, that you could not move the

15   machines, put them into storage, whatever you needed to do to --

16               MS. WHITES:  Okay.

17               THE COURT:  -- deal with business operations there.

18   Now, if you think there's a question about that, you can

19   certainly file the appropriate, you know -- or we can discuss

20   that further at the hearing this Thursday, but, certainly, there

21   was nothing in the order, to my understanding, that caused --

22   you know, that directed that you had to hold all of your

23   operations in abeyance.  Again --

24               MS. WHITES:  Okay.

25               THE COURT:  -- I will look closer at that, but --

1       MS. WHITES:  And that could be my misinterpretation,

2  Your Honor.  I just may have -- may have not fully understood,

3  and I should have asked at the time.

4       THE COURT:  Certainly, you know, I would encourage the

5  parties to speak about things like that, because you might be

6  able, working, you know, with opposing counsel, to get

7  clarification on issues regarding the scope of what your own

8  agreement was.  So I would just simply encourage both sides to

9  do that.

10      In any event, Mr. Samra, the Court is persuaded by the

11  arguments of Ms. Whites concerning continued delay of the

12  preliminary injunction hearing.  This -- you know, at the time

13  you filed your mo -- this is not -- a preliminary injunction

14  hearing is not, you know, a hearing sort of post all discovery

15  that is, in effect, a post discovery minitrial.

16      At the time you filed the TRO, preliminary injunction

17  hearing, you should have been ready with the discovery needed or

18  the information needed to meet the extraordinary standard of a

19  preliminary injunction hearing.

20      It's not there to be sort of a minitrial after all discovery

21  has been had before a potential trial but, rather, there to

22  effect extraordinary relief should the petitioner meet that

23  standard.  All of that to say now that I'm happy to hear you on

24  that precise issue right now, but I will also just flag to the

25  parties that I do have a conflict on the 16th, not the 15th but

1    the 16th, which we can get to that in a minute, and how we want

2    to work around that.

3        But, Mr. Samra, what about the respondent's arguments that,

4    you know, you should be prepared at the time that you filed your

5    TRO, preliminary injunction motion to proceed with a hearing in

6    fairly short order?  Mr. Samra.

7            MR. SAMRA:  And thank you, Your Honor.  I think it's

8    fair to say we did, obviously, submit evidence, including

9    affidavits and other materials, and we are prepared to proceed

10   on that basis.  I think as time has developed, including the

11   hearing that we had, the parties served discovery on one

12   another.

13       So it wasn't just that we had served discovery.  The

14   discovery is fairly limited, and the, I think, idea would be, at

15   this point, just to allow the parties to complete that process

16   with respect to the discovery that they served on one another so

17   that we can, in an organized and sort of structured way, submit

18   to the Court all of the documents that we intend to rely on.

19       Because, alternatively, I think what we may have here is

20   a -- is a process in which we, you know, receive documents from

21   the other side, probably next week, and then, you know, review

22   them, and if anything is pertinent, we would want to have that

23   before the Court, you know, we'll be in a position of submitting

24   exhibits and other documents in sort of a related, potentially,

25   sort of partial way in addition to the documents that we've

1    already submitted to the Court in support of the motion when it

2    was initially filed and all of the other evidence that we

3    submitted then.

4        So it isn't to say that, you know, we need the discovery to

5    complete the process on our end, but the parties have begun that

6    process on both sides.  In fact, Mohawk served discovery on us

7    first, and then we served discovery on them a few days later.

8        And so in order to allow that process to play out, we are

9    not asking for an extensive period of additional time.  It's a

10   relatively brief additional time, and it doesn't necessarily

11   have to be thirty days.  I think something in the range of two

12   weeks even would give us the time that we would need to receive

13   what Ms. Whites, on behalf of her client, would be producing and

14   also to provide to Ms. Whites the documents that she herself has

15   now just referenced as being very important that -- for her

16   purposes in connection with the risk (inaudible) that she served

17   on us, that Mohawk has served on us.

18       And then the other point, Your Honor, and I just wanted to

19   add, is consistent with what I think the Court's recollection is

20   of the order and of the agreement of the parties.  There is no

21   issue with, you know, putting the materials or any of these

22   machines back in boxes as I understand.

23       We visited the site, Your Honor, and there are empty boxes

24   there, and the machines that are currently, you know, deployed

25   can be put back in the boxes, I don't think, without -- I don't

1    think that that would in any way violate the agreement of the

2    parties.

3        And so, you know, we -- we're happy to confer with Ms.

4    Whites, this is not something we talked about before, but as far

5    as, you know, moving the machines, particularly if they're just

6    going to stay on site in boxes, in a way that would allow them

7    less obstructed or unobstructed access to the rest of the

8    building I don't think would be a problem, from our standpoint.

9        So as far as, you know, the hearing itself, we're not asking

10   for, you know, an extensive continuance.  It's really just to

11   allow the parties to complete the process that they respectively

12   have begun.  Here, requesting documents and information from one

13   another in a limited way consistent with the hearing that we had

14   with the magistrate judge in this case.

15       And then as far as any prejudice, I think that, you know, a

16   few additional weeks, even three weeks, two weeks, four weeks,

17   something like that, should not be terribly prejudicial, and,

18   particularly, if we can reach an agreement, which I believe we

19   already have, frankly, that would allow them to move the

20   equipment that's in place already, which we were given the

21   opportunity to observe, so that they then have unobstructed

22   access for the state, which should not be a problem.

23           THE COURT:  Ms. Whites, any response or has your

24   positioning changed with respect -- now that it appears clear

25   that there is no issue with you moving the machines to a

 1    different location to hopefully be able to have full access to

 2    the facility?

 3              MS. WHITES:  That does help, Your Honor.  I think I

 4    would still object on basis of principle.  Mohawk has had this

 5    injunction hanging over its head now for four months, and that

 6    does put a damper, as it is a public record, definitely puts a

 7    damper on business.  We really would like to proceed as quickly

 8    as possible to complete resolution of the matter.  They're just

 9    asking for economic damages.  I think it's clear there's going

10    to be no extraordinary relief.

11        With regard to Mr. Samra's claim that the discovery was

12    limited, Mohawk, I did try very hard to limit just to discovery

13    for this hearing.  HBT did not so limit their discovery, and

14    theirs is massive.  And so I'm not sure that was entirely a

15    good-faith attempt to -- to do what the magistrate advised us to

16    do, which was very limited discovery.

17        I think the parties scheduled this months ago and should

18    move ahead as scheduled, recognizing that the Court has a

19    conflict on the 16th.

20              THE COURT:  Okay.  I understand the position of the

21    parties.  So the Court has an unavoidable conflict on Tuesday,

22    April the 16th.  I also sit on the United States Sentencing

23    Commission.  The April meeting for the commission was originally

24    scheduled April the 8th through the 10th.  This past Friday,

25    three days ago, the April meeting was moved to April the 15th

1    through the 17th due to issues beyond my control.

2        The commission meeting includes a public meeting in which a

3    vote must be held no later than, my understanding, than April

4    the 17th.  So it does present a conflict with the Court's

5    preliminary injunction hearing in this matter.

6        However, I have arranged to be absent from the meeting on

7    Monday, April the 15th, to hold a portion of the preliminary

8    injunction hearing, but I cannot be available on Tuesday, April

9    the 16th or even Wednesday, April the 17th.

10       I can offer other dates and happy to hear from the parties

11   on the second day.  Of course, this would require that the

12   hearing be held sort of split.  So it would be held on Monday,

13   April the 15th, given the position of Ms. Whites, and then we

14   would have to resume on a different day.

15       So the other dates that the Court has available, we could

16   advance it.  Now, my schedule is open April 8th, 9th, 10th,

17   11th, and potentially the 12th or we could delay the second day

18   of the hearing to April the 18th or the 19th.

19       So we could also allow for a hybrid hearing, a remote

20   hearing via video for the second day if that would assist or,

21   again, we could move the entire thing.  It would have to be

22   moved to the first week of May.  I have a trial, a criminal

23   trial that cannot be moved beginning Monday, April the 22nd in

24   Louisville that is expected to last almost two weeks.

25       So my first available day after the week of -- after April

```
 1   the fift -- 18th or 19th would be the week of -- starting
 2   Tuesday, May the 7th.  So May the 7th and the 8th.
 3       So first, Ms. Whites, it sounds like you would like at least
 4   to begin the hearing on the 15th.  Given that the Court cannot
 5   hold a continuous hearing on two separate days, then what is
 6   your preference as far as the second day or would you prefer to
 7   move the entire hearing to May the 7th and the 8th?  Ms. Whites.
 8           MS. WHITES:  I can do either.  I certain -- I'm not
 9   available on the 18th.  I could do the 19th, and I presume since
10   the parties are splitting their time evenly, that that probably
11   helps -- helps me more than it helps them.  I do see that that
12   may be inequitable.  I also am available on the 7th and 8th.
13       So my preference is to do the 15th and the 19th, if
14   possible, but I understand also that the Court will have a lot
15   to hear, and if that's inconvenient for you, we can move to the
16   May date.
17           THE COURT:  Are you available May the 7th and the 8th?
18           MS. WHITES:  I am.  I would have to check with Senator
19   Smith, but the legislative session should be over, so at least
20   remotely, he should be available then.  I don't -- I also don't
21   know about our expert, because I know he has a trial abroad.  So
22   I would have to double-check those dates with them.
23           THE COURT:  All right.  Mr. Samra.
24           MR. SAMRA:  I think, Your Honor, our strong preference
25   would be May 7th and 8th.  In part, also because we will have
```

not only counsel but also witnesses from outside of Kentucky

traveling, and we did not receive Ms. Whites' witness list, but

we expect that she may also ask for witnesses to travel

internationally.  And so having the dates consecutive for us is

significant, because it allows, I think, for the witnesses to

have a more predictable timeframe about when they need to be

here.

       Alternatively, you know, we would have to have multiple

people in town for the entire week if we were to do the 15th and

the 19th, Monday and Friday.  So our strong preference would be

the 7th and 8th of May.

             THE COURT:  All right.  Let me circle back on a couple

of your requests or a couple of your questions.  As far as what

I expect at the hearing this Thursday, I will expect the parties

to be ready to argue any of the pending motions.  I will either

resolve those certainly in advance of the hearing, whatever date

it's ultimately scheduled for, but I also may rule from the

bench this Thursday on a number of those motions.  I find a

couple of them fairly easy called under the law in the past.

So -- but you should all be prepared to address any of the

pending motions at the hearing this Thursday.

       As far as what I am requesting by way of the prehearing

submissions, the deadline being today, I expect exactly what I

have asked for in the order, so I will simply refer you to the

order at record entry 44.

1     As far as the discovery, I am going to ask for both counsel

2   to review the magistrate judge's order.  I'm going to ask you to

3   review what you have requested and that you ensure that your

4   discovery is narrowly tailored only to those issues that are

5   directly relevant to the preliminary injunction hearing and

6   nothing more.

7     So I am going to request that you each by this Thursday, at

8   our in-person status conference, be ready to defend your

9   discovery requests, and that you be prepared to produce those at

10  least by this Friday.

11    Again, this is not -- you know, a preliminary injunction

12  hearing is not based on a wide-ranging general discovery that

13  might ultimately be appropriate during the course of a normal

14  pretrial proceeding when a case is proceeding to trial.

15    And so I think Ms. Whites has strong arguments there, and

16  I'm going to ask you to each -- to confer -- I am ordering you

17  to confer and that you come to an agreement that you can

18  articulate to the Court and defend this Thursday and be ready

19  for -- to produce that by this Friday.

20         MR. SAMRA:  Thank you.

21         MS. WHITES:  Thank you, Your Honor.

22         THE COURT:  And pulling up the magistrate judge's

23  order states, "The parties are instructed to conduct limited

24  discovery relating to the pending motion for preliminary

25  injunction as necessary to get prepared for the upcoming hearing

1    before the Court.  The Court will conduct an additional status

2    conference after that hearing to discuss setting a formal

3    schedule for the remainder of the case."

4        So that is exactly what I expect the parties to do.  This is

5    not a free-for-all discovery expedition.  It is to be narrowly

6    tailored to what is necessary to conduct this preliminary

7    injunction hearing.

8        Do you understand, Mr. Samra?

9            MR. SAMRA:  I do, Your Honor.  Thank you.

10           THE COURT:  Do you understand, Ms. Whites?

11           MS. WHITES:  Yes, Your Honor.  Thank you.

12           THE COURT:  So as far as the scheduling of the

13   preliminary injunction hearing.  You know, Ms. Whites, I think

14   that you make good arguments that they filed this motion for

15   TRO, which was ultimately resolved between the parties, and

16   then -- and also requesting a preliminary injunction, and that

17   by -- now, you know, again, this was by agreement of the

18   parties.  You agreed to delay the preliminary injunction hearing

19   until April the 15th and the 16th.

20       I hear your argument that they should be -- should have been

21   ready for the preliminary injunction hearing when it was filed,

22   but, again, by agreement of the parties, you agreed to delay the

23   hearing to April the 15th and the 16th.

24       That being the case, we could certainly split the hearing

25   up, but I do believe that that would be fairly inefficient and

1    just would also not only be inefficient for the parties but be

2    inefficient for the Court in that, you know, these are decisions

3    that have to be made on a fairly expedited basis, and it is

4    helpful to hear the testimony and the evidence in a compressed

5    period of time rather than separated by, you know, any kind of

6    significant period of time.

7        That being the case, let me ask this:  Mr. Samra, are your

8    folks available on the 18th or the 19th?

9             MR. SAMRA:  I don't know, Your Honor.  I would need to

10   confirm the availability on the 18th and the 19th.  At least

11   counsel, I'm speaking for myself, I'm available.  I can't speak

12   for my colleague, Ms. Meares and Mr. Vance, but I would need to

13   confer.

14            THE COURT:  All right.  Here's what I'm going to do:

15   Counsel, are you available for a follow-up status conference

16   today at 4:00 o'clock?  Ms. Whites.

17            MS. WHITES:  Yes, Your Honor.  I can do that.  4:00

18   o'clock today?

19            THE COURT:  Uh-huh.

20            MS. WHITES:  Yes.  Yes.

21            THE COURT:  Mr. Samra?

22            MR. SAMRA:  I am available, Your Honor.  Just the

23   practicality, though, for me to reach out to -- some of our

24   client contacts are in Asia.  So they would -- they are

25   currently about 12 hours ahead of us.  It's more likely that I

1   would get an answer by tomorrow morning, at this point.

2          THE COURT:  All right.  I'd like for you -- I'm going

3   to go ahead and set this for a telephonic status conference for

4   4:00 o'clock today.  And in the meantime, Ms. Whites, I want you

5   to confer with your client, with your expert on the availability

6   for -- I am assuming everybody remains available on the 15th,

7   but availability on the 18th, the 19th.  I think you said maybe

8   you were unavailable on the 18th.  So is that correct?

9          MS. WHITES:  I do have a deposition.  I could move

10   that.  It's not critical.

11          THE COURT:  All right.  Please check with your clients

12   and expert that may be called on availability the 18th, the 19th

13   of April and then May the 7th and 8th.

14          MS. WHITES:  Yes, Your Honor.

15          THE COURT:  And, Mr. Samra, I am asking that you

16   immediately reach out to your clients and any experts and use

17   your best efforts to discern whether they are available the 18th

18   and 19th of April and May the 7th and 8th.

19          MR. SAMRA:  I will do that, Your Honor.

20          THE COURT:  So we will hold a follow-up status

21   conference today at 4:00 o'clock.  At which time, I hope that

22   the parties are able to have reached out to their -- I'm sorry.

23   Counsel has been able to reach out to the parties and any

24   experts and give me your understanding of their availability for

25   those dates.

1    As mentioned, you know, you can also confer on allowing a

2    hybrid hearing, meaning, you know, a videoconference hearing as

3    well.  So during COVID, we got fairly adept to those, and,

4    certainly, that is an option for part or all of the hearing, if

5    needed.

6    I'm also going to ask counsel:  Has there been -- you know,

7    part of the Court's order at record entry 44 is to advise the

8    Court -- of course, the Court does not get involved in

9    settlement negotiations but always finds it prudent to inquire,

10   and especially as required by the pretri -- prehearing order at

11   record entry 44, whether the parties have attempted to resolve

12   the pending issue for the preliminary injunction without the

13   Court's involvement.  I also remind you that in the Western

14   District, it's fairly common for the Court to refer the parties

15   to the magistrate judge for a settlement conference.

16   So, first, Mr. Samra, please advise the Court of status of

17   any such discussions, and whether a magistrate judge referral

18   would be helpful at this point.

19   MR. SAMRA:  We had some general discussions about some

20   of the issues, Your Honor.  I can't say that there is a serious

21   prospect of a settlement at this time, but from our standpoint,

22   we have no objection to a magistrate referral.

23   THE COURT:  Is that prior to the preliminary

24   injunction hearing or just as a general matter?

25   MR. SAMRA:  I think both.

1          THE COURT:  Okay.

2          MR. SAMRA:  We have no objection if the Court were to

3    require us to do that previously, particularly since we have a

4    couple dates that we've already blocked off, depending on what

5    the schedule or how the schedule plays out after we have --

6    confer with our part -- our clients, for a magistrate-directed

7    mediation here, but the alternative, again, we have no objection

8    in principle to either.

9          THE COURT:  All right.  And same question, Ms. Whites.

10         MS. WHITES:  Yes, Your Honor.  In fact, we'd already

11   put that in my draft to be filed with the Court that a

12   magistrate judge discussion or mediation would be extremely

13   helpful prior to the hearing.

14     I think these are -- this is a very simple business dispute.

15   I think settlement is imminently possible, and Mohawk, even

16   prior to filing of the suit, strongly suggested that the parties

17   just talk settlement.  So we're definitely open to that.

18         THE COURT:  Let me ask you this, Ms. Whites:  Is that

19   conditioned on the preliminary injunction hearing remaining as

20   scheduled?  Because, of course, I have no idea what the

21   magistrate judge's availability is, you know, either on the

22   current dates that are scheduled for a hearing or what.

23     So maybe before you answer that question, let me ask Mr.

24   Samra this:  Are you suggesting, Mr. Samra, that the motion for

25   preliminary injunction remains pending or that that would be

1   withdrawn subject to refiling it post magistrate judge

2   settlement conference?

3           MR. SAMRA:  Excuse me, Your Honor.  As far as the

4   motion itself, as long as it doesn't obstruct the agreement as

5   between the parties, I think we would be fine refiling it.  You

6   know, considering a motion itself formally withdrawn, the

7   parties' agreement stay in place subject to the discussion, of

8   course, that we had today, that the equipment can be reboxed and

9   things like that.  That, I think, would work, from our

10  standpoint.

11          THE COURT:  Ms. Whites, what about that option, if the

12  petitioner withdrew without prejudice the pending motion for

13  preliminary injunction that the current agreement between the

14  parties remains in place, which I understood is simply an

15  agreement that the respondent would not sell off any more of the

16  machines, and then that the Court refers this to the magistrate

17  judge for a settlement conference?

18          MS. WHITES:  I think that would be very appropriate,

19  yes.  I think my client has -- has wanted to resolve this

20  matter, which both sides have thrown a lot of time and money at

21  something that looks very simple to me, from the outside, so I

22  think that would be wonderful.

23          THE COURT:  Any objection to the Court holding all the

24  pending motions in abeyance or remanding them subject to the

25  results of the settlement conference or -- with the magistrate

1     judge?

2          MS. WHITES:  Not on the part of Mohawk, Your Honor,

3     other than -- well, no.  Not on the part of Mohawk.  We are okay

4     to hold those in abeyance for now.

5          THE COURT:  Did I omit anything, Mr. Samra, concerning

6     your proposed agreement?  You would withdraw the request for a

7     preliminary injunction without prejudice.  The Court would --

8     the parties would continue the agreement between themselves.  I

9     don't have the record entry, but --

10          MS. WHITES:  And, Your Honor, it might be appropriate

11     to the parties to discuss just to make sure we're on the same

12     page with that or that there are any modifications we could make

13     to the agreement.

14          THE COURT:  Uh-huh.  Yeah.  Which, in particular --

15          MS. WHITES:  And we could do that by the -- yes.

16     Yeah.  Also I really don't know much about Bitcoin equipment,

17     but I think there would probably be a significant expense by

18     Mohawk to remove them from the shelves and box them back up.

19     That they are relatively valuable.  You know, 10,000 a piece or

20     something, I'm just guessing, but -- but I think there would be

21     significant expense in putting them back in the boxes.

22      So we prefer that boxing them back up not be part of it.

23     Mohawk will absolutely agree not to sell them while the matter

24     is held in abeyance.

25          THE COURT:  That is certainly something that you and

```
 1    Mr. Samra could discuss in advance of our --

 2             MS. WHITES:  Yes.

 3             THE COURT:  -- 4:00 o'clock telephonic status

 4    conference.  It seems like reasonable parties should be able to

 5    come to an agreement on that issue.

 6        So here's what I'm going to do:  In addition to each counsel

 7    reaching out to your parties and clearing those dates with

 8    parties and experts, I'm going to order that you confer and be

 9    prepared to present to the Court, you know, an agreement that

10    would withdraw the request for the preliminary injunction

11    without prejudice; agree to hold all current pending motions in

12    abeyance or the Court remand them without prejudice; that you

13    come to an agreement on what respondent can or cannot or should

14    do with the machines to make sure that they can continue to

15    operate their business and an agreement to proceed instead with

16    a settlement conference before the magistrate judge.

17        So that -- and, of course, if you reach an agreement before

18    4:00 o'clock, by all means, please file the appropriate filings

19    in the record, and, otherwise, please be prepared to outline

20    specifically what that general agreement is at the 4:00 o'clock

21    call.

22        So let me ask, Mr. Samra:  Do you have any questions so far

23    about what we have outlined as part of this conference?

24             MR. SAMRA:  No, Your Honor.  I think this is all

25    pretty clear.  The only point that I would raise is in
```

1    connection with the part of the framework that you're -- that

2    the Court has outlined related to the abeyance of the pending --

3    or keeping in abeyance the pending of the other motions, and I

4    think that generally that that's fine.

5        The only caveat to that, though, is that there is a pending

6    motion related to the arbitration process that is proceeding in

7    parallel here, and so there -- regarding the substance of the

8    dispute, the contractual dispute between the parties apart from

9    the primary relief that's been sought in this injunction -- with

10   the injunction.

11       So I think that that would be my only exception to the point

12   about keeping the other motions in abeyance, because that

13   process is going forward, and the fact that there is a pending

14   motion before the Court to dismiss the counterclaims and to

15   compel arbitration here is an issue there that's been raised by

16   Mohawk.

17       So we have no objection to keeping all of the other motions

18   that are pending in abeyance with the exception of the motion

19   related to -- I think it's one motion related to the arbitration

20   process in this case, which has -- which has been initiated, and

21   it is going forward, but it's become a point of contention

22   between the parties that there is this motion pending before the

23   Court.

24              THE COURT:  All right.

25              MS. WHITES:  Your Honor --

1          THE COURT:  Respond to that, Ms. Whites.

2          MS. WHITES:  Yes, Your Honor.  Our response was in the

3    briefing that, essentially, they didn't -- HBT didn't strictly

4    remit its request for relief before this Court.  It's a

5    traditional preliminary injunction.  They added a lot of matters

6    that were tangential or even unrelated to the preliminary

7    injunction, and Mohawk responded in kind.

8       It's our argument that really all the issues between the

9    parties are before this Court.  Certainly any settlement before

10   a magistrate judge would resolve all the issues between the

11   parties or has the potential to resolve all the issues.

12      The arbitration forum selected by HBT is extremely expensive

13   and duplicative of what this Court is doing, in large part, so I

14   think all motions should be held in abeyance.  It's a very short

15   timeframe, particularly if we're looking at the 30 days or less

16   that HBT itself asked for, and I think all motions should wait

17   for that.

18      It would be ineffective and possibly a conflict for the

19   parties to have to engage in the same type of discovery and

20   dispute in motion practice in an arbitration proceeding that

21   would be duplicative of what's before this Court.

22      Particularly since one of Mohawk's initial concerns has been

23   we're not at all sure that Mr. Wang is, in fact, HBT, and they

24   have been not -- they have not been able to provide any support

25   for that claim that you can't just get by Googling.  My interns

1   have Googled and found all their documents, which is why we have

2   asked for in discovery some of the documents that might show

3   that -- that he, in fact, does own this equipment and has a

4   right to a claim against Mohawk.  And I'm not sure anything can

5   be resolved until that initial issue is settled.  So I think

6   given the complexity of all these motions, holding them all in

7   abeyance would be best.

8          THE COURT:  Mr. Samra, it sounds like Ms. Whites is

9   willing to hold all motions in abeyance.  What -- is there a

10   particular issue or concern with that, and what would you see as

11   the scope of the magistrate judge settlement conference?  Would

12   it simply be to resolve the preliminar -- try to find an

13   agreement on the preliminary injunction hearing or broader?

14          MR. SAMRA:  And, Your Honor, I think the latter.  It

15   would really be related to what is before the Court, which is

16   the preliminary injunction issue, if there is any agreement that

17   can be reached on that point.

18      The arbitration was filed either very close in time or at

19   the same time as the -- as the preliminary injunction.  I don't

20   recall exactly.  It was -- it was sometime after the initial

21   complaint for preliminary injunction, I believe, or for

22   injunctive relief in this case, but that is proceeding.

23      And so, from our standpoint, if, you know, Ms. Whites and

24   Mohawk had raised the issue that this is pending, this motion is

25   pending, and it really relates to their involvement in that

1    case.  They have been noticed.  They are receiving all of the

2    arbitration filings, and it wasn't that we selected it, it's

3    that the parties' contract calls for it.

4        So we are proceeding -- in fact, the basis of

5    jurisdiction -- the jurisdictional basis in the federal case is

6    that the arbitration is pending in the district where the relief

7    is being sought -- the injunctive relief is being sought.  So

8    the whole litigation process that's occurring here in parallel

9    for injunctive relief is premised on the -- on the arbitration

10   itself.

11       So from our standpoint, the process before the magistrate

12   should be narrowly tailored to the issues that are before the

13   federal district court.  And as far as the question of whether

14   all of the motions should be held in abeyance, it's really -- it

15   really relates more to the fact that Mohawk has raised the

16   pendency of the motions related to the arbitration as a -- as an

17   argument for, you know, delay of the arbitration proceeding,

18   which has now been pending, I think, for about six months.

19       So we would continue to push forward with that, and it would

20   relate more to, you know, the position that Mohawk -- Mohawk has

21   adopted there.

22       So, in principle, if the Court prefers to hold everything in

23   abeyance, I think that that would be fine.  It would maintain

24   sort of -- although Mohawk would continue to assert the -- I

25   presume that Mohawk would continue to assert the pendency of the

1   motion as a basis for delaying the arbitration proceeding, which

2   is going forward.

3        THE COURT:  Again, I understand your arguments, but --

4   but my question is that they're willing to hold that motion in

5   abeyance.  The Court's not ruling -- would not be ruling on that

6   motion.  So there's no chance that it would delay your

7   arbitration proceeding.

8        I have no control over the arbitration proceeding, and,

9   certainly, it appears that the parties have agreed to arbitrate

10   any issues that are not a preliminary injunction -- other than a

11   preliminary injunction hearing.  That was carved out.  So is

12   there an objection by the petitioner if Ms. Whites agrees to

13   hold that motion in abeyance?

14        MR. SAMRA:  I think from our standpoint, Your Honor, I

15   think right now, Mohawk has refused to participate in the

16   arbitration process, but it is going forward, and the Court is

17   correct that there is no order, you know, in any way, you know,

18   of -- or there is an order immediately stopping the arbitration.

19        So from our standpoint, we can proceed, you know, with an

20   abeyance generally if the Court prefers to hold everything in

21   abeyance.

22        THE COURT:  Ms. Whites, any other issues with respect

23   to the arbitration or the -- you know, what the petitioner is

24   proposing as the scope of the magistrate judge's settlement,

25   which would be narrowed to the issue of the preliminary

 1  injunction?

 2          MS. WHITES:  Mohawk has no objection to a narrow

 3  arbitration or mediation before the magistrate judge.

 4  Obviously, the hope would be that, since everything's related,

 5  we could resolve it all in one day, but we're open to any

 6  settlement negotiations at all and have been since day one.

 7          THE COURT:  All right.  And open to the Court holding

 8  it in abeyance --

 9          MS. WHITES:  Yes, Your Honor.

10          THE COURT:  -- or the --

11          MS. WHITES:  All the motions.

12          THE COURT:  -- arbitration motion?  Okay.

13          MS. WHITES:  Yes, Your Honor.

14          THE COURT:  All right.  Then anything further, Mr.

15  Samra?

16          MR. SAMRA:  Nothing further from -- from us, Your

17  Honor.

18          THE COURT:  Ms. Whites?

19          MS. WHITES:  No, Your Honor.  Thank you.

20          THE COURT:  All right.  I'm going to order counsel to

21  confer on these issues.  In particular, the scheduling, reaching

22  out to your clients and your experts related to the preliminary

23  injunction hearing scheduling and proposed dates in the event

24  that we do hold that and do not remand it in light of a

25  magistrate judge settlement conference.

1    Also confer and be ready to outline for the Court an

2    agreement that touches on the other issues we have discussed,

3    which would include a withdrawal of the request for a

4    preliminary injunction until -- without prejudice with leave to

5    refile.  If the magistrate judge settlement conference is

6    unsuccessful, the -- addressing the current agreement between

7    the parties, and, in particular, you know, anything related to

8    the machines and where they can be moved or the repackaging of

9    them; the, of course, referral to the magistrate judge for a

10    settlement conference, and the holding of the current motions in

11    abayment -- abeyance or remanding them with potential leave to

12    refile.

13    So those are the issues I'm ordering you to confer on.  Try

14    to reach an agreement, and then we will resume this status

15    conference at 4:00 p.m. today.  So anything else, Mr. Samra?

16    MR. SAMRA:  Nothing further, Your Honor.  Thank you.

17    THE COURT:  Ms. Whites?

18    MS. WHITES:  No, Your Honor.  Thank you.

19    THE COURT:  All right.  We'll be off the record, and

20    we'll resume at 4:00 p.m.  Thank you.

21    (Proceedings concluded at 11:07 a.m.)

22    C E R T I F I C A T E

23    I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM

24    THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

25    _____s/Rebecca S. Boyd_____    May 6, 2024___
    Official Court Reporter        Date