**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**AT LOUISVILLE**

| | | |
|---|---|---|
| **HBTPOWER LIMITED** | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | **Case No. 3:23-cv-00628-CHB** |
| v. | ) | |
| | ) | |
| **MOHAWK ENERGY, LLC** | ) | |
| | ) | |
| *Defendant.* | ) | |

**MOHAWK ENERGY'S MOTION FOR PROTECTIVE ORDER REGARDING THE
DEPOSITION REQUESTED BY PLAINTIFF**

\*\*\*\*

Comes the Defendant, Mohawk Energy, LLC, ("Mohawk") by counsel, and moves this

Court for a PROTECTIVE ORDER regarding the deposition notice filed by Plaintiff HBTPower

Limited requesting the deposition of Brandon Smith, Managing Member for Defendant. R.62

Time is of the essence as the deposition is set for July 16, 2024.

Counsel for Mohawk recently found out disturbing information about the ongoing fishing

expeditions being conducted by HBTPower.  A minority shareholder in Mohawk called counsel

in a panic stating that he was being contacted by Mr. Samra repeatedly, on a cell phone, and

asked many questions about confidential and proprietary business information.  Mohawk's

minority shareholder felt pressured and answered some of the questions because he did not know

that Mr. Samra was not authorized by the Court to question him and did not understand that he

was **opposing counsel** in this matter.

1

Apparently counsel for HBTPower went so far as to discuss a proposal that Mr. Wang secretly buy the shareholder's interest in Mohawk.  Mr. Samra asked the shareholder to come in to "local counsel's" office in Lexington and provide an interview without Mohawk counsel's knowledge or presence. When the shareholder objected, Mr. Samra threatened him with a deposition and said the notice of deposition was being sent because of this refusal.

Promptly upon discovering these facts, the undersigned immediately contacted local counsel (Gene Vance) and stated that Samra's apparently inappropriate behavior must immediately stop and should be promptly addressed by local counsel.  Mr. Vance admitted in emails between counsel that the Plaintiff had already conducted multiple such communications in secret with Mohawk's minority shareholder, who did not have the experience or expertise to know that this was not court-sanctioned behavior by an opposing counsel.

Both Plaintiff and its counsel knew that the shareholder was represented by the undersigned. Mr. Wang's prior Kentucky counsel were notified in writing to avoid such communications with Mr. Rick Cole, the shareholder, in 2023.  Those letters are or should be contained in the file held by current counsel. Counsel for Mr. Wang and Plaintiff herein were therefore, at all times, fully aware that they were engaging in improper behaviors when they reached out to a represented party and asked questions about confidential and proprietary information, or tried to buy that party's shares.

Until Mohawk can discover the full content of these repeated improper contacts with Mr. Cole and can determine what proprietary or confidential information may have been revealed by the frightened and intimidated individual, no depositions of any Mohawk representative should occur.  Mohawk's counsel is trying to ascertain what the improper interrogations consisted of,

but as the shareholder neither reads nor writes well, and was upset during the calls, this is proving difficult.

The full extent of this intentional and improper meddling with a potential witness must be disclosed by opposing counsel as an initial matter. A Disclosure Log requesting that counsel for Plaintiff identify time, date and subjects of the improper communications is submitted herewith. Upon review of opposing counsel's disclosures, this Court may wish to address whether Mr. Samra is appropriately involved in this matter in a pro hac vice capacity moving forward. Until the extent of the intimidation and unlawful extraction of confidential information can be determined, no deposition of Mohawk personnel should take place.  Mohawk may well have been compromised by the secret interrogation of its shareholder and should be able to determine the information inappropriately obtained and the effect of that on the case before having to put its President under oath.

Further, as this Court is aware, there still is the unresolved question of whether the party Plaintiff  is even the party who contracted with Mohawk Energy.  Allowing the Plaintiff to engage in a fishing expedition prior to that determination exposes Mohawk to risk of disclosure of confidential business information to a stranger to the contract.  This is even more serious as Mr. Wang, the alleged "representative" of Plaintiff, works in the same field as Mohawk and is most likely employed by or working for a competitor.

The parties are engaged in multiple simultaneous proceedings, all filed by HBTPower. HBTPower demanded injunctive relief from this Court and at the same time, requested binding arbitration on the same issues – that being the parties' work pursuant to a contract – in JAMS, an arbitration organization.  The JAMS proceeding is moving forward, with a scheduling order entered, a hearing date set and discovery in progress.

HBTPower filed its request for injunctive relief more than six (6) months ago.  It has engaged in multiple delays in engaging in any hearing on that issue and continues to obfuscate with regard to the relief it requests, refuses to provide any proof of ownership of any of the business equipment and fixtures in the Mohawk building that it is asking this Court to force Mohawk to continue to store and expend funds on protecting, and fails to provide any response to basic "who is the plaintiff" questions. This is, as admitted by HBTPower's counsel, primarily because neither the "representative" for HBTPower nor counsel before this Court has access to or control of the essential evidence in this matter.

HBTPower's sole alleged representative in this matter is an ex-employee of HBTPower/Huobi, the foreign entity which entered the initial agreement with Mohawk Energy. The representative Yangping Wang was terminated by HBTPower and its sole owner Huobi a year ago.  Shortly thereafter, Huobi divested itself of HBTPower and notified Mohawk that it would not be able to fulfill the agreement.

HBTPower's owners, officers, directors or employees are in foreign counties and have declined to appear or participate in the matter.  HBTPower claims that it is now owned by Avenir, which has similarly declined to appear in this matter.  After weeks of trying and despite assurances to the Magistrate that they would do so, counsel for Plaintiff has not even been able to successfully get Avenir's general counsel (which HBTPower claims is also HBTPower's general counsel) on the phone with Mohawk. Interestingly, the "general counsel" claimed by Plaintiff is not listed on any Avenir website, does not show Avenir on her Linkedin or other social media pages, and is not registered with the Hong Kong Law Society (similar to the Kentucky Bar Association here).  Furthermore, HBTPower has no website, no Linkedin and does not reflect any "general counsel" on any informational page.

4

Counsel for HBTPower, despite asserting that it represents Avenir and HBTPower in this matter, has been unable to provide this Court or opposing counsel with any communication from Avenir affirming that claim. In Hong Kong, any business operating in that country is required to have a "general counsel" which is not a general counsel as that term is used in America, but is similar to CT Corporation in America, and is merely an agent for service of process. Until that alleged general counsel meets with Mohawk, it will be impossible to determine whether this individual is simply an agent for service of process or is actually counsel for Avenir or counsel for HBTPower with knowledge of the matters in this case and the authority to affirm Mr. Wang as a delegate named by the Board of Directors of the corporation.

HBTPower is currently more than a million dollars in debt to Mohawk for unpaid labor and host/storage fees and is more than a year in breach of the eight year Mohawk contract, which was for millions of dollars to be paid to Mohawk per year. Additionally, HBTPower's owner divested itself of HBTPower a year ago in violation of the parties' initial agreement, and the entity has been sold multiple times since that date, as reflected in documents both parties have filed with this Court.

To date, HBTPower has been unable to provide any of the following information:

- An inventory of the equipment it claims it owns on the Mohawk site
- Proof of purchase of any of the bitcoin mining machines on the site
- Proof of ownership of any of the bitcoin mining machines on site
- Proof of shipping the bitcoin mining machines into the US
- Proof of payment of any of the funds it claims it paid to Mohawk
- A cover letter for any of the "declarations" it filed with this Court, showing that those were in fact sent to an identifiable company in Hong Kong or elsewhere for signature by an actual officer
- Proof of payment of Kentucky or US taxes on the equipment it claims it owns in this state
- Proof of insurance of any of the equipment it owns in this state
- Any contact at all from an officer, director, counsel or employee of Avenir or HBTPower

The demand for a deposition of Mohawk's President is simply a fishing expedition so that Plaintiff can attempt to get some evidence to support its knowledge of the mining machines, equipment or operations on the Mohawk Energy site, or other facts to use to support the pending motion before this Court.

[CITE] HBTPower should have been ready to submit evidence and defend its position when it filed for injunctive relief.  It still has no basis for that demand, as the matter is a simple breach of contract action with money damages claimed by both sides.  HBTPower's purpose in taking the deposition is to try to find facts supporting its claim.  It's secondary purpose is to try to obtain evidence, far in advance of the already scheduled discovery dates in the JAMS matter, to gain an advantage in that case.

The Magistrate Judge permitted only narrow discovery expressly related to the demand for injunctive relief.  Breaching that requirement, HBTPower made voluminous discovery requests for what is essentially the entire available evidence in the case.  It is expected that similarly overbroad questions will be asked in the discovery deposition and that this Court would be called in repeatedly during that process to address those concerns.  Further, the parties are in discussion as to the overbreadth of the discovery questions.  Deposing the witness is merely an attempt to bypass the objections of counsel and obtain information which is otherwise either still under review for inadmissibility or is confidential and proprietary business information.

Since HBTPower cannot even "find" the 30+ recorded weekly zoom meetings between HBTPower/Huobi or any information on sourcing, purchasing, shipping, or installing the equipment the injunction relates to, it also may be using the deposition in order to learn information which it will then pass off as its own original knowledge in the JAMS matter.  The

Plaintiff has the burden of proof and thus far has been entirely unable to provide even a scintilla of relevant evidence or support for the veracity of the "declarations" it has filed.

Brandon Smith will be the primary Mohawk witness at the hearing.  He was the primary individual interacting with HBTPower at all times relevant to the parties' work together. HBTPower, Huobi and its employees were integrally involved in the day-to-day work at the site and already know what occurred there during the entirety of the contractual period until HBTPower abandoned the site.  There is no need to depose the witness, in advance of the hearing, regarding matters about which both parties should be fully informed.  The fact that the Plaintiff does not already have that information is blatant evidence that they are not prepared for the hearing and are not entitled to injunctive relief.

That portion of the case which relates to injunctive relief is clear and based on written documents, including the expert reports and the initial agreement between the parties. Additional factual information, if any, can be obtained at the brief hearing this Court has agreed to conduct, while the Court is there to ensure that the matter stays focused and that all information sought is relevant.

A federal court may, "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . requiring that a trade secret or other confidential research, development, or commercial information may not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)G).  Courts find that good cause exists when the party moving for a protective order argues specific facts showing that clearly defined and serious injury may result from the discovery sought.  *Nix v. Sword,* 11 F.App'x 498, 500 (6th Cir. 2001).  Kentucky law provides that "Like most of the myriad other matters a trial court is called upon to decide during the course of proceedings, . . . motions

to quash subpoenas are subject to the trial court's sound discretion and will be reversed on appeal

only for abuse of that discretion." *Commonwealth v. House,* 295 SW3d 825, 828 (Ky. 2009).

Similarly, under the Kentucky Rules of Civil Procedure 26.03 a Court may issue discovery

orders and appropriate protective orders.

Mohawk requests that this Court issue a protective order barring any depositions of

officers or shareholders or directors of the company until after the hearing in this matter. As the

Magistrate Judge permitted, limited depositions can be taken of experts or others not able to be

physically present at the hearing.

Respectfully submitted,

Anna Stewart Whites
ANNA WHITES LAW OFFICE PLLC
327 Logan Street
Frankfort KY 40601
(502) 352-2373 (office)
 **Annawhites@aol.com**
*Attorney for Defendant Mohawk Energy, LLC*

CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of
the foregoing was this day served via the
court's electronic filing system upon:

Palmer G. Vance
Lindsey H. Meares
STOLL KEENON OGDEN PLLC
300 West Vine Street, Suite 2100
Lexington, Kentucky 40507-1380

Harout J. Samra
DLA PIPER LLP (US)
200 South Biscayne Boulevard, Suite 2500

9

Miami, Florida 33131

This the 3rd day of July, 2024.

Anna Stewart Whites