**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE**

| | |
|---|---|
| **HBTPOWER LIMITED,** | CASE NO.: 3:23-cv-628-CHB |
| Plaintiff, | JUDGE: Claria Horn Boom |
| vs. | |
| **MOHAWK ENERGY, LLC,** | **RESPONSE OF HBTPOWER LIMITED IN OPPOSITION TO MOHAWK ENERGY, LLC'S MOTION FOR PROTECTIVE ORDER REGARDING THE DEPOSITION REQUESTED BY PLAINTIFF** |
| Defendant. | |

Plaintiff, HBTPower Limited ("HBTPower"), through undersigned counsel, tenders this Response in Opposition to the Motion for Protective Order Regarding the Deposition Requested by Plaintiff (DN 66) ("Motion") filed by Defendant Mohawk Energy, LLC ("Mohawk") (together with HBTPower, the "Parties").

## I.   INTRODUCTION

The Motion is another attempt by Mohawk to needlessly complicate this case and ruin any chances of a potential resolution. It fails to set forth the applicable standard, and instead attacks HBTPower and its counsel in a bid to avoid discovery that could otherwise reveal relevant information. Moreover, none of the alleged "facts" in the Motion are supported by citations to the record or any supporting documents. Moreover, the protection that Mohawk seeks in the Motion for Mr. Smith is not available under federal law. HBTPower is entitled to depose Mr. Smith for information relevant to HBTPower's Verified Complaint for Temporary Restraining Order and Permanent Injunctive Relief (DN 1) ("Verified Complaint"). For the reasons articulated below, the Court should deny this Motion.

- 1 -

## II.  BACKGROUND

The dispute between the Parties arises from Mohawk's breach of the Parties' Operation Right License Agreement, dated May 31, 2022 (the "License Agreement"), pursuant to which Mohawk was going to transform 1004 Gateway Industrial Park, Jenkins, Kentucky 41537 (the "Premises") into a Bitcoin mining facility for HBTPower (as the licensee) to run and operate Bitcoin mining activities. (*S*ee DN 1-1.)

Per the License Agreement, HBTPower delivered 2,059 "M Series Miners" and 2,276 "S Series Miners" to the Premises. (DN 1 at ¶¶ 27, 30.) In total, HBTPower delivered 4,335 M-Series Machines and S-Series Machines (collectively, the "Mining Machines") to the Premises, which conformed with the Parties' License Agreement. (*Id*. at ¶ 31.) To date, HBTPower has paid more than $12,000,000 in rent, labor, deposits for electricity charges and staffing fees, and advances for construction and equipment. (*Id*. at ¶ 26.)

HBTPower then learned of Mohawk's breaches of the License Agreement. *First*, HBTPower learned that Mohawk did not own the Premises, despite Mohawk's representation in the License Agreement that it had a fee simple absolute estate in the Premises. (DN 1-1 at § 24(a)(v).) *Second*, HBTPower learned that Mohawk did not have a contract in place with the power supply company that would provide the power consumption rates, nor had Mohawk installed the appropriate power supply infrastructure to host Bitcoin mining activities, despite representations to the contrary when it entered into the License Agreement. (*Id.* at § 3(a)(iv).) *Third*, Mohawk failed to provide proforma invoices to HBTPower to account for equipment it has purchased on behalf of HBTPower. (*Id.* at § 4(c).) Above all Mohawk did not transform the Premises to make it suitable for Bitcoin mining activities as required under the License Agreement. (*Id.* at §§ 3(a), (b).)

When HBTPower asked Mohawk to comply and remedy its breaches, Mohawk removed

HBTPower and its staff from the Premises on October 11, 2023, on the pretext of non-payment of rent and labor charges. (DN 1 at ¶ 35.) In response to a cease and desist letter sent to Mohawk in November 2023, wherein HBTPower demanded that Mohawk not encumber or dispose of the Mining Machines, Mohawk sold the M Series Miners to a third party. (*Compare* DN 1 at ¶ 39-40 with DN 14 at ¶¶ 42 and 49, and DN 37-3.)

In its Answer and Counterclaim, Mohawk admitted to the delivery of the Mining Machines and stated that it "will conduct an inventory promptly to confirm" the number of Machines currently at the Premises. (DN 14 at ¶ 29.) After HBTPower filed its Motion for Temporary Restraining Order (DN 16) ("TRO Motion"), the Parties submitted a Joint Status Report to this Court on December 8, 2023 (DN 21), in which Mohawk promised, among other things, that "it will not sell, dispose, encumber, assign, use or in any manner compromise the mining machines that were delivered at [the Premises] by HBTPower and are stored thereon" and "will allow HBTPower access to the security cameras at the Premises which allow a view of the interior of the Premises showing the mining machines and electricity equipment that remain on the Premise." (*See* DN 21-1.) However, since HBTPower asked Mohawk to comply with its undertakings, Mohawk has alleged inexplicably that HBTPower is not the real party in this case. (*See generally* DN 32-1.)

In view of the Verified Complaint, and HBTPower's Motion for Preliminary Injunction (DN 23), the Parties have engaged in multiple meet and confer meetings concerning discovery on the very limited scope of preliminary injunction, as per the Court's instructions and those of the Magistrate Judge. HBTPower has agreed to provide information that it has in its possession. Mohawk, on the other hand, has failed to sign the ESI protocol and has refused to provide any information relevant to the injunction sought by HBTPower.

Thus far, Mohawk has not complied with any of its statements made to the Court regarding inventory and camera access. HBTPower has no insight into the Mining Machines and equipment at the Premises. HBTPower is well within its right to depose Mr. Smith to ascertain the continued existence of the Mining Machines and to support HBTPower's Motion for Preliminary Injunction, including by establishing HBTPower's likelihood of success on the merits.

## III.  ARGUMENT

According to Mohawk, Brandon Smith's deposition is "a fishing expedition" which "exposes Mohawk to risk of disclosure of confidential business information to a stranger to the contract." (Motion (DN 66) at 3).

As explained below, HBTPower **is a party to the License Agreement** and, as a party to this dispute, is entitled to Smith's deposition relevant to HBTPower's claims, especially since Mohawk has refused to meaningfully engage in discovery and comply with Court's orders. Mohawk has not pleaded a single legal ground that merits a protective order. Mohawk has also cited Kentucky state law on discovery, which is not applicable to this federal case. The Court must deny the Motion because HBTPower is the real party in interest and is entitled to discovery in this case.

### A.  Mohawk has failed to meet its burden for seeking a protective order

Federal Rules of Civil Procedure ("Rule") 26(b) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." "When faced with questions over, or disputes about, what information or documents may be obtained based on their relevancy, it is axiomatic that the trial court is afforded broad discretion to determine the boundaries of inquiry." *Janko Enters. v. Long John Silver's, Inc.*, No. 3:12-cv-345-S, 2013 WL 5308802, at *2 (W.D. Ky. Aug. 19, 2013) (citing

*Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981)).

Rule 26(c)(1) allows a Court to issue a protective order for good cause to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Good cause requires the moving party to "articulate specific facts showing 'clearly defined and serious injury' resulting from the discovery sought." *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001) (citing *Avirgan v. Hull*, 118 F.R.D. 252, 254 (D.D.C. 1987)). The Sixth Circuit has endorsed the view that "to justify a protective order, one of Rule 26(c)(1)'s enumerated harms must be illustrated with a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Serrano v. Cintas Corp.*, 699 F.3d 884, 901 (6th Cir. 2012)(internal quotation marks removed). The party seeking the protective order "bears the burden to show good cause for the issuance of such an order." *Green v. Platinum Restaurants Mid-Am., LLC*, No. 3:14 Civ. 439, 2017 WL 11682937, at *4 (W.D. Ky. Oct. 24, 2017); *see also Nix v. Sword*, 11 Fed. Appx. 498, 500 (6th Cir. May 24, 2011) ("The burden of establishing good cause for a protective order rests with the movant.").

Requests to prevent depositions are "contrary to the basic policy in favor of broad discovery," so there is a heavy burden "to make a strong, factually specific showing why discovery should be denied." *Green*, 2017 WL 11682937 at *10; *Bailey v. Kentucky Cmty.*, No. 5:14 Civ. 143, 2015 WL 4886089, at *2 (W.D. Ky. Aug. 17, 2015) (noting that courts "regard unfavorably motions seeking to prevent depositions and should rarely grant such motions 'absent extraordinary circumstances'"); *Doe 1 v. Orchard Lake Sch.*, No. CV 20-13287, 2021 WL 5711101, at *2 (E.D. Mich. Dec. 2, 2021).

HBTPower can "obtain discovery regarding any nonprivileged matter that is relevant to [its] claim" and "proportional to the needs of the case." FRCP 26(b). Despite that, Mohawk states

that "[d]eposing the witness is merely an attempt to bypass the objections of counsel and obtain information which is otherwise either still under review for inadmissibility or is confidential and proprietary business information." (*See* Motion (DN 66) at 6.) Mohawk further states that,

> HBTPower's purpose in taking the deposition is to try to find facts supporting its claim. It[s] secondary purpose is to try to obtain evidence, far in advance of the already scheduled discovery dates in the JAMS matter, to gain an advantage in that case[.] The Magistrate Judge permitted only narrow discovery expressly related to the demand for injunctive relief. Breaching that requirement, HBTPower made voluminous discovery requests for what is essentially the entire available evidence in the case. It is expected that similarly overbroad questions will be asked in the discovery deposition and that this Court would be called in repeatedly during that process to address those concerns.

(*Id.*) Mohawk does not specify the "information" that it seeks to protect or why any of it is deserving of legal protection. Rather, Mohawk simply deems the deposition notice "a fishing expedition." (*Id*. at 6.) Mohawk does nothing to "articulate specific facts" regarding discovery and the proposed deposition or to show "clearly defined and serious injury" resulting from the discovery sought. Mohawk must satisfy these requirements before seeking a protective order. *See Nix*, 11 Fed. Appx. at 500*.* The Motion does not contain a single citation to the record and Mohawk did not file a single document to support any of its statements. There is no "specific demonstration of fact" which must be made, and the entire Motion includes "conclusory statements" without any proof. *See Serrano*, 699 F.3d at 901.

### B. The Motion contains irrelevant and unsubstantiated allegations regarding HBTPower and contact made with Rick Cole

In addition to the foregoing, Mohawk makes numerous allegations that are wholly irrelevant to the Motion, including claims that HBTPower is somehow a "stranger" to the contract and a standing refusal to deal with HBTPower's authorized representative in this case. More recently, Mohawk has alleged that HBTPower's counsel has contacted Rick Cole, a former

- 6 -

shareholder of Mohawk who initiated contact with HBTPower's counsel on his own accord and expressly told HBTPower's counsel that he was both unrepresented and no longer affiliated with Mohawk. Mohawk's counsel now claims to represent Rick Cole, despite acting as counsel for a party adverse to Rick Cole in another action.

### 1. Mohawk's spurious allegations concerning contact with Rick Cole

Mohawk has asserted wholly unfounded allegations regarding communications between counsel and Rick Cole, who Mohawk's counsel, Attorney Anna Whites, now conveniently claims is a "minority shareholder," contrary to Mohawk's prior assertions to this Court. (Motion (DN 66) at 1). Mohawk's allegations are untrue. Indeed, in filings with this Court, Mohawk has stated that Mr. Cole was a "**former Mohawk member, Rick Cole**." (*See* DN 34 at 15) (emphasis supplied).

On January 9, 2024, Mr. Cole himself reached out to HBTPower's Kentucky-based counsel, without any prompting by HBTPower's counsel, and voiced concerns about Mohawk, Attorney Whites, Brandon Smith, and Mr. Smith's plan to defraud HBTPower. Mr. Cole specifically stated in his conversation with HBTPower's counsel that he was not represented by an attorney. Moreover, in pending litigation before the Fayette Circuit Court, Mr. Cole sued BioFuel Mining, Inc., a company in which Brandon Smith is a member/director, for breach of contract regarding the lease and sale of the Premises. *Rick Cole, et al vs. BioFuel Mining, Inc., et al.*, Fayette Circuit Court, Civil Action No. 22-CI-00019 (the "Fayette Circuit Action"). Attorney Whites is serving as counsel for BioFuel Mining, Inc. in the Fayette Circuit Action initiated by Mr. Cole against Attorney Whites' client. A screengrab from the case docket showing Ms. Whites as counsel for BioFuel Mining, Inc. and directly adverse to Mr. Cole in the Fayette Circuit Action is attached hereto as Exhibit A. The complaint filed by Mr. Cole in the Fayette Circuit Action indicates that the Premises was under contract until February of 2023, despite that Mohawk

warranted to HBTPower on May 31, 2022 that it had a "fee simple absolute" title in the Premises. A copy of the complaint filed by Mr. Cole against Attorney Whites' client in the Fayette Circuit Action is attached hereto as Exhibit B.

After Attorney Whites accused the undersigned of contacting "her" client, Mr. Cole, the undersigned asked Attorney Whites for proof of her representation of Mr. Cole by July 10, 2024. No such proof has ever been provided to the undersigned. Regardless, however, the undersigned has not spoken with Mr. Cole since Attorney Whites claimed she represented him. Nevertheless, for the reasons mentioned above, HBTPower doubts whether Mr. Cole is represented by Attorney Whites.

### 2. HBTPower is the party to the contract.

Mohawk has continuously advanced an unexplained theory that Plaintiff is "a stranger to the contract." This is belied by the License Agreement, which notes HBTPower as the contracting party. (DN 1-1 at Recitals.) HBTPower also has provided extensive information on this point in its submissions to the Court, including sworn declarations and documents confirming HBTPower's identity. Specifically, the Verified Complaint, along with a number of other documents submitted in this action, outlines HBTPower's operational and ownership structure. (*See* DN 1-1 at Recitals; DN 3; DN 23-2; DN 23-3; DN 36-1; DN 36-2.) HBTPower is now directly owned by the group's ultimate parent company Avenir Cayman Holdings Limited ("Avenir"). (DN 36-2, ¶ 2.) When the License Agreement was executed, HBTPower was controlled by Huobi Technology Holdings Limited ("Huobi"). (DN 1-1.) Huobi changed its name to "New Huo Digital Limited" and then to Sinohope Technology Holdings Limited ("Sinohope Technology"). As a company listed on the Stock Exchange of Hong Kong Limited ("SEHK"), with stock code 1611, Sinohope Technology's announcements are published on SEHK's website from time to time, including those announcing

its change of name from Huobi to Sinohope Technology. (DN 30-1.)

At the time of filing of the Verified Complaint, HBTPower was owned by Sinohope Digital Services Limited ("Sinohope Digital") and Mcore Limited ("Mcore"). (DN 1 at ¶ 1.) Sinohope Digital is owned by Sinohope Technology, the entity initially controlling HBTPower. DN 3. Both MCore and Sinohope Technology are owned by Avenir. (DN 36-3.) On January 11, 2024, after a series of restructuring within the Avenir group, Avenir took direct ownership and control of HBTPower instead of controlling it through its subsidiaries, including Huobi. (*See* DN 36-3.) Mohawk has even participated in a video conference with Scarlett Chen, General Counsel of Avenir, during which she confirmed the veracity of the preceding information and HBTPower's decision to authorize Mr. Yangping Wang to serve as its representative. Mohawks' outright refusal to acknowledge the corporate structure of HBTPower's parent company has now become its leading excuse to derail any resolution of this dispute.

### 3. Mohawk again presents unfounded allegations against Mr. Yangping Wang.

Mohawk states that "HBTPower's sole alleged representative in this matter is an ex-employee of HBTPower/Huobi, the foreign entity which entered the initial agreement with Mohawk Energy. The representative Yangping Wang was terminated by HBTPower and its sole owner Huobi a year ago." (Motion at 4.) Again, Mohawk fails to cite to the record in support of any these statements and does not file any supporting document.

Mr. Yangping Wang (as general manager) signed the License Agreement alongside Mr. Zhuo Wang (as director) on behalf of HBTPower. Mr. Smith signed on behalf of Mohawk. (DN 1-1 at ¶ 37.) The only thing in respect of HBTPower that changed internally was that Mr. Yangping Wang is now working as an outside expert. (DN 23-2; DN 23-3.) Given his knowledge of the

transaction and extensive dealings with Mr. Smith, Mr. Yangping Wang still carries HBTPower's authority to represent the entity's interest. This authority was given by Mr. Zhuo Wang. (DN 23-3, Ex. A.) Mr. Zhuo Wang has himself filed a declaration to this effect. (DN 36-1.)

Again, that should have been the end of the inquiry about Mr. Yangping Wang's authority, but Mohawk has refused to acknowledge the record. Mohawk has cited no legal basis whatsoever for the grant for a protective order. It has simply attempted to ride on its fanciful theories, not for protection against any of the harms enumerated in Rule 26(c)1, but to prevent resolution. As such the Motion should be denied.

## IV. CONCLUSION

Mohawk has utterly failed to demonstrate any basis for the protective order it seeks in the Motion. HBTPower respectfully requests that this Court deny the Motion.

Respectfully submitted,

STOLL KEENON OGDEN PLLC
300 West Vine Street, Suite 2100
Lexington, Kentucky 40507-1380
(859) 231-3000
(859) 253-1093 facsimile

By:  /s/ *Lindsey H. Meares*
　　　Palmer G. Vance II
　　　Lindsey H. Meares

and

Harout J. Samra
DLA PIPER LLP (US)
200 South Biscayne Boulevard, Suite 2500
Miami, Florida 33131
Telephone: (305) 423-8500
Facsimile: (305) 437-8131
Florida Bar No. 70523
Harout.Samra@us.dlapiper.com

Admitted *pro hac vice*

COUNSEL FOR PLAINTIFF,
HBTPOWER LIMITED

## CERTIFICATE OF SERVICE

I certify that on July 24, 2024, I served the foregoing via CM/ECF, which will send all parties of record a notice of electronic filing, including the following:

Anna Stewart Whites
Anna Whites Law Office
327 Logan Street
P.O. Box 4023
Frankfort, KY 40601
E: annawhites@aol.com
COUNSEL FOR DEFENDANT,
MOHAWK ENERGY, LLC

　　　　　　　　　　　　　　　　　/s/ *Lindsey H. Meares*
　　　　　　　　　　　　　　　　　*Counsel for Plaintiff,*
　　　　　　　　　　　　　　　　　*HBTPower Limited*

- 1 -