ORIGINAL DOCUMENT
02:18:36 PM

NOT
05/20/2024
88890-57

COMMONWEALTH OF KENTUCKY
22nd JUDICIAL CIRCUIT
FAYETTE CIRCUIT COURT
DIV _____
CASE NO. 22-CI-_____

RICK COLE and

CHAD COLE                                                            PLAINTIFFS,


VS              **COMPLAINT, DEMAND FOR JUDGMENT**
                       **and PRAYER FOR RELIEF**


WESLEY HAMILTON
(personally & as agent for BIOFUEL MINING INC)

BIOFUEL MININNG INC.                                                 DEFENDANTS.

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

Plaintiff states the following allegations for their complaint against the defendants.

**JURISDICTION & VENUE:**

1. Plaintiffs are residents of the Commonwealth of Kentucky (and have been for at least 180 days prior to the filing of this complaint) with a physical business address of 466 S. 4th St. Danville 40422, Boyle County Kentucky.

2. Defendant Wesley Hamilton is a resident of Fayette County Kentucky, with an address for service at 1213 Brickhouse Ln. Lexington KY 40509

Page **1** of **4**

Cole V Hamilton et. al.

Presiding Judge: HON. JULIE M. GOODMAN (622397)

COM : 000001 of 000018

NOT ORIGINAL DOCUMENT
05/20/2024 02:18:36 PM
88890-57

3. Defendant Biofuel Mining Inc is Kentucky Corporation with its Principal place of business located at 900 Middlefork Wolf Creek Road Debord, KY 41224

4. The Registered agent for Biofuel Mining Inc is Hon Anna Whites, 327 Logan St. Frankfort, KY 40601.

5. The property for which this contract was executed is located in Letcher County KY with an address of 1004 Gateway Industrial Rd. Jenkins, KY 41537

6. This court has the proper jurisdiction to hear this matter.

### CLAIM BREACH OF CONTRACT

7. On February 11, 2022, the parties executed the attached lease with purchase option.

8. In order for there to be a contract 4 elements must be present.

    a. **An Offer,** on February 11, 2022, Plaintiffs presented Defendants with an offer to lease and purchase the structure & land located at 1004 Gateway Industrial Rd. Jenkins, KY 41537 (see attached Exhibit A)

    b. **An Acceptance,** on February 11, 2022, Defendants accepted Plaintiff's offer. (see attached exhibit A executed by the parties)

    c. **Consideration,** Defendants agreed to pay Plaintiffs $250,000.00 for the option to purchase the building and land and $40,000.00/ month rent until Defendants exercised their option to purchase the land & building. Defendants then issued two checks (attached as exhibit B)

    d. **Performance,**

Presiding Judge: HON. JULIE M. GOODMAN (622397)
COM : 000002 of 000018

NOT ORIGINAL DOCUMENT
02:18:36 PM
05/20/2024
88890-57

    i. Plaintiffs performed as agreed giving the defendants immediate possession of the building & land.

    ii. Defendant have not performed. They stopped payment on the checks and have refused to make any of the rent payments as required by the contract.

9. Because Defendant has not performed as required by the contract, he is in material breach of the contract.

10. Defendants were aware that they were entering into a lease for the building with an option to purchase said building & land.

11. Plaintiffs have done their best to mitigate damages. However even after doing all they could to mitigate damages Plaintiffs have still suffered a substantial loss because of Defendants' breach.

12. On August 29, 2022, Plaintiffs made a demand for payment to cover their losses.

13. Defendants have refused to make said payment

### DEMAND FOR JUDGMENT AND PRAYER FOR RELIEF

Plaintiff respectfully demands judgment against Defendants for:

a) an amount to be determined at trial but in excess of the jurisdictional minimum of the court

b) The costs of this action, plus reasonable attorney's fees; and

e) Any additional relief allowable by law or equity.

Page 3 of 4

Cole V Hamilton et. al.       Filed       22-CI-03256       11/08/2022       Vincent Riggs, Fayette Circuit Clerk

Presiding Judge: HON. JULIE M. GOODMAN (622397)
COM : 000003 of 000018

ORIGINAL DOCUMENT

02:18:36 PM

NOT

05/20/2024

88890-57

Respectfully Submitted,

_____
BRIAN D. BAILEY ESQ.
McCLURE, McCLURE & BAILEY PLLC.
ATTORNEYS FOR Rick Cole & Chad Cole
P.O. Box 214
Danville KY, 40423-1899
859-236-8888
bailey@danvillekyattorney.com

### VERIFICATION

I hereby acknowledge that I have read the forgoing Complaint & Prayer for relief set forth above and that the facts and allegations contained herein are true and correct to the best of my knowledge.

_____
Chad Cole

*Exhibit A*

ORIGINAL DOCUMENT

02:18:30 PM

606. 226-5099
859. 229- 4805

05/20/2024

88890-57

STATE OF KENTUCKY )
) LEASE WITH OPTION TO PURCHASE
_____ COUNTY )

THIS LEASE AGREEMENT (the "Lease") made and entered into as of the _____ day of February, 2022, by and between RICK COLE, a married person, and Chad Cole, a single person, both of Danville, KY 40422 (herein collectively "Landlord"), and Wesley Hamilton and Biofuel Mining, Inc. of [handwritten: 1213 Buck house Ln Lexington KY 40509] (herein "Tenant");

### STATEMENT OF PURPOSE

Landlord is the fee simple owner of a certain tract of land located in Letcher County, Kentucky, together with the improvements located thereon, and designated as 1004 Gateway Industrial Road, Jenkins, KY 41537 (the "Demised Premises"). This includes the 41,000 square foot warehouse facility and six acres of land. Landlord has agreed to lease to Tenant, and Tenant has agreed to lease from Landlord the Demised Premises upon the terms, provisions and conditions hereinafter set forth in this Lease.

### WITNESSETH:

In consideration of TWO HUNDRED FIFTY THOUSAND AND NO/100 DOLLARS ($250,000.00) and other valuable consideration, receipt of which is hereby acknowledged, and of the rent to be paid, the mutual covenants and agreements herein contained and of other good and valuable considerations, the receipt and legal sufficiency of which are hereby acknowledged by the parties hereto, Landlord hereby leases and rents to Tenant with Option to Purchase and Tenant hereby leases and rents from Landlord the Demised Premises hereinafter described upon the terms, provisions and conditions hereinafter set forth, to wit:

1. **Demised Premises.** Landlord hereby leases and rents to Tenant and Tenant hereby leases and rents from Landlord the Demised Premises, including all improvements located thereon, together with all easements, rights-of-way, sewer rights, and water privileges, in any way belonging or relating to the Demised Premises, including, but not limited to, the main building and storage buildings and land surrounding the items above and all improvements there.

2. **Term of Lease.** The term of this Lease (the "Term") shall begin as of FEBRUARY 11, 2022, and shall end at 11:59 p.m., February 10, 2023, unless sooner terminated in accordance with the terms hereof.

3. **Rental.** Tenant shall pay to Landlord for the use and occupancy of the Demised Premises during the Term of this Lease consecutive equal monthly payments of FORTY THOUSAND AND NO/100 DOLLARS ($40,000.00) beginning FEBRUARY 11, 2022, and continuing on the _____ day of each month thereafter until this Lease is terminated.

Filed    22-CI-03256    11/08/2022    Vincent Riggs, Fayette Circuit Clerk

Presiding Judge: HON. JULIE M. GOODMAN (622397)

COM : 000005 of 000018

NOT ORIGINAL DOCUMENT 05/20/2024 02:18:36 PM 88890-57

All monthly payments provided for herein shall be payable to Landlord on the 11th day of each month, at the address hereafter set forth, until written notice to the contrary is received by Tenant.

4. Taxes. Landlord shall pay such funds as are necessary to pay all assessments, real estate taxes, ad valorem taxes of any sort and any governmental charges, penalties and interest levied or imposed upon or against the Demised Premises, including the improvements or any improvements which may be constructed by Tenant in the future thereon, for the 2022 Calendar year. Taxes shall be pro-rated at the time of closing. Tenant shall pay all personal property taxes assessed against his property so as to keep the demised premises free of any tax liens.

Any provisions in this Lease to the contrary notwithstanding, Tenant may, at Tenant's expense, if in good faith it believes that any tax, assessment or other charge payable by it shall be invalid, excessive or unenforceable in whole or in part, protest against and contest the validity, amount or enforceability of any such tax, assessment or charge. In such case, Tenant shall comply with all requirements of law as to conditions precedent in making any contest, and Tenant covenants to protect Landlord against foreclosure of any lien resulting from imposition of any such tax, assessment or other charge which Tenant may contest, including the posting of bonds or other security to prevent the prosecution of any proceeding which could result in same. Tenant shall give Landlord notice of any such protest.

5. Utilities. During the Term of this Lease, the Tenant shall pay for all electricity, gas, water, heat, sewage, garbage disposal, and all other utilities or services relating to its use and/or occupancy of the Demised Premises. The Landlord shall have no duty or responsibility to Tenant for the stoppage or interruption of such utilities or services due to lack of payment. Tenant shall transfer utilities by no later than February 25, 2022.

6. Insurance. Landlord, at its own expense, shall keep the building within which the Premises are situated insured against loss or damage by fire or other hazards, with extended coverage. Tenant, at its sole cost and expense, shall have the option and responsibility for insuring all furniture, fixtures, and personal property, supplied or owned by Tenant.

7. Public Liability. Tenant shall during the entire term and any renewal thereof, hold Landlord harmless and shall indemnify Landlord for any loss occasioned by damage or injury to any member in the general public such injury or damage taking place on the Demised Premises, unless said loss is caused by Landlord.

8. Maintenance; Repairs; Alterations; Reconstructions. Tenant, at its sole cost and expense, shall maintain throughout the Term, the Demised Premises and all improvements constructed thereon, ordinary wear and tear only excepted, and in accordance with all applicable laws, rules, ordinances, orders and regulations of (i) federal, state, county, municipal and other governmental agencies and bodies having or claiming jurisdiction and

Presiding Judge: HON. JULIE M. GOODMAN (622397)

COM : 000006 of 000018

Filed    22-CI-03256    11/08/2022    Vincent Riggs, Fayette Circuit Clerk

*[signatures: BioFuel Mining]*

NOT ORIGINAL DOCUMENT
05/20/2024
02:18:36 PM
88890-57

all their respective departments, bureaus and officials, and (ii) all insurance companies insuring all or any part of the Demised Premises or improvements or both. Tenant shall maintain the lawn in good condition and perform all routine maintenance to the Demised Premises.

9. Ownership of Improvements. All improvements constructed on the Demised Premises by Tenant as permitted by this Lease shall be owned by Landlord until expiration of the Term or sooner termination of this Lease. Tenant shall not remove any improvements from the Demised Premises nor waste, destroy or modify any improvements on the Demised Premises unless such improvements are replaced by improvements having a similar value, provided, Tenant has received prior written consent of Landlord.

10. Assignment and Subletting. Tenant shall not assign this Lease.

11. Events of Default. If any one or more of the following events ("Events of Default") shall occur:

    a. If the Tenant shall default in the payment when due of any Rental, Tenant shall be responsible for a $50.00 late fee for each such occurrence. Failure to pay the monthly rental due on or before the due date shall, at landlord's option, constitute a breach of this Lease; or

    b. If the Tenant shall default in the payment of any other sum of money specified hereunder to be paid by Tenant, and Tenant does not remedy such default within ten (10) days after written notice thereof; or

    c. Subject to the provisions of subparagraph 11d. of this Lease, if the Tenant shall become bankrupt or insolvent, or file or have filed against it in any court pursuant to any statute, either or the United States or any State, a petition in bankruptcy or insolvency or for reorganization, or file or have filed against it a petition for the appointment of a receiver or trustee for all or substantially all of the assets of the Tenant and such appointment shall not be vacated or set aside within thirty (30) days from the date of such appointment, or if the Tenant makes and assignment for the benefit or creditors, petitions for or enters into an arrangement, or admits its inability to pay its debts as they become due; or

    d. If Tenant's interest in this Lease or the Demised Premises or improvements shall be subjected to any attachment, lien, or levy whatsoever or any sale pursuant to any order or decree entered against Tenant in any legal proceeding in any such lien, order or decree shall not be vacated within thirty (30) days of entry thereof; or

    e. If any default shall occur under the terms of any loan of Tenant secured by a mortgage, deed of trust or other instrument constituting a lien on the fee

Presiding Judge: HON. JULIE M. GOODMAN (622397)

COM : 000007 of 000018

Filed    22-CI-03256    11/08/2022    Vincent Riggs, Fayette Circuit Clerk

NOT ORIGINAL DOCUMENT
05/20/2024
02:18:36 PM
88890-57

simple interest in the Demised Premises or this leasehold estate shall occur and all grace periods thereunder have expired; or

f. If Tenant shall fail to keep the Demised Premises in a state of good repair adequate to Landlord, as presently exists, normal wear and tear excluded;

12. Representations. Landlord hereby warrants, covenants and represents the following to Tenant with full knowledge that Tenant is relying upon same in executing this Lease with Option to Purchase Agreement.

a. Landlord has the full power and authority to make, deliver, enter into and perform pursuant to the terms and conditions of this Agreement, and has taken all necessary action or its equivalent to authorize the execution, delivery and performance of the terms and conditions of this Agreement.

b. This Agreement is and shall be valid and binding in accordance with its terms and conditions.

c. The execution, delivery and performance by Landlord of this Agreement is not precluded by, and will not violate, any provision of any law, statute, rule or regulation of the State of Kentucky, or of the United States, or any judgment, order, decree, writ or injunction of any court, governmental department, commission, board, bureau, agency of instrumentality, and will not result in a breach of, or default under, any agreement, mortgage, contract, undertaking or other instrument or document to which Landlord is a party or by which Landlord is bound or to which Landlord or any portion of the Demised Premises is subject.

d. There are no actions, suits or proceedings pending or threatened against, by or affecting the Landlord in any court or before any government agency relating to the ownership of, or Landlord's ability to lease and convey the Demised Premises.

e. Payment for work, labor, services and material furnished by or at the direction of Landlord have been discharged by Landlord so that no mechanics', materialmen or other lien may be filed against the Demised Premises or such improvements.

f. Landlord represents that the Demised Premises are free and clear of all liens and encumbrances of every type and nature except 2022 ad valorem taxes.

g. Landlord agrees that each of the foregoing warranties, covenants and representations are true and correct as of the date of this Agreement.

*[signatures: Big Fuel Mining]*

NOT ORIGINAL DOCUMENT 05/20/2024 02:18:36 PM 88890-57

13. Inspection Landlord and its authorized representatives may upon five (5) days prior notice enter the Demised Premises or any part thereof at all reasonable times for the purpose of inspecting the same. Landlord shall not have any duty to make any such inspection nor shall it incur any liability or obligation for not making any such inspection.

14. Exculpation of Landlord. Nothing contained in this Lease shall constitute any consent or request by Landlord, express or implied, for the performance of any labor or services or the furnishing of any materials or other property in respect to the Demised Premises or any part thereof, nor as giving Tenant any right, power or authority to contract for or permit the performance or any labor or services or the furnishing of any materials or other property in such fashion as would permit the making of any claim against Landlord in respect thereof, except as otherwise set forth herein.

15. Repossession. Landlord may enter upon and repossess the Demised Premises or any part thereof by summary proceedings, ejectment or otherwise, and may remove Tenant and all other persons and any and all property therefrom, without prejudice to any remedies which might otherwise be used for arrears or Rental or for breach of covenant. Landlord shall be under no liability for or by reason or any such entry, repossession or removal, whether by direct act of the Landlord or its assigns or through the medium of legal proceedings, for that purpose instituted, and such entry, repossession or removal shall not affect the liability of the Tenant or its successors, for past Rental or Rental to accrue under this Lease, but the same shall continue as if such entry, repossession or removal had not taken place.

16. Use of the Premises. Tenant agrees that the Demised Premises shall be used only for lawful purposes during the term of the Lease. The property has a pool which shall remained closed until Tenant has purchased the property pursuant to Paragraph 20 hereof.

17. Miscellaneous. If any term of this Lease or any application thereof shall be invalid or unenforceable, the remainder of this Lease and any other application of such term shall not be affected thereby. Whenever in this Lease it is provided that any document or matter is to be satisfactory to Landlord or may be required by Landlord, it shall be deemed to mean reasonably satisfactory or reasonably required, as the case may be, in an ordinary business sense. Any approval or consent of Landlord required hereunder shall not be unreasonably (in an ordinary business sense) withheld. This Lease may be changed, waived, discharged or terminated only by an instrument in writing signed by the party against which enforcement of such change, waiver, discharge or termination is sought. The headings in this Lease are for purposes of reference only and shall not limit or define the meaning hereof. This Lease may be executed in any number of counterparts, each of which shall be an original, but all of which shall together constitute one and the same instrument.

*[Signatures]*

Filed     22-CI-03256     11/08/2022     Vincent Riggs, Fayette Circuit Clerk

Presiding Judge: HON. JULIE M. GOODMAN (622397)

COM : 000009 of 000018

NOT ORIGINAL DOCUMENT
05/20/2024
02:18:36 PM
88890-57

18. Notices. Any notice or submission required or permitted under this Lease shall be in writing and shall be deemed to be given three (3) days after being sent by prepaid registered or certified mail addressed to the parties hereto set forth above.

Either party may from time to time by notice as herein provided, designate a different address to which notices to it shall be sent.

17. Covenants of Title. Landlord covenants, warrants and represents (i) that it is seized of the Demised Premises in fee simple and has full right and authority to lease and sell the same upon the terms and conditions herein set forth; (ii) that Tenant's leasehold estate to the Demised Premises is insurable with only the exceptions set forth on Exhibit B; and (iii) that Tenant shall peacefully and quietly hold and enjoy the Demised Premises safe from any claims arising by, through or under Landlord for the full Term hereof so long as Tenant does not default in the performance of any of its covenants hereunder.

18. Nonmerger of Fee and Leasehold Estate. If both Landlord's and Tenant's estates in the Demised Premises or improvements located thereon or both become vested in the same owner, this Lease shall not be terminated by application of the doctrine of merger except at the express written election of the owner and consent of the mortgagee or mortgagees under all mortgages on the Demised Premises.

19. Transfer of Landlord's Interest. During the term of this Lease, Landlord may not sell, lease or otherwise transfer its interest in the Demised Premises without prior consent of the Tenant.

OPTION TO PURCHASE

20. Option to Purchase.

(a) The purchase price shall be two million five hundred thousand dollars ($2,500,000.00).

(b) So long as Tenant is not in default, Landlord hereby grants to Tenant an exclusive option to purchase the Demised Premises. Said option shall be exercisable immediately, but must be exercised no later than February 10, 2023, otherwise said option shall become null and void. Tenant is hereby given notice of Tenant's right to exercise its option granted herein. No further notice of the time to exercise said option need be given to Tenant by Landlord.

(c) Landlord shall convey the Demised Premises to Tenant by general warranty deed.

(c) The rental payments made in pursuant to this lease agreement shall not be applied to

Filed    22-CI-03256    11/08/2022    Vincent Riggs, Fayette Circuit Clerk

Presiding Judge: HON. JULIE M. GOODMAN (622397)

COM : 000010 of 000018

NOT ORIGINAL DOCUMENT
05/20/2024
02:18:36 PM
88890-57

the purchase price of this property. However, if the Tenant exercises this option to purchase within the option period, then the $250,000.00 non refundable deposit shall be applied to the purchase price; otherwise it becomes the property of Landlord.

(d) The closing shall occur within ten (10) days after Tenant gives written notice of its exercise of this option to Landlord.

21. Binding Effect. Subject to express provisions hereof to the contrary, this Lease shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs, successors and assigns during the Term hereof and during any extensions or renewals of said Term.

IN WITNESS WHEREOF, the parties hereto have caused these presents to be duly executed and sealed all in pursuance of proper legal authority, as of the day and year first above written.

LANDLORD:

_____
Rick Cole

_____
Chad Cole


STATE OF KENTUCKY
COUNTY OF Boyle

The undersigned notary public hereby certifies that the foregoing LEASE AGREEMENT was produced, acknowledged and SWORN to, before me this date by Rick Cole and Chad Cole

WITNESS my hand and seal of office this the 11th day of Feb 2022.

My Commission expires: May 19, 2025

NOTARY PUBLIC #: KYNP27690

TENANT:

_____

_____

_____
Wesley Hamilton, an individual

_____
Biofuel Mining, Inc by authorized representative Wesley Hamilton

STATE OF KENTUCKY
COUNTY OF _____

    The undersigned notary public hereby certifies that the foregoing LEASE AGREEMENT was produced, acknowledged and SWORN to, before me this date by Wesley Hamilton, TENANT.

WITNESS my hand and seal of office this the _____ day of

February, 2022. My Commission expires: .

                                        _____
                                        NOTARY PUBLIC#: _____

ORIGINAL DOCUMENT
02:18:36 PM

NOT
05/20/2024
88890-57

Presiding Judge: HON. JULIE M. GOODMAN (622397)

COM : 000012 of 000018

Filed     22-CI-03256     11/08/2022     Vincent Riggs, Fayette Circuit Clerk



FS-C21-C8A    CHARGE BACK

ORIGINAL DOCUMENT

**Monticello BANKING COMPANY**

P.O. Box 421
Monticello, KY 42633-0421
Phone (606) 348-8411

NOT
05/20/2024

02:18:36 PM

88890-57

## IMPORTANT INFORMATION ABOUT YOUR CHECKING ACCOUNT
### Substitute checks and Your Rights

**What is a substitute check?**
To make check processing faster, federal law permits banks to replace original checks with "substitute checks." These checks are similar in size to original checks with a slightly reduced image of the front and back of the original check. The front of a substitute check states; "This is a legal copy of your check. You can use it the same way you would use the original check." You may use a substitute check as proof of payment just like the original check.

Some or all of the checks that you receive back from us may be substituted checks. This notice describes rights you have when you receive substitute checks from us. The rights in this notice do not apply to original checks or to electronic debits to your account. However, you have rights under other law with respect to those transactions.

**What are my rights regarding substitute checks?**
In certain cases, federal law provides a special procedure that allows you to request a refund for losses you suffer if a substitute check is posted to your account (for example, if you think that we withdrew the wrong amount from your account or that we withdrew money from your account more than once for the same check). The losses you may attempt to recover under this procedure may include the amount that was withdrawn from your account and fees that were charged as a result of the withdrawal (for example, bounced check fees).

The amount of your refund under this procedure is limited to the amount of your loss or the amount of the substitute check, whichever is less. You also are entitled to interest of the amount of your refund if your account is an interest-bearing account. If your loss exceeds the amount of the substitute check, you may be able to recover additional amounts under other law.

If you use this procedure, you may receive up to $2,500 of your refund (plus interest if your account earns interest) within 10 business days after we received your claim and the remainder of your refund (plus interest if your account earns interest) not later than 45 calendar days after we received your claim.

We may reverse the refund (including any interest on the refund) if we later are able to demonstrate that the substitute check was correctly posted to your account.

**How do I make a claim for a refund?**
If you believe that you have suffered a loss relating to a substitute check that you received and that was posted to your account, please contact us at Monticello Banking Company, P.O. Box 421, Monticello, KY 42633. (606) 348-8411. You must contact us within 45 calendar days of the date we mailed (or otherwise delivered by a means to which you agreed) the substitute check in question or the account statement showing that the substitute check was posted to your account, whichever is later. We will extend this time period if you were not able to make a timely claim because of extraordinary circumstances.

Your claim must include–
- A description of why you have suffered a loss (for example, you think the amount withdrawn was incorrect);
- An estimate of the amount of your loss;
- An explanation of why the substitute check you received is insufficient to confirm that you suffered a loss; and
- A copy of the substitute check and/or the following information to help us indentify the substitute check;
  for example the check number, the name of the person to whom you wrote the check, and the amount of the check.

Presiding Judge: HON. JULIE M. GOODMAN (622397)

*083902581*
02/25/2022
808811220000085

This is a LEGAL COPY of your check. You can use it the same way you would use the original check.

Return Reason-C
STOP PAYMENT



Filed        22-CI-03256       11/08/2022        Vincent Riggs, Fayette Circuit Clerk

COM : 000014 of 000018

**ORIGINAL DOCUMENT**



FS-021-05A  CHARGE BACK

ORIGINAL DOCUMENT  **Monticello BANKING COMPANY**  P.O. Box 421, Monticello, KY 42633-0421  Phone (606) 348-8411

NOT  05/20/2024  02:18:36 PM  88890-57

## IMPORTANT INFORMATION ABOUT YOUR CHECKING ACCOUNT
### Substitute checks and Your Rights

**What is a substitute check?**
To make check processing faster, federal law permits banks to replace original checks with "substitute checks." These checks are similar in size to original checks with a slightly reduced image of the front and back of the original check. The front of a substitute check states; "This is a legal copy of your check. You can use it the same way you would use the original check." You may use a substitute check as proof of payment just like the original check.

Some or all of the checks that you receive back from us may be substituted checks. This notice describes rights you have when you receive substitute checks from us. The rights in this notice do not apply to original checks or to electronic debits to your account. However, you have rights under other law with respect to those transactions.

**What are my rights regarding substitute checks?**
In certain cases, federal law provides a special procedure that allows you to request a refund for losses you suffer if a substitute check is posted to your account (for example, if you think that we withdrew the wrong amount from your account or that we withdrew money from your account more than once for the same check). The losses you may attempt to recover under this procedure may include the amount that was withdrawn from your account and fees that were charged as a result of the withdrawal (for example, bounced check fees).

The amount of your refund under this procedure is limited to the amount of your loss or the amount of the substitute check, whichever is less. You also are entitled to interest of the amount of your refund if your account is an interest-bearing account. If your loss exceeds the amount of the substitute check, you may be able to recover additional amounts under other law.

If you use this procedure, you may receive up to $2,500 of your refund (plus interest if your account earns interest) within 10 business days after we received your claim and the remainder of your refund (plus interest if your account earns interest) not later than 45 calendar days after we received your claim.

We may reverse the refund (including any interest on the refund) if we later are able to demonstrate that the substitute check was correctly posted to your account.

**How do I make a claim for a refund?**
If you believe that you have suffered a loss relating to a substitute check that you received and that was posted to your account, please contact us at Monticello Banking Company, P.O. Box 421, Monticello, KY 42633. (606) 348-8411. You must contact us within 45 calendar days of the date we mailed (or otherwise delivered by a means to which you agreed) the substitute check in question or the account statement showing that the substitute check was posted to your account, whichever is later. We will extend this time period if you were not able to make a timely claim because of extraordinary circumstances.

Your claim must include—
- A description of why you have suffered a loss (for example, you think the amount withdrawn was incorrect);
- An estimate of the amount of your loss;
- An explanation of why the substitute check you received is insufficient to confirm that you suffered a loss; and
- A copy of the substitute check and/or the following information to help us indentify the substitute check;
  for example the check number, the name of the person to whom you wrote the check, and the amount of the check.



*083902581*
02/25/2022
8088112200000084

This is a LEGAL COPY of your check. You can use it the same way you would use the original check.

Return Reason-C
STOP PAYMENT

Presiding Judge: HON. JULIE M. GOODMAN (622397)

COM : 000016 of 000018

Filed    22-CI-03256    11/08/2022    Vincent Riggs, Fayette Circuit Clerk

Case 3:23-cv-00628-CHB-CHL   Document 71-2   Filed 07/24/24   Page 17 of 18 PageID #: 1060

NOT
ORIGINAL DOCUMENT
05/20/2024
02:18:36 PM
88890-57

Presiding Judge: HON. JULIE M. GOODMAN (622397)

COM : 000017 of 000018



Filed          22-CI-03256          11/08/2022          Vincent Riggs, Fayette Circuit Clerk

```
MONTICELLO BANKING COMPANY          NOTICE OF RETURNED DEPOSITED ITEMS
(606) 348-8411
                    Account                                    Date    2/25/22

The deposited items listed were returned to us and debited to your account.
   PAYOR                RETURN REASON                AMOUNT
   DIGICAM INC          STOP PAYMENT                  40,000.00
   DIGICAM INC          STOP PAYMENT                 250,000.00

   Total items charged back to your account:        290,000.00

   Please deduct a handling charge of:

      RICKY DALE COLE
      POD ACCOUNT
      466 S 4TH ST
      DANVILLE KY 40422-2007
```

ORIGINAL DOCUMENT NOT
05/20/2024
02:18:36 PM
88890-57

21



Monticello Banking Company
Danville
Drawer 21005       Trans # 25
2/22/2022          10:15 AM
Affected Account **********1868  D
                290000.00
Cash Back
                     .00

All items credited subject to payment.
Go Green!
Go eStatements!
WWW.MBCBANK.COM