UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

HBTPOWER LIMITED,           )
           )
    Plaintiff,        )    Civil Action No. 3:23-CV-628-CHB
           )
v.               )
           )    **ORDER**
MOHAWK ENERGY, LLC,     )
           )
    Defendant.     )

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on several motions: a Motion to Transfer filed by Defendant Mohawk Energy, LLC ("Mohawk"), [R. 13], which has been fully briefed, [R. 27; R. 28]; a Motion to Compel Arbitration filed by Plaintiff HBTPower Limited ("HBTPower"), [R. 17], which has been fully briefed, [R. 19; R. 25]; HBTPower's Motion to Dismiss Counterclaim, [R. 26], which has been fully briefed, [R. 31; R. 38]; Mohawk's "Motion to Dismiss on Ground of Standing as Real Party in Interest is Not Before This Court," [R. 32], which has been fully briefed, [R. 35; R. 36; R. 41]; and Mohawk's "Renewed Motion to Dismiss on Grounds that Plaintiff is Not the Entity It Contracted With," [R. 61]. As to this last motion, no response was filed and the time to do so has expired. Accordingly, each of these five motions[1] is

---

[1] Mohawk has also filed a notice in the record, [R. 20], in which it requests that the Court take judicial notice "of the fact that the Plaintiff before this Court does not appear to be the party with which it contracted." *Id.* at 1. From the record before the Court, including the plain language of the License Agreement, the agreement at issue was entered into by Mohawk, as "Licensor," and "HBTPower, a Huobi Technology Holdings Limited controlled BVI business company," as "Licensee or Huobi." *See* [R. 26-2, p. 1]. Regardless, Mohawk has not filed a proper motion, and as a result, the request for judicial notice is not properly before this Court. Moreover, HBTPower disputes Mohawk's allegations, [R. 30], and Mohawk (who did not file a reply) has failed to present an "adjudicative fact" that is "not subject to reasonable dispute" such that judicial notice would be appropriate. Fed. R. Evid. 201(a), (b). Moreover, it does not appear that Mohawk has supplied the Court "with the necessary information" to take judicial notice of this alleged fact, as it has not provided anything showing that the "accuracy" of its position concerning HBTPower's status as a contracting party "cannot be reasonably questioned." Fed. R. Evid. 201(b), (c)(2). The Court therefore declines to consider Mohawk's "Notice." [R. 20].

ripe and ready for review. For the reasons set forth below, the Court will deny Mohawk's motions, [R. 13; R. 32; R. 61], grant HBTPower's Motion to Compel Arbitration, [R. 17], deny as moot HBTPower's Motion to Dismiss, [R. 26], and stay Mohawk's Counterclaims, [R. 14], pending resolution of the waiver issues raised by Mohawk.

## I.  BACKGROUND

On November 29, 2023, HBTPower filed a Verified Complaint for Temporary Restraining Order and Permanent Injunctive Relief. [R. 1]. In that Verified Complaint, HBTPower alleges that it is a "technology solution service provider" that has engaged in "mining of cryptocurrencies, including Bitcoin." *Id.* ¶¶ 9–10. HBTPower further alleges that, around March 2022, it was introduced to Brandon D. Smith, the President of Mohawk, who indicated "Mohawk had the property and the ability to help HBTPower carry out its Bitcoin mining activities." *Id.* ¶¶ 11–12. HBTPower and Mohawk then entered into a License Agreement, pursuant to which HBTPower would mine Bitcoin at Mohawk's property in Jenkins, Kentucky (hereinafter, the "Premises"). *Id.* ¶¶ 3, 13. Among other things, HBTPower prepared for the mining operations by having over 2,000 Bitcoin mining machines delivered to the Premises in June and July, 2022. *Id.* ¶ 27. HBTPower later delivered more mining machines in March 2023, resulting in a total of 4,335 machines delivered to the Premises.  *Id.* ¶¶ 30–31.

HBTPower alleges that Mohawk has since breached the License Agreement in various ways (e.g., failing to install the appropriate power supply infrastructure) and has improperly ousted HBTPower staff from the Premises "on the pretext of non-payment of rent and labor charges." *Id.* ¶¶ 32–35]. HBTPower further alleges that it learned in November 2023 that Mohawk was attempting to sell some or all of the Bitcoin mining machines. *Id.* ¶ 37.  As a result,

HBTPower sought a temporary restraining order and permanent injunction in this Court.[2] *See* [R. 1].

Shortly after, Mohawk filed its motion seeking transfer to the Eastern District of Kentucky, [R. 13], and its Answer and Counterclaim. [R. 14]. HBTPower then filed a formal Motion for Temporary Restraining Order, [R. 16], and its motion seeking to compel arbitration of the Counterclaim. [R. 17]. The following day, December 6, 2023, the Court held a telephonic status conference with the parties. [R. 18]. During that status conference, the parties represented that they might be able to reach an agreement that would moot the request for a temporary restraining order. *Id.* They ultimately filed a Joint Status Report advising that they had reached such an agreement, [R. 21], and the Court denied the Motion for Temporary Restraining Order as moot. [R. 22]. Plaintiff then filed its Motion for Preliminary Injunction, [R. 23], on December 18, 2023.

The Court scheduled a preliminary injunction hearing for January 25, 2024. [R. 24]. However, the parties proceeded to file various motions, including HBTPower's Motion to Dismiss, [R. 26], and Mohawk's "Motion to Dismiss on Ground of Standing as Real Party in Interest is Not Before This Court," [R. 32]. As a result of these various dispositive motions, the Court rescheduled the preliminary injunction hearing for April 15, 2024. [R. 43].

On April 1, 2024, the Court conducted morning and afternoon telephonic status conferences, during which the parties requested that the matter be referred to a United States Magistrate Judge for a settlement conference. [R. 50]. The parties also advised that they had reached an agreement as to the status of their motions pending the outcome of that settlement

---

[2] HBTPower has since represented that "the underlying dispute" between the parties is in arbitration. [R. 27, p. 4]; *see also, e.g.*, [R. 17, p. 1 ("Indeed, HBTPower has initiated an arbitration regarding this dispute.")]; [R. 17-4 (Documentation of Demand for Arbitration)].

conference. *Id.*; *see also* [R. 49]. Pursuant to that agreement, the Court denied the Motion for Preliminary Injunction, [R. 23], as moot, held the remainder of the motions in abeyance, and canceled the preliminary injunction hearing. [R. 50].

The parties failed to reach a settlement. *See, e.g.*, [R. 69]. HBTPower has since refiled its Motion for Preliminary Injunction. [R. 76]. Once that motion has fully ripened, the Court will schedule a preliminary injunction hearing. For now, the motions presently before the Court are: Mohawk's Motion to Transfer, [R. 13], HBTPower's Motion to Compel Arbitration, [R. 17]; HBTPower's Motion to Dismiss Counterclaim, [R. 26]; Mohawk's "Motion to Dismiss on Ground of Standing as Real Party in Interest is Not Before This Court," [R. 32]; and Mohawk's "Renewed Motion to Dismiss on Grounds that Plaintiff is Not the Entity It Contracted With," [R. 61]. As already noted, these motions are fully briefed and ready for review. The Court considers each motion in turn.

## II. ANALYSIS

### A. Mohawk's Motion to Transfer, [R. 13]

Mohawk seeks to transfer this case to the Eastern District of Kentucky under 28 U.S.C. § 1404(a). That statute provides, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Stated another way "a court may transfer an action when: '(1) the transferred action could have been brought in the transferee court, (2) a transfer would serve the interests of justice, and (3) a transfer would serve the convenience of the parties and witnesses.'" *United States v. P.J. Dick Inc.*, 79 F. Supp. 2d 803, 806 (E.D. Mich. 2000) (quoting *In re Air Crash*

*Disaster at Detroit Metropolitan Airport on Aug. 16, 1987*, 737 F. Supp. 391, 393 (E.D. Mich. 1989)).

The district court has broad discretion in deciding whether to transfer a case under this statute. *Perceptron, Inc. v. Silicon Video, Inc.*, 423 F. Supp. 2d 722, 729 (E.D. Mich. 2006) (citation omitted). In exercising this discretion, district courts within the Sixth Circuit often consider the following factors:

> (1) the convenience of witnesses; (2) the location of relevant documents and relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Id.* (citing *Overland, Inc. v. Taylor*, 79 F. Supp. 2d 809, 811 (E.D. Mich. 2000)); *see also Parrot v. Gemini Direct, LLC*, 3:23-cv-593-RGJ, 2024 WL 647393, *5 (W.D. Ky. Feb. 15, 2024) (reciting same factors); *Pathfinder Integrated Co., Inc. v. DW Machine and Fabricating Co., Inc.*, 1:23-cv-121, 2023 WL 5231403, *2 (W.D. Mich. June 6, 2023) (reciting same factors); *see also Reese v. CNH America LLC*, 574 F.3d 315, 320 (6th Cir. 2009) (discussing district court's consideration of six factors: "the convenience of the parties and witnesses," the accessibility of evidence, "the availability of process" to make reluctant witnesses testify, "the costs of obtaining willing witnesses," "the practical problems of trying the case most expeditiously and inexpensively" and "the interests of justice") (internal quotation marks omitted).

The moving party bears the burden of demonstrating that the requested transfer is warranted. *See, e.g.*, *Pathfinder Integrated*, 2023 WL 5231403, at *2 (citations omitted); *Scott v. White*, 539 F. Supp. 3d 831, 846–47 (M.D. Tenn. 2021) (citation omitted). "This burden is a heavy one and requires the moving party to show that the balance of considerations weighs

strongly in favor of transfer." *Pathfinder Integrated*, 2023 WL 5231403, at *2 (citation omitted). Ultimately, "[a] court should deny a motion to transfer venue if the transfer would merely shift the inconvenience from one party to the other." *Id.* (citation omitted).

Relying on § 1404(a), Mohawk argues that transfer of this case to the Eastern District of Kentucky is appropriate because that district is more convenient for the parties and witnesses, and there is no connection between this case and the Western District of Kentucky. [R. 13]. In response, HBTPower argues that the Parties' License Agreement, *see* [R. 26-2], includes a forum selection clause that allows the parties to bring suit in federal court in either Louisville (in the Western District) *or* Lexington (in the Eastern District), and Mohawk has failed to demonstrate that the clause is invalid or unenforceable. [R. 27, pp. 2–4]. HBTPower also argues that the above-cited factors weigh in favor of denying transfer. *Id.* at 4–5. In reply, Mohawk argues that the forum selection clause applies only to arbitration proceedings and the Western District of Kentucky is highly inconvenient. [R. 28].

The Court first considers the forum selection clause. The existence of such a clause "is an important factor to be weighed in the calculus of deciding a motion to transfer venue." *P.J. Dick Inc.*, 79 F. Supp. 2d at 806 (citations omitted). "Although not dispositive, a party faces a 'heavy burden of proof' to set aside a forum selection clause on grounds of inconvenience," as "[t]he general rule is that forum selection clauses are regularly enforced." *Id.* (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 17 (1972); *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991)).

Here, Mohawk does not argue that the forum selection clause is invalid or unenforceable; instead, it argues only that the clause is inapplicable here. [R. 28, p. 1]. Specifically, Mohawk argues that the forum selection clause applies only to arbitration proceedings. *Id.* The plain

- 6 -

language of the clause suggests otherwise. Section 20(b) of the License Agreement clearly states

that the parties

> each submits for itself and its property *in any proceeding* relating to this
> Agreement, or for recognition and enforcement of any award or judgment in respect
> thereof, to the nonexclusive general jurisdiction of any Kentucky State court or
> federal court of the United States of America sitting in Louisville, Kentucky or
> Lexington, Kentucky, and any appellate court from any thereof.

[R. 26-2, p. 29 (emphasis added)].[3] Mohawk does not cite to this language nor make any attempt

to explain its position that this is a "forum selection clause for arbitration." [R. 28, p. 1]. Nor

would such an argument be supported by the language of Section 20, when read in its entirety.

Section 20(a), for example, outlines the arbitration agreement, but also clearly permits the parties

to "seek[] provisional remedies in aid of arbitration from a court of appropriate jurisdiction."

[R. 26-2, p. 28 (Section 20(a))]. Then, in the very next paragraph, Section 20(b), the agreement

contains the forum selection clause expressly providing that "any proceedings relating to this

Agreement, or for recognition and enforcement of any award or judgment in respect thereof,"

may be brought in state or federal courts in the designated forums. *Id.* at 29 (Section 20(b)).

Clearly, then, the forum selection clause is not limited to arbitration proceedings.

In sum, based on the lack of argument from Mohawk, and the plain language of the

License Agreement, the Court finds that the parties have agreed that, to the extent an action may

be brought under the License Agreement,[4] they will submit to the jurisdiction of the federal

courts sitting in Louisville, Kentucky (in the Western District) or Lexington, Kentucky (in the

---

[3] The Court cites to the page number listed on the License Agreement, not the page number assigned by the Court's electronic docketing system.

[4] As the Court discusses below, the parties have agreed to submit a wide range of matters to arbitration, but that arbitration provision does "not preclude the Parties from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction." [R. 26-2, p. 28 (Section 20(a))].

Eastern District). In other words, the parties have agreed that such actions may be brought in the Western District of Kentucky.

Having determined that this clause applies to this dispute, the Court now turns to the parties' remaining arguments. In doing so, the Court is mindful that the party seeking transfer faces a heavy burden to set aside a forum selection clause on inconvenience grounds. *P.J. Dick Inc.*, 79 F. Supp. 2d at 806 (citations omitted). The Court is also mindful of the nine factors outlined above. Importantly however, Mohawk does not engage with each individual factor, but instead argues that the Western District of Kentucky is inconvenient because Mohawk is located in Letcher Counter, Kentucky, in the Eastern District; its employees and staff reside and work in the Eastern District of Kentucky; the company's majority member, state senator Brandon Smith, resides in the Eastern District; Mr. Smith will be working in the Eastern District during the legislative session (which has since closed), making it difficult for him to travel to the Western District for court proceedings; and counsel for both parties work in the Eastern District. [R. 13, pp. 1–3]. On this point, Mohawk notes that "Senator Smith and other Mohawk employees will be essential witnesses in this matter." *Id.* at 4. Lastly, Mohawk argues that the Eastern District "has the entirety of the connections with this case." *Id.*

Mohawk has therefore addressed, or at least attempted to address, the first factor (convenience of the witnesses), the third factor (convenience of the parties), and the fourth factor (the locus of the operative facts). However, it makes no arguments regarding the remaining factors. Put simply, Mohawk has not argued, much less demonstrated, that any of the other factors weigh in favor of transfer and instead relies solely on the convenience of the witnesses and parties, and the locus of operative facts.

- 8 -

Turning first to the locus of operative facts, the Court notes that the parties have agreed to submit to jurisdiction in the Western District of Kentucky (namely, the United States District Court in Louisville, Kentucky). *See* [R. 26-2, p. 29 (Section 20(b))]. While the actions at issue may have largely taken place in the Eastern District of Kentucky, the Court cannot simply disregard the parties' forum selection clause and HBTPower's choice of forum without more. *See, e.g.*, *Long John Silver's Inc. v. Nickelson*, 3:11-CV-93-H, 2011 WL 5025347, *4 (W.D. Ky. Oct. 21, 2011) ("The Court's analysis 'begins with the premise that the plaintiff's choice of forum is to be respected.'" (quoting *Bunch v. W.R. Grace & Co.*, 04-218-DLB, 2005 WL 1705745, *2 (E.D. Ky. July 21, 2005))). Moreover, Mohawk does not cite to any evidence or proof in the Eastern District of Kentucky that cannot be presented in the Western District of Kentucky, even though minor inconveniences (like travel) may be incurred to do so.

And if what this motion really comes down to is convenience, the Court notes that the Western District of Kentucky is apparently more or equally convenient for HBTPower. Indeed, it explains that it chose to file its suit in Louisville "because of its convenient access to flights, airport and accommodation," as "HBTPower's primary counsel and its main fact witness are located out of state and will need to fly in for the Preliminary Injunction Hearing." [R. 27, p. 5]. Importantly, § 1404(a) "provides for transfer to a *more* convenient forum, not to a forum likely to prove equally convenient or inconvenient." *Van Dusen v. Barrack*, 376 U.S. 612, 645–46 (1964) (emphasis added); *see also Scott*, 539 F. Supp. 3d at 848 (" . . . Defendant has not shown that the Western District of Washington is a *more convenient* forum for this litigation." (citing *Van Dusen*, 376 U.S. at 645–46; *B.E. Tech., LLC v. Facebook, Inc.*, 957 F. Supp. 2d 926, 931 (W.D. Tenn. 2013)). As one district court has explained, "Merely shifting the inconvenience from one party to another does not meet [the moving party's] burden." *B.E. Tech., LLC*, 957 F.

Supp. 2d at 931 (quoting *McFagdon v. Fresh Mkt., Inc.*, 05-2151-D/V, 2005 WL 3879037, *2 (W.D. Tenn. Oct. 21, 2005)) (internal quotation marks omitted). Instead, the moving party "must show that the forum to which [it] desires to transfer the litigation is the more convenient one vis a vis the Plaintiff's initial choice." *Id.* (quoting *Roberts Metals, Inc. v. Florida Props. Mktg. Grp., Inc.*, 138 F.R.D. 89, 93 (N.D. Ohio 1991)) (internal quotation marks omitted).

Here, Mohawk has failed to demonstrate that the Eastern District of Kentucky is *more* convenient for the parties and witnesses. Indeed, it relied heavily on the fact that Senator Smith would be working in the Eastern District of Kentucky (specifically, Frankfort) during the legislative session, thereby making travel and scheduling more difficult, but the legislative session has since closed. In any event, Frankfort is essentially the same distance from Lexington (the designated Eastern District forum) as it is from Louisville (the designated Western District forum). And the federal courthouse in Lexington is over two hours from Letcher County, where Mohawk and its employees are located. Moreover, the only pending motion requiring a hearing (and therefore requiring the parties and witnesses to travel) is the Motion for Preliminary Injunction, [R. 76], meaning the parties and witnesses will only need to travel for *one* hearing.

The Court finds that, at best, Mohawk has demonstrated that the Eastern District is equally as convenient as the Western District of Kentucky, and it has otherwise wholly failed to acknowledge or engage with the other factors cited above. As such, it has failed to satisfy its burden of demonstrating that transfer is warranted. Given the parties' forum selection clause (the validity of which is not in dispute), and because a transfer "would [not] serve the convenience of the parties and witnesses,"[5] the Court declines to transfer this case to the Eastern District of Kentucky. Accordingly, the Court will deny Mohawk's Motion to Transfer, [R. 13].

---

[5] Notably, while neither party seems to dispute that this action "could have been brought in the transferee court," *see* 28 U.S.C. § 1404(a), Mohawk has not argued that "a transfer would serve the interests of justice," and has therefore

**B. HBTPower's Motion to Compel Arbitration, [R. 17], and Motion to Dismiss Counterclaim, [R. 26]**

The Court next addresses HBTPower's motion seeking to compel arbitration of Mohawk's counterclaim, [R. 17], and its motion seeking dismissal of that counterclaim for the same reasons, as well as under Federal Rules of Civil Procedure 8(a) and 12(b)(6). [R. 26].

In its Motion to Compel Arbitration, HBTPower argues that Mohawk's counterclaim, *see* [R. 14], is subject to arbitration under Section 20 of the Licensing Agreement, [R. 26-2]. Section 20 provides, in relevant part,

> Any dispute, claim or controversy arising out of or relating to this Agreement, or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate, shall be determined by arbitration in Lexington, Kentucky or Louisville, Kentucky before one arbitrator.

*Id.* at 28 (Section 20(a)). However, Section 20 also states that it "shall not preclude Parties from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction." *Id.* From this, HBTPower argues that its motion seeking a preliminary injunction is properly before this Court, while Mohawk's Counterclaims—which, while difficult to follow, appear to allege breach of contract, fraud, defamation, intentional interference with prospective business advantage, and intentional impairment of right to contract, *see* [R. 14]—must be submitted to arbitration. *See* [R. 17].

As an initial matter, the Court notes that neither party appears to dispute the existence or validity of the arbitration agreement, nor do the parties disagree that the arbitration agreement expressly allows a claim for a preliminary injunction to be filed in this Court.[6] Indeed, in its

_____

failed to satisfy its burden of demonstrating the appropriateness of transfer with respect to that element of the statute as well.

[6] In its later response to HBTPower's Motion to Dismiss, Mohawk suggests that the License Agreement has been orally modified, *see* [R. 31, p. 3], and from this, further suggests that the arbitration agreement may not "govern[] resolution of the entirety of the parties' disputes." *Id.* at 5. From the best the Court can tell, Mohawk is arguing that

Case 3:23-cv-00628-CHB-CHL   Document 80   Filed 09/20/24   Page 12 of 20 PageID #: 1333

Answer, [R. 14], Mohawk admitted to the allegations in paragraph 4 of the Verified Complaint.

*See* [R. 14, ¶ 4]. Paragraph 4 of the Verified Complaint states,

> The License Agreement includes an arbitration provision at Section 20, which provides, in relevant part, that "[a]ny dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate, shall be determined by arbitration in Lexington, Kentucky or Louisville, Kentucky before one arbitrator." The arbitration provision in the License Agreement explicitly authorizes the Parties to seek injunctive relief in the courts, as HBTPower does through this claim, without waiving arbitration.

[R. 1, ¶ 4 (internal citations omitted)].

Moreover, the arbitration agreement also provides that, unless otherwise agreed by the parties, "the arbitration shall be administered by [Judicial Arbitration and Mediation Services, Inc. ("JAMS")] pursuant to its Streamlined Arbitration Rules and Procedures." [R. 26-2, p. 28 (Section 20(a))]. Rule 19(d) of the JAMS Streamlined Arbitration Rules and Procedures likewise provides that "[a]ny recourse by a Party to a court for interim or provisional relief shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate." *See* JAMS Streamlined Arbitration Rules & Procedures, Rule 19. Awards, https://www.jamsadr.com/rules-streamlined-arbitration/#Rule-19, last visited Sept. 13, 2024. When discussing "interim measures," Rule 19(d) references injunctive relief as an example. *Id.*; *see generally Touzi Tech, LLC v. BioFuel Mining, Inc.*, 3:22-cv-00008-GFVT, 2022 WL 273416

---

the arbitration agreement does not cover a breach of the *allegedly modified* License Agreement. *See id.* at 6 (arguing that HBTPower has "admitted that the initial contract was modified, that the contract was breached by [HBTPower], and that Mohawk was damaged by that breach"). This argument directly contradicts Mohawk's representations in its Answer *and* its response to the Motion to Compel, in which it does not dispute the existence, validity, or scope of the arbitration agreement and instead makes a waiver argument. *See* [R. 19]. For the reasons stated herein, the Court is denying the Motion to Dismiss, [R. 26], as moot, so it need not further address Mohawk's response to that motion. To be clear, however, the Court would be inclined to disregard such self-serving statements—which also appear to attack the ethics of opposing counsel—without any proof whatsoever to support such statements and with these statements being in direct contradiction to other earlier assertions made by Mohawk in the record. *See, e.g.*, [R. 31, p. 3 (alleging that HBTPower has failed to produce the Zoom recording despite repeated requests)].

(E.D. Ky. Jan. 28, 2022) (finding that agreement *not* to arbitrate "pre-award relief" included preliminary relief like preliminary injunctions and writs of possession).

Again, Mohawk does not dispute the existence or validity of the arbitration provision, nor does it dispute that requests for preliminary injunction may be brought before a court, without violating or waiving the arbitration provision. *See, e.g.*, [R. 14, ¶ 4 (admitting to paragraph 4 of the Verified Complaint]. Instead, it argues that HBTPower made various factual assertions in its complaint that are "unrelated to the request for injunctive relief and related directly to interpretation, modification, and enforcement of the contractual terms of the parties' agreements." [R. 19, p. 1]. Mohawk goes on to argue, "A request for injunctive relief that did not waive arbitration would have been limited solely to an order that Mohawk not sell the mining machines, and would not have included the other matters." *Id.* at 3. Mohawk therefore argues that HBTPower has "waive[d] any claim that the matter should be in arbitration instead of before this Court."[7] *Id.*; *see also id.* at 4 ("By intentionally bringing those specific issues before this Court, and requiring that the Court expend significant time and resources addressing them, the parties have waived any right to now claim that those can 'only' be heard in arbitration.").

In considering these arguments, the Court is mindful that Congress, by enacting the Federal Arbitration Act, "established long ago that an arbitration agreement 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Creason v. Experian Information Solutions, Inc.*, — F. Supp. 3d —, 2024 WL 1221183, *3 (W.D. Ky. Mar. 21, 2024) (quoting 9 U.S.C. § 2). The Act manifests a

---

[7] Mohawk also argues that, if the Court finds arbitration to be appropriate, it should be conducted in-person in Lexington or the Eastern District of Kentucky, rather than virtually. [R. 19, p. 4]. Mohawk has not filed a formal motion for this relief, nor does it cite any authority or law authorizing this Court to change the pending arbitration to an in-person proceeding, nor is the Court aware of any authority that would grant it jurisdiction over such issues. The Court therefore declines to consider this request.

federal policy of favoring arbitration agreements, and it likewise requires courts to enforce written arbitration agreements. *Id.* (citations omitted). However, "arbitration is a matter of contract," and "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Id.* (quoting *AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648 (1986)) (internal quotation marks omitted).

In the present case, Mohawk does not dispute that it agreed to submit its claims against HBTPower, which appear to include breach of contract, fraud, defamation, intentional interference with prospective business advantage, and intentional impairment of right to contract, to arbitration. *See, e.g.*, [R. 14, ¶ 4 (admitting to paragraph 4 of the Verified Complaint]; *see also generally* [R. 19]. As a result, "the Court needn't conduct even 'a limited review to determine [1] whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and [2] that the specific dispute falls within the substantive scope of that agreement.'" *Creason*, 2024 WL 1221183, at *3 (quoting *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003)).

Instead, the only question before the Court is whether HBTPower waived its right to demand arbitration of Mohawk's Counterclaims. Such threshold questions are typically for the Court, not an arbitrator to decide, unless the parties have agreed that such "gateway" questions of enforceability should be subject to arbitration. *See Creason*, 2024 WL 1221183, *3 (citations omitted). And in this case, the arbitration agreement clearly (and broadly) states that "[a]ny dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, *enforcement*, interpretation or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate, shall be determined by arbitration." [R. 26-2, p. 28 (Section 20(a)) (emphasis added)]. The Sixth Circuit and other district courts within it have

concluded that similarly broad arbitration agreements effectively delegate questions of waiver to arbitrators, not the Court. *See Hilton v. Midland Funding, LLC*, 687 F. App'x 515, 519 (6th Cir. 2017); *Creason*, 2024 WL 121183, *4 (collecting cases). Because the parties' arbitration agreement makes clear that issues relating to enforceability (which include waiver) must be arbitrated, the Court cannot consider that issue.[8] *See, e.g.*, *Creason*, 2024 WL 1221183, *5 (finding that waiver issue was question for arbitrator where parties agreed that "scope and enforceability" of the arbitration agreement must be arbitrated); *Lyman*, 2023 WL 2667736, *8 (explaining that waiver goes to enforceability). Indeed, "[w]here the parties have clearly and unmistakably agreed to have an arbitrator decide gateway questions of arbitrability, . . . the court is precluded form 'resolving any threshold arbitrability disputes, even those that appear wholly groundless.'" *Lyman*, 2023 WL 2667736, *3 (quoting *Swiger v. Rosette*, 989 F.3d 501, 505 (6th Cir. 2021) (some internal quotation marks omitted).

Because the Court finds that the question of waiver must be submitted to arbitration per the parties' agreement, the Court will grant HBTPower's Motion to Compel Arbitration, [R. 17], so that the parties may resolve the waiver issue in arbitration, and will stay Mohawk's Counterclaims, [R. 14], pending resolution of that threshold arbitrability issue. *See Creason*, 2024 WL 1221183, *5 (granting motion to compel arbitration so waiver issue could be resolved by arbitrator); *Lyman*, 2023 WL 2667736, *8 (same). Accordingly, the Court will deny HBTPower's Motion to Dismiss Counterclaim, [R. 26], which seeks dismissal for the same

---

[8] Moreover, it is also for the arbitrator to decide whether and to what extent Mohawk's decision to file its counterclaims in the JAMS arbitration proceeding affects its argument that the same claims in this Court should not be arbitrated.

reasons outlined in the Motion to Compel Arbitration as well as under Rule 8(a) and Rule 12(b)(6), as moot.[9]

      **C.**   **Mohawk's Motion to Dismiss on Grounds of Standing as Real Party in Interest is Not Before the Court, [R. 32], and Renewed Motion to Dismiss on Grounds that Plaintiff is Not the Entity It Contracted With, [R. 61]**

Next, the Court considers Mohawk's "Motion to Dismiss on Grounds of Standing as Real Party in Interest is Not Before the Court, [R. 32], and its "Renewed Motion to Dismiss on Grounds that Plaintiff is Not the Entity It Contracted With, [R. 61].[10]

In seeking dismissal, Mohawk cites generally to Rule 12, but makes no effort to discuss that rule or the applicable standard of law. From the best the Court can tell, Mohawk argues that HBTPower is not the real party in interest and therefore lacks standing. But "[t]he real party in interest principle is related to, but different from, the concept of standing." *Pratt v. Progressive Cas. Ins. Co.*, 5:10-CV-87, 2011 WL 2160862 (W.D. Ky. June 1, 2011) (citing *Zurich Ins. Co. v. Logitrans, Inc.*, 297 F.3d 528, 532 (6th Cir. 2002)). And to satisfy standing, a party must satisfy three conditions: First, the plaintiff must have suffered an "injury in fact," which is an invasion of a legally protected interest that is both concrete and particularized and actual or imminent, not conjectural or hypothetical. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citations omitted). "Second, there must be a causal connection between the injury and the conduct complained of," meaning the injury has to be fairly traceable to the defendant's actions, not the

---

[9] HBTPower's Motion for Preliminary Injunction, [R. 76], remains pending before this Court, as the waiver issue, as argued by the parties, affects only the Court's ability to hear Mohawk's Counterclaims, [R. 14].

[10] Mohawk also filed a document titled "Supplement to Mohawk Energy's Response to Motion for Injunctive Relief," which it then describes in the body of the filing as a "supplemental filing to its currently pending Motion to Dismiss regarding the issue of whether the Plaintiff is actually the real party in interest and, ultimately, to determine the contractual rights between the parties." [R. 35]. Without citation to law or proof, Mohawk goes on to allege that there was a trespasser at its facility, who was caught and identified himself as an associate of Wang Yangping. *Id.* at 1–2. Mohawk argues that if HBTPower is trespassing, "sanctions should promptly issue." *Id.* at 2. Again, Mohawk has filed a request for relief without filing a proper motion, and the Court will not consider this request further, particularly where Mohawk has failed to provide any proof or support whatsoever.

result of the independent action of some third party. *Id.* (citations omitted). "Third, it must be 'likely,' as opposed to merely 'speculative' that the injury will be 'redressed by a favorable decision.'" *Id.* (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 38, 43 (1976)). Mohawk makes no effort whatsoever to discuss these elements of standing, nor does it bother to explain how its "real party in interest" argument affects any of these three elements. For this reason alone, the Court finds that Mohawk's Motion to Dismiss and its renewed motion are wholly undeveloped and could be denied on this basis alone.

In another attempt to decipher Mohawk's motions, the Court notes that Mohawk also references Rule 12(b)(6) in its reply (but not in its Motion to Dismiss or its Renewed Motion to Dismiss). But again, Mohawk completely fails to discuss the applicable standard or explain how Rule 12(b)(6), which allows dismissal for failure to state a claim, is applicable here. Moreover, to the extent that Mohawk relies on Rule 12(b)(6),[11] the Court is precluded from considering matters outside the pleadings. *See Buck v. Thomas M. Cooley Law School*, 597 F.3d 812, 816 (6th Cir. 2010) (citing *Winget v. JP Morgan Chase Bank*, 537 F.2d 565, 576 (6th Cir. 2008)). The Verified Complaint and its attachments, including the License Agreement, clearly indicate that Mohawk contracted with HBTPower, the plaintiff, and there is nothing from the allegations and the exhibits to suggest that HBTPower is anything but the real party in interest. *See* [R. 26-2, p. 1]. Thus, to the extent Mohawk relies on Rule 12(b)(6), its arguments are wholly undeveloped and unsupported by the record, and its motion must be denied.

---

[11] While Mohawk cites to Rule 12(b)(6), the applicable provision would be Rule 12(c), which applies to motions for judgments on the pleadings, because Mohawk had already filed its answer at the time of this motion. *See* Fed. R. Civ. P. 12(c); *Prudential Ins. Co. of America v. McFadden*, 504 F.Supp.3d 627, 632 (E.D. Ky. 2020) (explaining that, when the motion is filed before an answer, it is generally treated as a motion to dismiss under Rule 12(b), while "a motion to dismiss after the pleadings close will be treated as a motion for judgment on the pleadings" under Rule 12(c) (quoting *In re Brizinova*, 592 B.R. 442, 459 (E.D. N.Y. 2018))). Regardless, "the same standard applies to motions made under either subsection." *Id.* (quoting *In re Brizinova*, 592 B.R. at 459).

And to the extent that Mohawk relies on matters outside the pleading to make its arguments, the Court must treat the motion as one for summary judgment under Federal Rule of Civil Procedure 56. *See* Fed. R. Civ. P. 12(d). Summary judgment, in turn, is only appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden "of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Mohawk makes various allegations in its motions, but it does not provide any evidence or proof whatsoever to support those assertions. Thus, to the extent it relies on matters outside the pleading to seek relief under Rule 56, it has failed to satisfy its burden, and its motion fails.

In its reply, Mohawk also mentions (for the first time) Federal Rule of Civil Procedure 17(a). That provision provides, in part, "[a]n action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a)(1). This appears to be the crux of Mohawk's arguments— i.e., that HBTPower is not the real party in interest under Rule 17. But again, Mohawk fails to discuss Rule 17 or the applicable legal standard. It appears, from the best the Court can tell, that Mohawk is arguing that the Court lacks jurisdiction because, according to Mohawk, HBTPower is not the real party in interest, and as a result, the case must be dismissed. *See* [R. 41, p. 1 ("[T]he law provides that this is a jurisdiction issue mandating dismissal where the real party is not before the Court.").  But the rule expressly mandates, "The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted

into the action." Fed. R. Civ. P. 17(a)(3); *see also EW v. New York Blood Center*, 213 F.R.D. 108, 109 (E.D.N.Y. 2003) (explaining that the defendant's argument that the court lacked subject matter jurisdiction because the real party in interest was not named was "obviously wrong" because Rule 17 permits correction of that error and thus "indicates that failing to bring an action in the name of the real party in interest does *not* immediately and automatically divest a district court of jurisdiction").[12]

As explained above, Mohawk has failed to demonstrate that the real party in interest is not before the Court, under either a Rule 12(b)(6) analysis or on a summary judgment standard. Moreover, from the record before the Court, the License Agreement was entered into by Mohawk, as "Licensor," and "HBTPower, a Huobi Technology Holdings Limited controlled BVI business company," as "Licensee or Huobi." *See* [R. 26-2, p. 1]. Thus, it appears that the contracting parties are before the Court. And again, Mohawk fails to discuss Rule 17 or the applicable standard. Accordingly, to the extent Mohawk relies on that rule, its motion must be denied.

Simply put, Mohawk has failed entirely to cite to any legal rule or authority that would provide a basis for its requested relief, nor has it provided any evidence or proof whatsoever to support its factual allegations. The Court will therefore deny the Motion to Dismiss, [R. 32], and the Renewed Motion to Dismiss, [R. 61].

### III. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** as follows:

---

[12] It is true that, if the original party lacks Article III standing and the Court therefore lacks subject matter jurisdiction, then the Court is precluded from considering Rule 17. *Pratt*, 2011 WL 2160863, at *3; *see also Allstate Ins. Co. v. Global Medical Billing, Inc.*, 520 F. App'x 409, 412 n.2 (6th Cir. 2013). But Mohawk has not demonstrated that HBTPower lacks standing, as discussed above, and its basis for arguing lack of standing appears to be premised entirely on its real party in interest argument. In other words, it conflates standing and the real party in interest principle.

1.  Defendant's Motion to Transfer, [**R. 13**], is **DENIED**.

2.  Plaintiff's Motion to Compel Arbitration, [**R. 17**], is **GRANTED** so that the parties may raise the issues of waiver before in arbitration.

3.  Defendant's Counterclaims, [**R. 14**], are **HELD IN ABEYANCE** pending resolution of the waiver issues raised herein.

4.  Plaintiff's Motion to Dismiss Counterclaim, [**R. 26**], is **DENIED as moot.**

5.  Defendant's "Motion to Dismiss on Ground of Standing as Real Party in Interest is Not Before This Court," [**R. 32**], is **DENIED**.

6.  Defendant's "Renewed Motion to Dismiss on Grounds that Plaintiff is Not the Entity It Contracted With," [**R. 61**], is **DENIED**.

7.  On or before **Thursday, October 10, 2024**, the parties **SHALL** file a joint status report advising of the status of the arbitration proceeding and any settlement negotiations, and providing three agreed-upon dates for a hearing on the pending Motion for Preliminary Injunction, [R. 76]. The parties shall also advise as to the expected length of the hearing.

    This the 20th day of September, 2024.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY

cc: Counsel of Record

- 20 -