**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**AT LOUISVILLE**

| | | |
|---|---|---|
| **HBTPOWER LIMITED,** | ) | CASE NO.: 3:23-cv-628-CHB |
| Plaintiff, | ) | JUDGE: Claria Horn Boom |
| | ) | |
| vs. | ) | |
| | ) | |
| **MOHAWK ENERGY, LLC,** | ) | **PETITION TO CONFIRM FINAL ARBITRATION AWARD** |
| Defendant. | ) | |
| | ) | |
| | ) | |

HBTPower Limited ("HBTPower"), by and through its undersigned counsel and pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"), hereby respectfully submits the following Petition to Confirm Final Arbitration Award ("Petition") against Defendant Mohawk Energy, LLC. In support of same, HBTPower submits the accompanying Declaration and states as follows:

**INTRODUCTION**

1.      On April 13, 2026, a Judicial Arbitration and Mediation Services, Inc. ("JAMS") arbitrator entered a final award ("Final Award") in favor of HBTPower against Defendant Mohawk Energy, LLC ("Mohawk"). This Court should confirm the Final Award pursuant to 9 U.S.C. § 9. A true and correct copy of the Final Award is attached as **Exhibit 1-B** to the accompanying Declaration of Harout J. Samra, which is attached hereto as **Exhibit 1** (the "Samra Declaration"). (Samra Decl. ¶ 14.)

2.      The purpose of the FAA is to promote the efficient and inexpensive resolution of disputes. The presumption under the FAA is that arbitration awards will be confirmed under 9 U.S.C. § 9. *Dawahare v. Spencer*, 210 F.3d 666, 669 (6th Cir. 2000). This presumption may only be overcome if one or more of four limited statutory exceptions are present. *See* 9 U.S.C. § 10. In fact, an arbitration award will not be vacated simply because a court disagrees with the arbitrator's

1

findings, or even where the arbitrator has committed a serious error. All that a court must determine in reviewing the decision of an arbitrator is whether the arbitrator did the job he or she was told to do – not whether he or she did it well or correctly or reasonably.

3.      No grounds for vacatur exist in this case and none of the limited statutory exceptions to confirmation of an arbitration award is present. Mohawk was afforded ample opportunity throughout the arbitration to present its case. Mohawk also did not seek any correction of the Final Award within the time permitted under the JAMS Streamlined Arbitration Rules.

4.      Accordingly, HBTPower is entitled to entry of a judgment confirming the Final Award, and further requests that the Court enter a permanent injunction consistent with the Arbitrator's recommendations, order that Mohawk return HBTPower's property, and such other relief as outlined below.

## PROCEDURAL AND FACTUAL BACKGROUND

### A.  Procedural Background

5.      Plaintiff HBTPower is a limited company incorporated under the laws of the British Virgin Islands with a principal place of business at Vistra Corporate Services Centre, Wickhams Cay II, Road Town, Tortola, VG1110, British Virgin Islands. HBTPower is owned by Sinohope Digital Services Limited, a limited company incorporated under the laws of Hong Kong, and Mcore Limited, a limited company incorporated under the laws of the British Virgin Islands. Neither of HBTPower's owners are citizens of the United States.

6.      Defendant Mohawk is a Kentucky limited liability company with a principal place of business at P.O. Box 846, Hazard, Kentucky 41702. Upon information and belief, Mohawk's sole member is Brandon D. Smith, who is a Kentucky resident.

7.      This Court previously exercised jurisdiction in this action and retains jurisdiction to confirm the arbitration award arising from the same dispute. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between the parties and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. HBTPower is a citizen of the British Virgin Islands, and Mohawk

2

is a citizen of Kentucky.

8.    In the alternative, and as an independent basis for jurisdiction over the requested relief, this Court also has subject matter jurisdiction pursuant to 9 U.S.C. §§ 202-203 because this is an action or proceeding arising under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 (the "New York Convention") and because it arises out of a contractual legal relationship between a domestic party (Mohawk) and a foreign party (HBTPower). Section 203 provides that district courts "shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy." 9 U.S.C. § 203.

9.    Additionally, this Court has jurisdiction under 9 U.S.C. § 9, which provides for confirmation of arbitration awards.

10.    Venue remains proper in this Court for the reasons previously established in this action and pursuant to 9 U.S.C. § 204 because this Court embraces Louisville, Kentucky, the place designated in the License Agreement as the place of arbitration. Venue is also proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this district. This proceeding is brought in, and is related to, the existing case styled, *HBTPower Limited v. Mohawk Energy, LLC*, Case No. 3:23-cv-628-CHB, currently pending before this Court.

### B.  **Factual Background**

11.    The Parties' dispute arose from Mohawk's breach of the Operation Right License Agreement, dated May 31, 2022 (the "License Agreement"), pursuant to which HBTPower (as licensee) was to run and operate Bitcoin mining activities at 1004 Gateway Industrial Park, Jenkins, Kentucky 41537 (the "Premises"). (Samra Decl. ¶ 4.) A true and correct copy of the License Agreement is attached as **Exhibit 1-A** to the Samra Declaration.

12.    Section 20 of the License Agreement includes an arbitration provision that provides, in relevant part, that "[a]ny dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate, shall be determined

by arbitration in Lexington, Kentucky or Louisville, Kentucky before one arbitrator." (Samra Decl. ¶ 5; *id*. at Ex. 1-A (License Agreement) at § 20.)

13.    HBTPower commenced the arbitration on December 5, 2023. (Samra Decl. ¶ 6.) On January 29, 2024, Peter K. Rosen was appointed as the sole arbitrator. (*Id.* ¶ 7.)

14.    Following extensive written submissions and discovery by both parties, the arbitration hearing took place from May 12 to May 16, 2025 (the "Hearing"). (*Id.* ¶ 10.) During the Hearing, both parties introduced extensive documentary evidence and the Arbitrator heard testimony from fact and expert witnesses. (*Id.*)

15.    The Arbitrator issued the Interim Award on December 16, 2025, and ordered further briefing on attorneys' fees, costs, prejudgment interest, punitive damages, and the scope of injunctive relief. (*Id.* ¶ 11.)

16.    On January 30, 2026, HBTPower submitted its brief in support of its claims for fees and costs, prejudgment interest, punitive damages, and a permanent injunction. (*Id.* ¶ 12.) On February 20, 2026, Mohawk filed a response opposing HBTPower's claims for fees, costs, interest, punitive damages, and injunctive relief and contesting the amounts sought. (*Id.*) On March 9, 2026, HBTPower provided a supplemental submission in further support of its request for attorneys' fees, costs, and prejudgment interest. (*Id.*)

17.    On March 20, 2026, Mohawk filed a Motion for Corrections to Material Errors in Draft Interim Award, raising five substantive challenges to the Arbitrator's findings, including challenges to the Arbitrator's conclusions regarding HBTPower's delivery of mining machines, the existence of a power agreement, photographic evidence, whether Mohawk's sole member, Mr. Brandon Smith, had access to legal counsel, and joinder of HBTPower's affiliates. (*Id.* ¶ 13.) HBTPower responded on March 27, 2026, demonstrating that each of Mohawk's challenges was contradicted by the hearing testimony and documentary record. (*Id.*) In the Final Award, the Arbitrator considered and denied Mohawk's Motion for Corrections in its entirety. (*Id.* ¶ 17.)

18.    On April 13, 2026, the Arbitrator issued the Final Award, which was duly rendered in accordance with the JAMS Streamlined Arbitration Rules and Procedures. (*Id.* ¶ 14.) In the

Final Award, the Arbitrator concluded that HBTPower met its burden of proof by both a preponderance of the evidence and clear and convincing evidence that Mohawk breached the License Agreement. (*Id.* ¶ 15.) As to HBTPower's conversion claim, the Arbitrator found that after ousting HBTPower from the Premises, Mohawk unlawfully retained HBTPower's S19-Series mining machines and sold HBTPower's 2,059 M-Series mining machines to third parties without HBTPower's authorization, thereby converting HBTPower's property. (*Id.*)

19.     The Arbitrator awarded HBTPower: (a) $46,700,000.00 in compensatory damages as to the breach of contract claim; (b) $600,000.00 in damages as to the conversion claim; and (c) $128,125.00 in prejudgment interest on the conversion damages at the Kentucky statutory rate of 6% compounded annually under Ky. Rev. Stat. Ann. § 360.040, calculated from the date of the conversion (November 30, 2023) through February 2026. (*Id.* ¶ 16.)

20.     The License Agreement expressly provides that "the arbitrator shall award to the prevailing party, if any, the costs and attorneys' fees reasonably incurred by the prevailing party in connection with the arbitration." (*Id.* at Ex. 1-A, § 20.) Based on that, the Arbitrator further awarded HBTPower $3,531,320.07 in attorneys' fees, finding that HBTPower was the prevailing party and that the fees incurred by HBTPower's counsel at DLA Piper LLP (US) and Stoll Keenon Ogden PLLC were reasonable. (*Id.* ¶ 16.)

21.     The Arbitrator also awarded HBTPower $559,008.23 in costs, including JAMS fees, e-discovery fees, expert fees in arbitration, court reporter fees, interpretation services, and reproduction charges. (*Id.*.)

22.     The total Award to HBTPower is $51,518,453.30. (*Id.*)

23.     With respect to ownership and property rights, the Arbitrator held that HBTPower owns or holds superior rights in the "Licensee Property." Specifically, the Licensee Property encompasses the 2,270 Bitmain Antminer S19-Series mining machines (both Racked Miners and Boxed Miners), the 14 transformers, the substation, and the 14 low-voltage cabinets currently located at the Premises. The Arbitrator found that because Mohawk is in uncured material breach of the License Agreement and has not made payment, title has not passed and HBTPower retains

5

ownership and exclusive rights to the Licensee Property. (*Id*. ¶ 18; *id*. at Ex. 1-B (Final Award)).

24.     On December 20, 2024, this Court entered the Agreed Preliminary Injunction (DN 109) (the "Federal Injunction Order"), which was expressly conditioned to remain in effect "until the arbitrator in the JAMS Case Reference Number 5440001154 issues an award resolving the Parties' pending disputes." (*See* Federal Injunction Order, DN-109)

25.     The Final Award has now been issued and resolves all disputes between the parties. Regarding injunctive relief, the Arbitrator expressly recommended to this Court that the Federal Injunction Order remain in effect and that the Court convert it into a permanent injunction. (Samra Decl., ¶ 18.) This recommendation was made in light of the Arbitrator's findings that Mohawk is in material breach of the License Agreement and that HBTPower retains ownership and exclusive rights to the Licensee Property. (*Id*.)

26.     Accordingly, HBTPower respectfully submits that the following provisions of the Federal Injunction Order should be converted into a permanent injunction: (a) the prohibition on Mohawk selling, disposing, encumbering, assigning, using, or in any manner transferring the Mining Machines (Federal Injunction Order, § 3(a)); (b) the prohibition on Mohawk executing on any liens filed with respect to the Mining Machines (Federal Injunction Order, § 3(b)); (c) the prohibition on Mohawk connecting the Mining Machines to electrical power or otherwise using them (Federal Injunction Order, § 3(c)); (d) the prohibition on Mohawk selling, disposing, encumbering, assigning, or in any manner compromising the Electrical Equipment (Federal Injunction Order, § 3(e)); (e) the requirement that Mohawk maintain in escrow the proceeds from the sale of the 2,059 M-Series mining machines (Federal Injunction Order, § 5); and (f) the requirement that Mohawk facilitate HBTPower's access to the Premises to inspect and retrieve the Licensee Property (Federal Injunction Order, § 7). These provisions should be made permanent. In addition, Mohawk should be ordered to return all Licensee Property to HBTPower. (*See* Federal Injunction Order, DN 109.)

27.     In addition to the permanent injunctive relief described above, HBTPower respectfully requests that the Court enter an order directing Mohawk to immediately return all

Licensee Property to HBTPower, including the 2,270 Bitmain Antminer S19-Series mining machines, the 14 transformers, the substation, and the 14 low-voltage cabinets currently located at the Premises. The Arbitrator found that HBTPower is the legal and beneficial owner of this property and that Mohawk's continued possession is without right or authorization. (Samra Decl. ¶ 18; *id*. at Ex. 1-B (Final Award) at 27.) Mohawk's refusal to return the Licensee Property despite the Final Award's clear and binding determination of ownership constitutes an ongoing deprivation of HBTPower's property rights that can be remedied only by an order compelling its immediate return.

28.     In the Final Award, the Arbitrator also denied all of Mohawk's affirmative defenses and counterclaims, including Mohawk's claims for defamation, tortious interference, and purported property rights in the mining equipment. (*Id*. ¶ 17.)

29.     The Final Award resolves all claims between the parties submitted for decision in the arbitration proceeding, including HBTPower's claims and all of Mohawk's affirmative defenses and counterclaims.

30.     Under JAMS Streamlined Arbitration Rule 19(i), any party may, within seven calendar days after service of the Final Award, request correction of any computational, typographical, or similar errors. Rule 19(j) provides that the Award is considered final for purposes of judicial proceedings to enforce, confirm, modify, or vacate the Award fourteen calendar days after service if no request for correction is made. Mohawk did not file any request for correction of the Award within the seven-day period under Rule 19(i). (*Id*. ¶ 19.) However, as noted above, Mohawk submitted a request for correction prior to the issuance of the Final Award, which was denied. Accordingly, the Final Award became final under Rule 19(j) fourteen calendar days after service of the Final Award on April 13, 2026. (*Id.*)

31.     As of the date of this filing, despite demands by HBTPower, Mohawk has failed to comply with the Award and has failed to pay any portion Final Award to HBTPower. (*Id*. ¶ 20.)

## ANALYSIS

32.     HBTPower has brought this action within one (1) year after the Final Award was

7

rendered on April 13, 2026, as required by 9 U.S.C. § 9. The Final Award has not been vacated, corrected, or modified.

33.    Consistent with the strong federal policy favoring arbitration, confirmation proceedings under the FAA are generally summary in nature. The FAA "presumes that arbitration awards will be confirmed." *Dawahare v. Spencer*, 210 F.3d 666, 669 (6th Cir. 2000); *see also GE v. Anson Stamping Co.*, 426 F. Supp. 2d 579, 595 (W.D. Ky. 2006) (same). Courts play "only a limited role in reviewing the decisions of arbitrators," *id.* (citing *Shelby Cnty. Health Care Corp. v. AFSCME, Local 1733*, 967 F.2d 1091, 1094 (6th Cir. 1992)), and will not "vacate an arbitration award because the arbitrator made errors of fact or law." *Id.* (citing *Nat'l Wrecking Co. v. Int'l Bhd. of Teamsters Local 731*, 990 F.2d 957, 961 (7th Cir. 1993)). Indeed, this Court's review of an arbitrator's decision "is very narrow . . . one of the narrowest standards of judicial review in all of American jurisprudence." *Uhl v. Komatsu Forklift Co.*, 512 F.3d 294, 305 (6th Cir. 2008); *see also Hadden v. UBS Fin. Servs., Inc.*, 2015 U.S. Dist. LEXIS 147408, at *3 (W.D. Ky. Oct. 29, 2015).

34.    Under 9 U.S.C. § 9, the Court "must grant" an order confirming the Award "unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." Accordingly, courts have little discretion to refuse to confirm an award under the FAA. The Supreme Court has held that Sections 10 and 11 provide "the FAA's exclusive grounds for expedited vacatur." *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 584 (2008). Courts will not "vacate an arbitration award because the arbitrator made errors of fact or law." *GE v. Anson Stamping Co.*, 426 F. Supp. 2d at 595 (citing *Nat'l Wrecking Co. v. Int'l Bd. of Teamsters Local 731*, 990 F.2d 957, 961 (7th Cir. 1993)).

35.    Section 10 of the FAA only permits vacatur of an arbitration award in four narrowly construed circumstances: (1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy, or of any other

8

misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

36.     The FAA also provides that arbitration awards may be corrected or modified in three situations: (1) where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award; (2) where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted; or (3) where the award is imperfect in matter of form not affecting the merits of the controversy. 9 U.S.C. § 11.

37.     Nothing in the Award or arbitration record supports application of any of the grounds set forth in Sections 10 and 11 of the FAA. The Arbitrator conducted a five-day evidentiary hearing, considered extensive documentary evidence and testimony, and issued a detailed Final Award addressing every claim and defense. Mohawk was afforded full opportunity to present its case during the Hearing and in post-Interim Award briefing, including through its Motion for Corrections to Material Errors, which the Arbitrator considered and denied in its entirety. Accordingly, there are no grounds for vacatur or modification of the Award.

38.     Pursuant to 9 U.S.C. § 9, HBTPower is therefore entitled to prompt confirmation and enforcement of the Final Award and respectfully requests that the Court enter judgment against Mohawk in the amount of the Final Award, together with a permanent injunction as recommended by the Arbitrator.

## CONCLUSION

**WHEREFORE,** Plaintiff HBTPower Limited respectfully requests that this Court:

A.     Enter an order pursuant to 9 U.S.C. § 9 confirming the Final Award and entering judgment thereon;

B.     Enter a judgment in favor of HBTPower and against Mohawk that conforms to the Final Award, including $46,700,000 in compensatory damages, $600,000 in conversion damages,

$128,125 in prejudgment interest, $3,531,320.07 in attorneys' fees, and $559,008.23 in costs, for a total judgment of $51,518,453.30;

C.      Enter a permanent injunction consistent with the Arbitrator's recommendation, converting the provisions of this Court's Federal Injunction Order (DN 109) identified in the Arbitration Award section above into a permanent injunction, including permanently enjoining Mohawk, its officers, agents, employees, and all persons acting in active concert or participation with it from: (i) selling, disposing, encumbering, assigning, using, or in any manner transferring the Mining Machines or Electrical Equipment; (ii) executing on any liens filed with respect to the Mining Machines; and (iii) connecting the Mining Machines to electrical power or otherwise using them; and further directing Mohawk to (iv) return to HBTPower all Licensee Property, including the S19-Series mining machines, Electrical Equipment, and any other property of HBTPower; and (v) maintain in escrow the proceeds from the sale of the M-Series mining machines pending satisfaction of the judgment;

D.      Order Mohawk to immediately return to HBTPower all Licensee Property currently located at the Premises, including the 2,270 Bitmain Antminer S19-Series mining machines, 14 transformers, the substation, and 14 low-voltage cabinets;

E.      Award post-judgment interest under 28 U.S.C. § 1961;

F.      Award costs incurred by HBTPower in bringing this proceeding, including reasonable attorneys' fees;

G.      Grant such other and further relief as this Court, in the interests of justice, deems necessary and proper.

10

May 11, 2026

Respectfully submitted,


_/s/ Lindsey H. Meares_____

Palmer G. Vance II
Lindsey H. Meares
STOLL KEENON OGDEN PLLC
300 West Vine Street, Suite 2100
Lexington, Kentucky 40507-1380
(859) 231-3000
(859) 253-1093 facsimile

and

DLA PIPER LLP (US)
200 South Biscayne Boulevard, Suite 2500
Miami, Florida 33131
Telephone: (305) 423-8500
Facsimile: (305) 437-8131

*COUNSEL FOR PLAINTIFF,
HBTPOWER LIMITED*